MICHAEL N. FEUER, City Attorney
DAVID J. MICHAELSON, Chief Assistant City Attorney
TAYLOR C. WAGNIERE, Deputy City Attorney (SBN 293379)
KABIR CHOPRA, Deputy City Attorney (SBN 285383)
PATRICK HAGAN, Deputy City Attorney (SBN 266237)
221 N. Figueroa St., Suite 1245
Los Angeles, California 90012
Telephone: (408) 616-0621
patrick.hagan@lacity.org

Attorneys for Defendants
CITY OF LOS ANGELES, which includes
LOS ANGELES DEPARTMENT OF CANNABIS
REGULATION; AND MICHELLE GARAKIAN,
in her official capacity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARISCITE, INC. AND KENNETH GAY, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES; LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN, <br><br> Defendants, | Case No.: 2:22-cv-08685-SPG-SK <br><br> Hon. Sherilyn Peace Garnett <br><br> **DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER** <br><br> [Filed concurrently with Defendants' Opposition to Application for TRO] |

TO THE COURT AND ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Federal Rule of Evidence 201, Defendants City of Los Angeles, Los Angeles Department of Cannabis Regulation, and Michelle Garakian (collectively "City" or "Defendants") hereby request the Court take judicial notice of the following documents, attached hereto as Exhibits A, B, & C, in support of Defendants' opposition to Plaintiffs' application for a temporary restraining order:

1. Exhibit A: a copy of Article 4 of Chapter X of the Los Angeles Municipal Code ("LAMC"), effective April 27, 2022, to the present;

2. Exhibit B: a copy of FY 2021 Income Limits Summary for Los Angeles, Long Beach, Glendale, California, HUD Metro Area; and

3. Exhibit C: a copy of FY 2021 Income Limits Summary for Battle Creek, Michigan.

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Here, it is well established that Exhibit A, which are city ordinances, can be judicially noticed. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 fn. 2 (9th Cir. 2006); *San Francisco Baylepper v. W. Bay Sanitary Dist.*, 791 F. Supp. 2d 719, n732 (N.D. Cal. 2011).

Moreover, all exhibits were obtained from well-known and reliable online resources. *See Pollstar v. Gigmania Ltd.*, 170 F. Supp. 974, 978 (E.D. Cal. 2000) (taking judicial notice of information obtained from a website when there is no question as to the site's authenticity). Exhibit A was obtained from the City's website at https://lacity.gov/government/city-charter-rules-and-codes and can also be found on the website for American Legal Publishing Corporation at https://codelibrary.amlegal.com/codes/los_angeles/latest/lamc/0-0-0-107363. Similarly,

REQUEST FOR JUDICIAL NOTICE

Exhibits B and C were obtained from the website for the United States Department of Housing and Urban Development ("HUD"), Office of Policy Development and Research ("PD&R") at https://www.huduser.gov/portal/datasets/il/il2021/2021summary.odn?states=6.0&data=2021&inputname=METRO31080MM4480*0603799999%2BLos+Angeles+County&stname=California&statefp=06&year=2021&selection_type=county and https://www.huduser.gov/portal/datasets/il/il2021/2021summary.odn?states=26.0&data=2021&inputname=METRO12980M12980*2602599999%2BCalhoun+County&stname=Michigan&statefp=26&year=2021&selection_type=county, respectively. Exhibits B and C are also judicially noticeable as public documents that are available for review on a government website. *E.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 993, 998-99 (9th Cir. 2010) (taking judicial notice of official information posted on a government website). Thus, the Court should take judicial notice of Exhibits A through C.

Dated: Dec. 2, 2022                Respectfully submitted,

                                   **MICHAEL N. FEUER,** City Attorney
                                   **DAVID J. MICHAELSON,** Chief Asst. City Attorney
                                   **TAYLOR C. WAGNIERE,** Deputy City Attorney
                                   **KABIR CHOPRA,** Deputy City Attorney
                                   **PATRICK HAGAN,** Deputy City Attorney

                                   By: _____
                                   **PATRICK HAGAN**
                                   Attorneys for Defendants CITY OF LOS ANGELES, which includes the LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN, in her official capacity

REQUEST FOR JUDICIAL NOTICE

# EXHIBIT A

# ARTICLE 4

# CANNABIS PROCEDURES

**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

[**Editor's note:** Former Article 4, "Airport Hospitality Enhancement Zone Ordinance", was repealed by Ord. No. 183,241, Eff. 11/10/14.]

Section
104.00   Purpose.
104.01   Definitions.
104.02   License Required.
104.03   Application Procedure.
104.04   Pre-licensing Inspection and Community Meeting.
104.05   Notice.
104.06   Issuance of License.
104.06.1   Retailer Commercial Cannabis Activity Application Processing.
104.07   Proposition M Priority Processing.
104.08   Non-retailer Commercial Cannabis Activity Prior to January 1, 2016, Processing.
104.09   Testing Lab Licenses.
104.10   License Appeal Procedure.
104.11   Mandatory Requirements.
104.12   Renewal and Cancellation.
104.13   Administrative Violations and Penalties.
104.14   Administrative Hearing Procedure.
104.15   Enforcement and Penalties for Unlawful Cannabis Related Activity.
104.15.1   Padlocking, Barricading, and Fencing Property Where Unlicensed Commercial Cannabis Activity Occurs.
104.16   Administration.
104.17   Severability.
104.18   No Vested or Nonconforming Rights.
104.19   Fees and Fines.
104.20   Social Equity Program.
104.21   Management Companies.
104.22   Cannabis Corporate Responsibility Report.
104.23   Storefront Retailer Emblem Program.

**SEC. 104.00. PURPOSE.**
**(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

In November 2016, the people of the State of California voted to approve Proposition 64, the Adult Use of Marijuana Act (AUMA), which decriminalized certain activities related to non-medical cannabis in California. Subsequently, the State enacted the Medicinal and Adult-Use Cannabis Regulation and Safety Act to establish a system to control and regulate the cultivation, distribution, transport, storage, manufacturing, processing and sale of both medicinal and recreational cannabis. The AUMA also provided for State licensing of commercial cannabis businesses, starting January 1, 2018. State law requires city approval in order to obtain a State License. The City desires to create a licensing system for certain cannabis-related businesses. Therefore, the City has

created a Department of Cannabis Regulation and a Cannabis Regulation Commission to implement this article and otherwise coordinate administration of the requirements of this article.

### SEC. 104.01. DEFINITIONS.
**(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)    The following definitions shall apply to this article. Words and phrases not defined herein shall be construed as defined elsewhere in this Code, as required by the context:

1.    "**Act**" means the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA).

2.    "**Applicant**" means a Person applying for a City License pursuant to this article.

3.    "**Application**" means all records submitted to the Department by an Applicant requesting Temporary Approval or a License to conduct Commercial Cannabis Activity.

4.    "**Branded Merchandise**" means clothing, hats, pencils, pens, keychains, mugs, water bottles, beverage glasses, notepads, lanyards, cannabis accessories, or other types of merchandise approved by the DCR with the name or logo of a commercial cannabis business licensed pursuant to the Act. Branded Merchandise does not include items containing cannabis or any items that are considered food as defined by California Health and Safety Code Section 109935.

5.    "**BTRC**" means a Business Tax Registration Certificate issued by the City's Office of Finance.

6.    "**Business Day**" is a day Monday through Friday from 9:00 a.m. to 4:00 p.m. Pacific Time, excluding City holidays.

7.    "**Business Premises**" means the designated structure or structures and land specified in an application for a License that is owned, leased, or otherwise held under the control of the Applicant or Licensee where the licensed Commercial Cannabis Activity will be or is conducted.

8.    "**Cannabis**" means cannabis as defined in Section 26001 of the California Business and Professions Code, included in the Medicinal and Adult Use Cannabis Regulation and Safety Act, as currently defined or as may be amended.

9.    "**Cannabis Accessories**" has the same meaning as in California Health and Safety Code Section 11018.2.

10.    "**Canopy**" means the designated area(s) at a Business Premises that will contain mature plants at any point in time.

11.    "**City**" means the City of Los Angeles.

12.    "**City Council**" means the Council of the City of Los Angeles.

13.    "**Commercial Cannabis Activity**" includes the cultivation, possession, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery or sale of Cannabis or Cannabis products in the City as provided for in Division 10 of the California Business and Professions Code and the California Code of Regulations, as currently defined or as may be amended.

14.    "**Commission**" means the City of Los Angeles Cannabis Regulation Commission, as described in Chapter 31 of Division 22 of the Los Angeles Administrative Code.

15.  "**Community Plan Area**" shall have the same meaning as within Article 1.5, Chapter 1 of the Los Angeles Municipal Code.

16.  "**Cultivated Area**" means the designated area(s) at a Business Premises that will contain mature plants at any point in time. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

17.  "**Cultivation**" means cultivation as defined in Section 26001 of the California Business and Professions Code, included in the Medicinal and Adult Use Cannabis Regulation and Safety Act, as currently defined or as may be amended.

18.  "**Day**" means calendar day unless another meaning is provided.

19.  "**DCR**" or "**Department**" means the City of Los Angeles Department of Cannabis Regulation, as described in Chapter 31 of Division 22 of the Los Angeles Administrative Code.

20.  "**Delivery Employee**" means an individual employed by a licensed retailer or licensed microbusiness authorized to engage in retail sales who delivers cannabis goods from the licensed retailer or licensed microbusiness premises to a customer at a physical address.

21.  "**Disproportionately Impacted Area**" is defined in Section 104.20 and incorporated herein by reference.

22.  "**EMMD**" means an existing medical marijuana dispensary that is in compliance with all restrictions of Proposition D, notwithstanding those restrictions are or would have been repealed, including, but not limited to, either possessing a 2017 L050 BTRC and current with all City-owed business taxes, or received a BTRC in 2007, registered with the City Clerk by November 13, 2007 (in accordance with the requirements under Interim Control Ordinance 179027), received a L050 BTRC in 2015 or 2016 and submits payment for all City-owed business taxes before the License application is deemed complete. For purposes of this subsection only, an EMMD that has entered into a payment plan with the City's Office of Finance pursuant to LAMC Section 21.18 to pay all outstanding City-owed business taxes is deemed current on all City-owed business taxes and is deemed to have submitted payment for all City-owed business taxes.

23.  "**Employee**" means a person who works for the Licensee or the Licensee's Management Company regardless of compensation and is under the control of an employer. Employee as defined herein includes seasonal and contract employees.

24.  "**Equity Share**" is defined in Section 104.20 and incorporated herein by reference.

25.  "**Final Inspection**" is a required inspection of the Business Premises conducted by DCR prior to the issuance of an annual License.

26.  "**Immature Cannabis Plant**" or "**Immature Plant**" means a plant that is nonflowering and is shorter and narrower than 18 inches. This definition is applicable to retail activities.

27.  "**Individual**" means a natural person. The terms "individual" and "natural person" are used interchangeably throughout this article.

28.  "**Initial Inspection**" is a required inspection of the Business Premises conducted by DCR prior to the issuance of a Temporary Approval.

29.  "**License**" means a City license issued under this article.

30.   **"License Renewal Inspection"** is a required inspection of the Business Premises conducted by DCR prior to the renewal of a License.

31.   **"Licensee"** means any Person holding a License under this article.

32.   **"Limited-Access Area"** means an area in which cannabis goods are stored or held and is only accessible to a licensee and its employees and authorized individuals.

33.   **"Low Income"** is defined in Section 104.20 and incorporated herein by reference.

34.   **"Management Company"** means a Person who manages Commercial Cannabis Activity on a Licensee's behalf, or a Person who directs or controls another Person who manages Commercial Cannabis Activity on a Licensee's behalf. A Management Company does not include an Employee of a Licensee or an Owner of a Licensee.

35.   **"Neighborhood Liaison"** means a natural person specifically designated by the Licensee to interact with the community, including, but not limited to, responding to complaints.

36.   **"Non-Retailer Commercial Cannabis Activity"** means Commercial Cannabis Activity not involving the sale or distribution of Cannabis directly to a consumer.

37.   **"Owner"** means a Person with at least a 20% aggregate ownership stake or equity interest in the Applicant or Licensee, unless the interest is solely a security, lien, profit sharing, or encumbrance. Aggregate means the total ownership interest held individually or through an entity. For example, an individual owning 50% of an entity that owns 50% of a cannabis business would have a 25% aggregate ownership interest in the cannabis business. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

38.   **"Person"** includes any individual, firm, partnership, joint venture, association, corporation, limited liability company, estate, trust, business trust, receiver, syndicate, or any other group or combination acting as a unit, and the plural as well as the singular.

39.   **"Primary Personnel"** means any of the following: (i) a natural person with at least a 20% aggregate ownership stake or equity interest in the in the Person applying for a License or a Licensee, unless the interest is solely a security, lien, profit sharing, or encumbrance; (ii) a natural person who manages, directs, or controls the operations of the commercial cannabis business, including but not limited to: a chief executive officer, president, vice president, officer, general manager, a member of the board of directors, a general partner, a managing member or a non-member manager, and/or a trustee(s) or persons who have control of the trust; (ii) if the Applicant or Licensee is owned in whole or in part by an entity and the entity includes natural persons who manage, direct, or control the operations of the Applicant or Licensee, those natural persons shall also be disclosed as Primary Personnel; and (iii) DCR may determine, in its sole discretion on a case-by-case basis, that additional natural persons have the ability to manage, direct, or control the commercial cannabis business and meet the criteria of Primary Personnel. Upon notification by DCR, the Applicant or Licensee must disclose the natural person(s) as a Primary Personnel. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

40.   **"Program"** means the Social Equity Program.

41.   **"Proposition D"** means the initiative adopted by the voters of the City of Los Angeles on May 21, 2013.

42.   **"Proposition M Priority Processing Application"** or **"Proposition M Priority Processing"** means an application filed by an EMMD pursuant to the priority processing for EMMD dispensaries as provided by Measure M, adopted by the voters of the City of Los Angeles on March 7, 2017.

43. "**Retail Commercial Cannabis Activity**" means Commercial Cannabis Activity involving the sales or distribution of Cannabis directly to a consumer.

44. "**Rules and Regulations**" mean detailed requirements meant to clarify and aid in the administration of this article, which are approved by the City Council or promulgated by DCR.

45. "**Social Equity Applicant**" means the Person applying for a City License subject to Section 104.20.

46. "**Social Equity Individual Applicant**" is defined in Section 104.20 and incorporated herein by reference.

47. "**State License**" means a license issued by the state of California pursuant to Division 10 of the Business and Professions Code and the California Code of Regulations as currently defined or as may be amended.

48. "**Temporary Approval**" means a DCR-issued temporary license that authorizes an Applicant to engage for a limited period of time in Commercial Cannabis Activity as would be permitted under the privileges of a non-temporary license of the same type. An Applicant with Temporary Approval shall follow all applicable Rules and Regulations as would be required if the Applicant held a non-temporary License of the same type.

49. "**Undue Concentration**" means the Applicant's Business Premises is located within a higher cannabis license/population ratio within the community plan based on the American Community Survey, updated annually, than the following: ratio of one license per 10,000 residents for Retailer (Type 10); ratio of one license per 7,500 residents for Microbusiness (Type 12); a maximum aggregate number of 15 Licenses at a ratio of one License for every 2,500 square feet of allowable cultivated area for Cultivation (Types 1A, 1C, 2A, 3A, and 5A); and ratio of one license per 7,500 residents for Manufacture (Type 7). An EMMD is not subject to a finding of Undue Concentration. An Applicant eligible for processing under Section 104.08 is not subject to a finding of Undue Concentration. A Microbusiness involved in on-site retail counts towards the Undue Concentration License limits applied to Retailer (Type 10) Licenses, and a Microbusiness involved in Cultivation counts towards the Undue Concentration limits applied to Cultivation Licenses (Types 1A, 1C, 2A, 3A, and 5A).

50. "**Unlawful Establishment**" means any Person engaged in Commercial Cannabis Activity if the Person does not have a City issued Temporary Approval or License.

## SEC. 104.02. LICENSE REQUIRED.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

(a) A License is required for any of the following Commercial Cannabis Activity and shall be issued as A (Adult) and/or M (Medical) categories: **(Amended by Ord. No. 185,608, Eff. 7/23/18.)**

1. RETAILER COMMERCIAL CANNABIS ACTIVITY - Type 10 - Retailer; Type 9 - Non-Storefront Retailer as currently defined or amended by the State of California.

2. A Person may not hold more than three Type 10 Licenses. A Person with an aggregate ownership or profit-sharing interest of 20 percent or more in the Person applying for a License may not hold more than three Type 10 Licenses, unless the interest is solely a security, lien, or encumbrance. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

3. MICROBUSINESS COMMERCIAL CANNABIS ACTIVITY - Type 12 - Microbusiness as currently defined or amended by the State of California.

4.   INDOOR COMMERCIAL CANNABIS CULTIVATION ACTIVITY - Type 1 through Type 5 as defined herein; Type 1A - Cultivation, Specialty Indoor, Small; Type 2A - Cultivation, Indoor Small; Type 3A - Cultivation; Indoor, Medium; Type 4 - Cultivation, Nursery (limited to indoor cultivation); and Type 5A - Cultivation, Indoor, Large; Type 1C - Specialty Cottage Small (limited to indoor cultivation); Processor as currently defined or amended by the State of California.

5.   A Person shall not hold more than three Type 3A Medium - Indoor Cultivation Licenses or any combination of cultivation license types where the aggregate allowable cultivation area would exceed 1.5 acres. A Person with an aggregate ownership or profit sharing interest of 20 percent or more in the Person applying for a License may not hold more than three Type 3A Medium - Indoor Cultivation Licenses or any combination of cultivation license types where the aggregate allowable cultivation area would exceed 1.5 acres. This provision does not apply to applications submitted prior to the effective date of this ordinance provided that any changes or modifications to the license do not exceed the total allowable aggregate cultivation area or the number of allowable cultivation licenses held by a Person. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

6.   MANUFACTURE COMMERCIAL CANNABIS ACTIVITY

(i)   Type 6 - Manufacturer 1 as currently defined or amended by the State of California.

(ii)   Type 7 - Manufacturer 2 as currently defined or amended by the State of California.

(iii)   Type N - Infusion.

(iv)   Type P - Packaging.

(v)   Type S - Shared-use facility. **(Added by Ord. No. 185,629, Eff. 7/2/18.)**

7.   TESTING COMMERCIAL CANNABIS ACTIVITY - Type 8 - Testing Laboratory as currently defined or amended by the State of California.

8.   DISTRIBUTOR COMMERCIAL CANNABIS ACTIVITY - Type 11- Distributor as currently defined or amended by the State of California.

9.   OTHER COMMERCIAL CANNABIS ACTIVITY - Any Commercial Cannabis Activity which requires a State of California license as currently defined or amended by the State of California and which is not identified in this article. **(Added by Ord. No. 185,629, Eff. 7/2/18.)**

### SEC. 104.03. APPLICATION PROCEDURE.
**(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)   **Application – Pre-Application Review.** Prior to filing an Application pursuant to Subsection (b), an Applicant shall submit a Pre-Application Review record through the DCR Licensing Portal, including all information, forms and documents as determined by DCR, and pay a Pre-Application Review Fee pursuant to Section 104.19 for DCR to determine the eligibility of a proposed Business Premises location pursuant to Section 104.03(a)(3) and Article 5 of Chapter X of this Code. Pre-Application Review records that are incomplete or missing required information, forms or documents shall not be eligible for further processing. If the Pre-Application Review record is deemed eligible for further processing, the Applicant shall submit a Temporary Approval Application or annual License Application through the DCR Licensing Portal, including all required information, forms, and documents, within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the Pre-Application Review record is eligible for further processing. A Pre-Application Review record shall be deemed abandoned pursuant to Section 104.03(h) if a complete Temporary Approval

Application or annual License Application is not timely submitted within one (1) calendar year. DCR may request additional information, forms, or documents from the Applicant at any time during the Pre-Application Review, subject to payment of any additional fees under Section 104.19(h). If the Applicant fails to provide the additional information, forms or documents in the time allotted by DCR, the Application shall be deemed abandoned. An Applicant whose Business Premises location is deemed ineligible under Section 104.03(a)(3) or Article 5 of Chapter X of this Code shall not be permitted to amend their Pre-Application Review record, but may submit a new Pre-Application Review record subject to the payment of applicable fee(s) in Section 104.19. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

1.    Primary Personnel convicted of any of the following offenses within the time specified shall be disqualified in any of the following circumstances and are prohibited from applying for or holding a Temporary Approval or License. Primary Personnel may be subject to LiveScan or a similar review of criminal history. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(i)    Illegal volatile Cannabis manufacturing under Health and Safety Code Section 11379.6 for a period of five years from the date of conviction.

(ii)    A violation of any State or local law involving wage or labor for a period of five years from the date of conviction.

(iii)    A violation of any law involving distribution of Cannabis to minors for a period of five years from the date of conviction.

(iv)    Illegal Commercial Cannabis Activity after April 1, 2018, for a period of five years from the date of conviction.

(v)    A violation of any State or local law involving distribution or sales of tobacco or alcohol to minors for a period of five years from the date of conviction.

(vi)    A violent felony as defined in California Penal Code Section 667.5, a serious felony conviction as defined in California Penal Code Section 1192.7, or a felony conviction for violating any law involving violent crimes, sex trafficking, rape, crimes against children, gun crimes or hate crimes for a period of 20 years from the date of conviction or completion of a term of imprisonment, supervised release or probation imposed as a sentence for the conviction, whichever is later.

(vii)    A felony conviction for a crime involving fraud, deceit, or embezzlement for a period of 20 years from the date of conviction. In addition, an individual with a felony conviction under this paragraph shall be prohibited from serving as an authorized agent or agent for service of process on any Application.

(viii)    A civil judgment concerning illegal Commercial Cannabis Activity for a period of 5 years from the date of the judgment. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

2.    Persons are prohibited from being Owners of Persons applying for or holding a Temporary Approval or License and shall be disqualified in any of the following circumstances:

(i)    An individual who holds office in, is employed by, or is appointed to, any agency of the State of California and any of its political subdivisions, including the City and any of its agencies, departments, commissions or boards, when the individual's duties include the enforcement or regulation of Commercial Cannabis Activity or any other penal provisions of law of the State of California prohibiting or regulating Commercial Cannabis Activity.

(ii)    Any entity that is incorporated outside of the United States.

3.  In the following circumstances a Business Premises location is ineligible for Licensure:

(i)  The Business Premises is owned or managed by a Person who holds office in any agency of the State of California and any of its political subdivisions, including the City and any of its agencies, departments, commissions or boards of the State of California or its political subdivisions when the individual's duties include the enforcement or regulation of Commercial Cannabis Activity or any other penal provisions of law of the State of California prohibiting or regulating Commercial Cannabis Activity.

(ii)  The Business Premises was the site of illegal volatile Cannabis manufacturing under Health and Safety Code Section 11379.6 as evidenced by a conviction, for a period of five years from the date of conviction.

(iii)  The Business Premises was the site of distribution of Cannabis to minors as evidenced by a conviction, for a period of five years from the date of conviction.

(iv)  The Business Premises was the site of any illegal Commercial Cannabis Activity after April 1, 2018, as evidenced by a conviction, for a period of five years from the date of conviction.

(v)  The Business Premises was the site of a disconnection of utilities under Section 104.15(e) for a period of five years from the date of the disconnection.

(vi)  The Business Premises was the site of padlocking under Section 104.15.1 for a period of five years from the date of the padlocking. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

4.  **Public Convenience or Necessity Process. (Amended by Ord. No. 187,095, Eff. 7/1/21.)** If the Applicant's proposed Business Premises is located in a Community Plan Area that has reached Undue Concentration, the Applicant must request that the City Council find that approval of the License application would serve the public convenience or necessity. Prior to seeking a finding from City Council, the Applicant shall submit Pre-Application and pay a Pre-Application Review Fee pursuant to Section 104.19 for DCR to determine compliance of the Business Premises location pursuant to Section 104.03(a)(3) and Article 5 of Chapter X of this Code.

(i)  If DCR determines that the Pre-Application is not eligible for further processing, the Applicant shall not file a request that the City Council find that approval of the License application would serve the public convenience or necessity and DCR shall not further process the application. The Applicant may submit a new Pre-Application for a new proposed location, subject to the payment of fees under Section 104.19.

(ii)  If DCR determines the Pre-Application is eligible for further processing, the Applicant shall file a request, on a form provided by DCR, that the City Council find that approval of the License application would serve the public convenience or necessity, supported by evidence in the record. The Applicant shall also pay a Public Convenience or Necessity Application Fee pursuant to Section 104.19(g) within 30 days from the date of invoice issuance. DCR shall transmit the request to the City Clerk within 30 days of the Applicant's payment of the Public Convenience or Necessity Application Fee. The Applicant shall engage with and seek written input from the following key stakeholders for the area in which the proposed Business Premises will be located, which at a minimum should include: area Neighborhood Council; Los Angeles Police Department (LAPD) Division; local chamber of commerce; and at least one substance abuse intervention, prevention and treatment organization within the Community Plan Area. LAPD shall provide the City Council with crime data for the area, and a letter stating their position on the application request. DCR shall promulgate standards subject to City Council approval by resolution, which may be amended from time to time. DCR shall provide written notice of the Applicant's request

pursuant to Section 104.05(b). If the City Council does not act on the Applicant's request within 90 calendar days of the City Clerk's date of receipt, then the City Council shall be deemed to have not made the necessary findings to support the public convenience and necessity, the request shall be denied by operation of law, and the License application shall not be processed by DCR. If the City Council finds that approval of the License application would serve the public convenience or necessity, the Applicant shall pay a Temporary Approval Application Fee pursuant to Section 104.19 within 30 days of the City Council's action becoming final.

   (b)   **Application – Filing and Fees.** DCR shall consider a Temporary Approval Application or annual License Application filed following: (i) a determination of eligibility pursuant to Subsection (a); (ii) the submission of all required and completed Temporary Approval or annual License information, forms, and documents to DCR's Licensing Portal; and (iii) the payment of the applicable application fee(s) for each Commercial Cannabis Activity pursuant to Section 104.19. An Applicant shall submit all required information, forms, and documents pursuant to the Rules and Regulations. The applicable Temporary Approval Application Fee(s) or Annual License Application Fee(s) are due within 30 days from the date of the invoice. If the fees are not paid within the allotted time, the Application shall be deemed abandoned pursuant to Section 104.03(h). **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

   (c)   **Application – Determination of Completeness.** DCR shall determine if the Application is complete as provided in the Rules and Regulations. A determination of completeness includes an Initial Inspection and environmental clearance as required by Section 104.06(e). The applicant shall pay the applicable environmental assessment fee pursuant to Section 104.19(c). DCR may request additional information and documents from the Applicant at any time during application processing, subject to payment of any fees under Section 104.19(h). If the Applicant fails to provide the additional information, documents or payment in the time allotted by DCR, the Application shall be deemed abandoned. An Annual License Application Fee for each Commercial Cannabis Activity pursuant to Section 104.19 shall be paid within 30 days of DCR's determination that the Application is complete. If the fees are not paid within the allotted time, the application shall be deemed abandoned. DCR will conduct a Final Inspection and, when applicable, schedule a community meeting pursuant to Section 104.04. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

   (d)   **Application – Withdrawal.** An Applicant may withdraw an Application prior to the City's approval or denial of the License. An Application shall not be considered withdrawn until DCR has consented to its withdrawal in writing. An Applicant may re-apply at any time if an Application is withdrawn or abandoned, but the Applicant must file a new application. DCR shall not refund any fee for a withdrawn or abandoned application. A request to withdraw an application must be submitted in writing, dated and signed by the Owner(s) representing a majority ownership share. Withdrawal of an application shall not, unless consented by DCR, deprive DCR of its authority to institute or continue a proceeding against the Applicant for the denial of the License upon any ground provided by law or to enter an order denying the license upon any such ground.

   (e)   **Application – Modification.** An Applicant or Licensee shall not make modifications to an Application or License without prior written approval by DCR in accordance with this subsection. An Applicant or Licensee shall submit a modification request on a form provided by DCR through the DCR Licensing Portal and pay the applicable modification request fee pursuant to Section 104.19(h). Upon payment, DCR, in its sole discretion, will review the modification request and determine if it is eligible for further processing. DCR's determination is final and not appealable. If the requested modification(s) can be further considered, the Applicant or Licensee shall submit any additional information, forms or documents that DCR deems necessary to process the request and pay any additional modification fee(s) pursuant to Section 104.19. Modification requests shall not be processed until all required information, forms, documents, and fees have been submitted and received. DCR may require Licensees to obtain approval for the proposed modification(s) from the State licensing agency or other applicable agency(ies). DCR may also require business entities formed as corporations, limited partnerships or limited liability companies to update their filings with the California Secretary of State. Applicants may submit a modification request(s) through the DCR Licensing Portal a period of 60 days after the submission of a Temporary Approval Application, subject to the payment of any required modification fee(s) pursuant to Section 104.19. Once DCR completes its review of the Temporary Approval Application, an

Applicant may submit only the modification request types permitted in the Rules and Regulation until a License or Temporary Approval is issued. DCR shall notify the Applicant or Licensee by electronic mail when the requested modification has been fully processed. Persons shall not be permitted to sell, lease, lend, or otherwise transfer an Application, Temporary Approval, or License separate and apart from a transfer of the Person who owns the Application, Temporary Approval, or License. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

    1.  **Business Premises Relocation.** An Applicant or Licensee shall not relocate Commercial Cannabis Activity without prior written approval by DCR. The Applicant or Licensee shall submit a modification request form and pay the required Modification Request Form Review fee pursuant to Section 104.19. Upon payment of the modification fee, DCR shall review the relocation request and notify the Applicant or Licensee if the proposed location complies with Article 5 of Chapter X of this Code. Upon notification, the Applicant or Licensee shall provide at a minimum: (1) a copy of an executed lease or property deed for the new location; (2) a landowner acknowledgment that the Applicant or Licensee has the right to occupy the property for Commercial Cannabis Activity for which the Applicant or Licensee is seeking a license; (3) a site plan; and (4) a Business Premises diagram. Upon notification, the Applicant or Licensee shall pay the Business Premises Relocation Fee pursuant to Section 104.19. An Applicant shall not conduct Commercial Cannabis Activity at the new Business Premises location until Temporary Approval is issued at that location. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

    (i)  An Applicant or Licensee applying for or authorized to conduct non-volatile manufacturing (Type 6), Non-Storefront Retailer (Type 9) and distribution (Type 11) may relocate to another location within the City subject to Subdivision 1. of this section.

    (ii)  An Applicant or Licensee applying for or authorized to conduct cultivation (Types 1A, 1C, 2A, 3A, 5A), volatile manufacturing (Type 7), and retail store-front (Types 10, 12) activities may relocate within the same Community Plan Area provided the Community Plan Area has not reached Undue Concentration and subject to Subsection (e)(1). A relocation request within the same Community Plan Area which has reached Undue Concentration may be permitted provided the application was submitted prior to the Community Plan Area reaching Undue Concentration.

    (iii)  If the application was submitted pursuant to a finding by the City Council that approval of the license would serve the public convenience or necessity, the relocation request shall comply with the following requirements:

    (1)  **Businesses without a License.** If the City Council found that approval of the Application would serve the public convenience or necessity for the original Business Premises location and DCR has not issued a License at the location, the Applicant shall request that the City Council find that approval of the License application at the new Business Premises location within the community plan area would serve the public convenience or necessity pursuant to Section 104.03(a)(4) and subject to Subsection (e) (1).

    (2)  **Businesses with a License.** If the City Council found that approval of the Application would serve the public convenience or necessity for the original Business Premises location and DCR has issued a License at that location, the Licensee may be permitted to relocate within the same Community Plan Area which has reached Undue Concentration subject to Subsection (e)(1).

    (iv)  **Relocations for Applicants Under Section 104.06.1(b).** Applicants deemed eligible for further processing under Section 104.06.1(b) may submit one relocation request prior to December 31, 2021, and not be subject to the Business Premises Relocation Fee. Applicants shall pay Modification Request Form Review fee(s) pursuant to Section 104.19. For the purposes of compliance with LAMC Sections 105.02(a)(1)(B) or 105.02(a)(2)(B), the payment of the Modification Request Form Review fee(s) shall be the "Application Date" under LAMC Section

105.01. Any subsequent relocation request(s) shall be subject to payment of the Business Premises Relocation Fee and LAMC Sections 105.02(a)(1)(B) or (a)(2)(B). **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

    (v)  **Relocations After the Issuance of Temporary Approval.** If a Licensee has been issued Temporary Approval or a License for the location from which it seeks to relocate, the Licensee shall request cancellation of its Temporary Approval or License at that location before Temporary Approval or a License at the new Business Premises location may be issued. The Applicant or Licensee shall meet the Temporary Approval and/or License requirements at the new location. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

    2.  **Ownership Structure.** Except for the Social Equity Individual Applicant who is an Owner on an application subject to processing under Section 104.06.1, DCR shall review and approve modifications to ownership for an Applicant's or Licensee's Applications, Temporary Approvals or Licenses. After submitting an application under Section 104.06.1, an Applicant shall not be permitted to modify its application to remove or replace the individual Owner who is the Social Equity Individual Applicant, as defined in Section 104.20(a) or (b). Applications, Temporary Approvals, and Licenses are not transferable or assignable to another Person unless a request is submitted and approved by DCR. Business entities formed as corporations, limited partnerships, or limited liability companies must update their filings with the California Secretary of State. The Applicant or Licensee shall pay the applicable modification fees pursuant to Section 104.19, as determined by DCR, and submit the following: (1) a copy of Statement of Information filed with the Secretary of State, if applicable; (2) a copy of the Amended Articles of Organization or Incorporation, if applicable; (3) Ownership and Financial Interest Holder Disclosure Form for all Persons associated with the Application, Temporary Approval, or License; (4) organizational chart showing all owners and entities in any multi-layer business structure; and (5) any additional information or documents DCR deems necessary to consider the request. Applicants and Licensees subject to Section 104.20 shall also provide all business records and agreements necessary to demonstrate that the Social Equity Individual Applicant owns the minimum Equity Share required under Section 104.20(a)(2). Modifications to the ownership structure shall be made in accordance with the following: **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

    (i)  All entities and individuals with a financial interest shall be disclosed to DCR. This includes all entities in a multi-layer business structure, as well as the chief financial officer, members of the board of directors, partners, trustees, and all Persons who have control of a trust, and managing members or non-members managers of the entity. Each entity disclosed as having a financial interest must disclose the identities of Persons until only individuals remain.

    (ii)  If at least one existing Owner is not transferring his or her ownership interest and will remain as an Owner under the new structure, the business may continue to operate if a Temporary Approval or License has been issued while DCR reviews the eligibility of the new Owner(s) pursuant to Section 104.03(a)(1) and (2).

    (iii)  If all Owners will be transferring their ownership interest, the Applicant or Licensee shall resubmit all application documents and pay all required application fees. The business shall not operate under the new ownership structure until a new License has been issued by DCR.

    (iv)  A change of ownership does not occur when one or more Owners leave the business by transferring their ownership interest to the other existing Owner(s).

    (v)  In cases when an Owner leaves the business by transferring their ownership interest to other existing Owner(s), written approval shall be required from the Owner that is transferring the ownership interest.

3. **Legal Entity Name Change.** Business entities formed as corporations, limited partnerships or limited liability companies must register with the California Secretary of State and provide the Entity (File) Number to DCR upon application submission. Applications, Temporary Approvals, or Licenses may change the legal entity name under which the Application, Temporary Approval, or License was submitted or issued, provided that the Entity (File) Number registered with the Secretary of State remains the same. The Applicant or Licensee shall submit a modification request form and pay the required modification fee pursuant to Section 104.19 within 30 days of the date the invoice is issued. DCR may require that the Applicant or Licensee submit the documents to demonstrate that the changes have been filed with the Secretary of State or approved by the State licensing agency or agencies. DCR may require that a new Application be submitted if it determines that the Application, Temporary Approval, or License has been sold, leased, lent, or otherwise transferred to another Person and shall deem the existing Application abandoned. Any new Application will be considered in the order received with respect to sensitive uses and, if applicable, to activities subject to Undue Concentration. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

4. **Physical Modification of Business Premises.** An Applicant or Licensee shall not perform interior physical modifications, alterations, additions, or expansions of the Business Premises without written approval from DCR. The Applicant or Licensee shall submit a modification request form and pay the required modification fees pursuant to Section 104.19. Requests to modify the Business Premises shall comply with the following: **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(i)   Except for business subject to Paragraph (ii), expansion of the Business Premises shall be limited to 50 percent of the existing Business Premises floor area before the addition, or 2,500 square feet, whichever is less, and shall comply with Article 5 of Chapter X of this Code. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(ii)   Any Business Premises expansion by EMMDs shall comply with: (1) the distance and sensitive use restrictions of Los Angeles Municipal Code Section 45.19.6.3 L. and O. of Proposition D notwithstanding those restrictions are or would have been repealed; (2) the zoning requirements of Article 5 of Chapter X of this Code; and (3) any physical expansion that involves cultivation Commercial Cannabis Activity shall be limited to the maximum Cultivated Area allowed by the cultivation License type issued by DCR. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

(iii)   The Applicant or Licensee shall submit a proposed Business Premises diagram which clearly indicates the proposed construction, alterations, addition, or expansion of the Business Premises. The diagram shall be drawn to scale (1/8" = 1' - 0" minimum scale) with dimensions and indicate the existing floor area, the added floor area, and clearly label each Commercial Cannabis Activity on the Business Premises and all ancillary uses.

(iv)   An Applicant or Licensee may increase the cultivation area within the existing Business Premises, or may expand the existing Building Premises floor area in accordance with Paragraph (i), provided that the resulting cultivation area does not exceed the maximum cultivation area allowed for the license type under which the Application was submitted.

(v)   **Additional Requirements.** If applicable, DCR may require: (1) a copy of an executed lease with proof of a deposit or property deed if the expansion includes additional adjacent units; (2) landowner acknowledgement that the Applicant or Licensee has the right to occupy the Business Premises; (3) a site plan if the Business Premises diagram has been expanded; and (4) any additional documents or information DCR deems necessary to consider the request.

5. **Fictitious Business Name Change.** Applicants who register a Fictitious Business Name (FBN) with the Los Angeles County Registrar must provide the FBN to DCR upon application submission. A new FBN, or a change to the existing FBN after the Application is submitted, must be requested by

submitting a modification request form and paying the required modification fees pursuant to Section 104.19. The Applicant or Licensee shall submit the necessary documents to demonstrate that the changes have been registered with the Los Angeles County Registrar and approved by the State. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

6. **Other Modifications.** DCR may consider other application modifications on a case-by-case basis. The Applicant or Licensee shall submit a modification request form and pay the required modification fees to Section 104.19. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

7. **Modification Review.** DCR shall require the modification information, documents or forms that are described in the Rules and Regulations for each type of modification request. **(Added by Ord. No. 187,459, Eff. 4/15/22.)**

(f) **Calculation of Time.** Unless otherwise specified, when the final day for the filing of an application or appeal, or the payment of fees, falls on a Saturday, Sunday or City holiday, the time for filing shall be extended to the close of the next Business Day, and the effective or final date of any action, decision or determination shall be extended by the same amount of time.

(g) **Payments.** Unless otherwise specified, all payments due under this Article may be considered timely paid if enclosed in a properly addressed envelope with sufficient postage, deposited in the mail, and postmarked by the payment deadline. Unless otherwise specified, payments may also be considered timely paid if an Applicant or Licensee schedules and confirms a payment appointment with the Office of Finance by the date of the payment deadline, notwithstanding that the payment appointment may occur after the date of the payment deadline. **(Added by Ord. No. 186,919, Eff. 2/24/21.)**

(h) **Abandonment.** An Application or modification request may be deemed abandoned if DCR determines, at any time and in its sole discretion, that an Application or modification request is incomplete, fee payments required under Section 104.19 are not timely paid, or information, forms or documents have not been provided within the time allotted by DCR. Unless another period of time is specified, all required information, forms and/or documents shall be submitted through the DCR Licensing Portal within 30 days, and all fees shall be paid within 30 days of the date of the invoice issuance. DCR shall not refund fees for an abandoned Application or modification request. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

(i) **Refiling – Social Equity Applications. (Added by Ord. No. 187,459, Eff. 4/15/22.)** The Social Equity Individual Applicant associated with a Social Equity Applicant that has a Temporary Approval Application deemed abandoned under Section 104.03(h) after January 1, 2022, may refile an Application subject to the requirements of this subsection. If more than one Social Equity Individual Applicant is listed on the initial Temporary Approval Application, the refiled Application shall be submitted by the original Social Equity Applicant entity. The refiling process shall be initiated through the DCR Licensing Portal within one (1) calendar year of the date DCR notifies the Social Equity Applicant by electronic mail that the original Temporary Approval Application is deemed abandoned.

1. To refile, the Applicant shall submit a new Pre-Application Review record under Section 104.03(a). If DCR determines the proposed Business Premises location complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code, the Applicant shall submit a Temporary Approval Application with all required information, forms and documents, including all business records and agreements necessary to demonstrate that the Social Equity Individual Applicant(s) owns the minimum Equity Share required under Section 104.20(a)(2), within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the Pre-Application Review record is eligible for further processing. The Applicant shall submit payment of all required fees, pursuant to Section 104.19, by the dates listed on the invoice(s). If a Pre-Application Review record filed pursuant to this subsection is ineligible for further processing, the Applicant shall be permitted to submit new a Pre-Application Review record(s) identifying new Business Premises location(s), subject to the payment of any applicable fee in Section

104.19, and provided that the new Business Premises location(s) is submitted within the original one (1) calendar year time limitation.

2.    The refiled Temporary Approval Application may not seek authorization to conduct any Commercial Cannabis Activities not listed in the original Temporary Approval Application or outside the Community Plan Area listed in the original Temporary Approval Application. A refiled Temporary Approval Application is not subject to a finding of Undue Concentration. Applications originally subject to a finding of public convenience or necessity under Section 104.04(a)(4) shall be refiled at the same proposed Business Premises, otherwise the procedures for refiled Applications are unavailable.

3.    A refiled Temporary Approval Application that is later deemed abandoned for any reason may not be refiled.

4.    Temporary Approval Applications abandoned, for any reason, prior to January 1, 2022, may not be refiled.

5.    Temporary Approval Applications previously denied, denied by operation of law, or deemed ineligible for further processing may not be refiled.

(j)    **Refiling – General Applications. (Added by Ord. No. 187,459, Eff. 4/15/22.)** An Applicant not subject to the provisions of Section 104.20 with a Temporary Approval Application deemed abandoned under Section 104.03(h) after January 1, 2022, may refile an Application subject to the requirements of this subsection. The refiling process shall be initiated through the DCR Licensing Portal within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the original Temporary Approval Application is deemed abandoned.

1.    To refile, the Applicant entity shall submit a new Pre-Application Review record under Section 104.03(a). If DCR determines the proposed Business Premises location complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code, the Applicant shall submit a Temporary Approval Application with all required information, forms and documents within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the Pre-Application Review record is eligible for further processing. The Applicant shall submit payment of all required fees, pursuant to Section 104.19, by the dates listed on the invoice(s). If a Pre-Application Review record filed pursuant to this subsection is ineligible for further processing, the Applicant shall be permitted to submit a new Pre-Application Review record(s) identifying new Business Premises location(s), subject to the payment of any applicable fee in Section 104.19, and provided that the new Business Premises location(s) is submitted within the original one (1) calendar year time limitation.

2.    The refiled Temporary Approval Application may not seek authorization to conduct any Commercial Cannabis Activities not listed in the original Temporary Approval Application or outside the Community Plan Area listed in the original Temporary Approval Application. A refiled Temporary Approval Application is not subject to a finding of Undue Concentration. Applications originally subject to a finding of public convenience or necessity under Section 104.04(a)(4) shall be refiled at the same proposed Business Premises, otherwise the procedures for refiled Applications are unavailable.

3.    A refiled Temporary Approval Application that is later deemed abandoned for any reason may not be refiled.

4.    Temporary Approval Applications abandoned, for any reason, prior to January 1, 2022, may not be refiled.

5.    Temporary Approval Applications previously denied, denied by operation of law, or deemed ineligible for further processing may not be refiled.

(k)    **Processing Timeframes. (Added by Ord. No. 187,459, Eff. 4/15/22.)** Application and modification processing pursuant to Sections 104.03 or 104.06 shall be conducted within the following timeframes. Processing timeframes begin upon the filing of the relevant Application or modification record, i.e., the submission of all required and completed information, forms, and documents through the DCR Licensing Portal for that particular Application or modification process, and the payment of all relevant fee(s) under Section 104.19 for that Application or modification process. Processing timeframes shall be automatically suspended when DCR's personnel vacancy rate is 20% or higher.

1.    **Pre-Application Review Processing.**

(i)    Within 10 days of the submission of a Pre-Application Review record through the DCR Licensing Portal, DCR shall issue the Applicant a Pre-Application Review Fee invoice. Pre-Application Review records shall comply with the requirements in the Rules and Regulations.

(ii)    Within 30 days of the filing of a Pre-Application Review record, DCR shall determine whether the Applicant's proposed Business Premises complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code and notify the Applicant of DCR's determination by electronic mail.

(iii)    Upon DCR's determination that an Applicant's Business Premises complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code, the Applicant shall submit a Temporary Approval Application or annual License Application through the DCR Licensing Portal in accordance with subdivision 2. The Pre-Application Review record will be deemed abandoned if a Temporary Approval Application or annual License Application is not timely submitted.

2.    **Temporary Approval Processing.**

(i)    The Applicant shall submit a Temporary Approval Application or annual License Application through the DCR Licensing Portal, including all required information, forms, and documents, within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the Pre-Application Review record is eligible for further processing. Temporary Approval Application records shall comply with the requirements in the Rules and Regulations. The Applicant shall submit payment of the Temporary Approval Fee(s), pursuant to Section 104.19, by the date listed on the invoice.

(ii)    Within 60 days of the filing of a Temporary Approval Application through the DCR Licensing Portal, DCR shall conduct its initial review of the Temporary Approval Application for completeness.

(A)    If the Applicant files a modification request through the DCR Licensing Portal within 60 days of the submission of a Temporary Approval Application, DCR shall review the modification request within 30 days of the filing of the modification request, and, if approved, complete its review of the Temporary Approval Application within 60 days of the approval of the modification request.

(B)    Once DCR completes its review of the Temporary Approval Application, an Applicant may submit only the modification request types permitted in the Rules and Regulation until a License or Temporary Approval is issued.

(iii)    If DCR determines that the Application is complete, DCR shall update the Application status to "Local Compliance Underway" within seven (7) days of its determination. If DCR determines there are any deficiencies in the Temporary Approval Application, DCR shall notify the Applicant by electronic mail of the specific information, forms or documents required by DCR, and the Applicant shall provide the required information, forms or documents through the

DCR Licensing Portal within 30 days of that notification. Within 30 days of an Applicant's submission of the required additional information, forms or documents through the DCR Licensing Portal, DCR shall complete its follow-up review.

(iv)   Within 45 days of a request for an Initial Inspection through the DCR Licensing Portal, DCR shall conduct the Initial Inspection.

(v)   Within 15 days of an Applicant passing the Initial Inspection or DCR determining that all Temporary Approval information, forms and documents have been submitted and are complete, whichever occurs last, DCR shall issue Temporary Approval.

3.   **Relocation Modification Processing.**

(i)   Within 15 days of the submission of a relocation request through the DCR Licensing Portal, DCR shall issue the Applicant or Licensee an invoice for the Business Premises Relocation Fee.

(ii)   Within 30 days of the filing of a relocation request, DCR shall determine whether the proposed Business Premises complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code and notify the Applicant or Licensee of OCR's determination by electronic mail. Once DCR determines that the proposed Business Premises complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code, the Applicant or Licensee may submit a new Temporary Approval Application for the new Business Premises.

4.   **Ownership Modification Processing.**

(i)   Within 15 days of the submission of an ownership modification request through the DCR Licensing Portal, DCR shall issue the Applicant or Licensee an invoice for the applicable modification fee(s) pursuant to Section 104.19.

(ii)   Within 30 days of the filing of an ownership modification request, DCR shall make a determination on the modification request and notify the Applicant or Licensee of DCR's determination by electronic mail. If DCR determines that the proposed ownership modification violates any provision of Article 4 of Chapter X of this Code or the Rules and Regulations, upon notice from DCR, the Applicant or Licensee shall be permitted to further amend its request as necessary within 30 days to correct any deficiencies, subject to the restrictions on removing or replacing the individual Owner who is the Social Equity Individual Applicant, as specified in Section 104.03(e)(2).

(iii)   If all Owners are transferring their ownership interest pursuant to Section 104.03(e)(2)(iii), the Applicant or Licensee shall resubmit all Application information, forms and documents, and pay all required fees, within 30 days of the date DCR notifies the Applicant by electronic mail that the modification request is eligible for further processing.

5.   **Entity Substitution Processing.**

(i)   Within 15 days of the submission of a modification request to substitute the Applicant or Licensee listed on an Application, Temporary Approval, or License through the DCR Licensing Portal, DCR shall issue the Applicant or Licensee an invoice for the applicable modification fee(s) pursuant to Section 104.19.

(ii)   Within 30 days of the filing of a modification request to substitute the Applicant or Licensee on an Application, Temporary Approval, or License, DCR shall make a determination on the modification request. If DCR determines the modification request is eligible for further processing, the Applicant or Licensee shall submit a new Temporary Approval Application and all

required information, forms and documents for the new Applicant entity within 30 days of the date DCR notifies the Applicant by electronic mail that the modification request is eligible for further processing. Once a new Temporary Approval Application is filed, upon request from the State, DCR shall confirm the Applicant's Temporary Approval Application status is "Local Compliance Underway".

(iii)   DCR shall not issue a Temporary Approval or License to the new Applicant until it meets the requirements for Temporary Approval or a License. If the original Licensee has been issued Temporary Approval or a License, it shall request cancellation of that Temporary Approval or License before Temporary Approval or a License may be issued to the new Applicant entity. The original Licensee may continue to conduct Commercial Cannabis Activity until the License or Temporary Approval expires or the original Licensee requests cancellation of the Temporary Approval or License issued to it, whichever is earlier.

### SEC. 104.04. FINAL INSPECTION AND COMMUNITY MEETING.
**(Title and Section Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)   DCR shall conduct Final Inspections in the manner as provided in the Rules and Regulations. A completed application shall be referred by DCR for Final Inspection as provided in the Rules and Regulations. All applicants must pass a Final Inspection prior to the issuance of a License.

(b)   DCR shall conduct a community meeting via video or telephone conferencing or within the defined geographic area of the Area Planning Commission within which the Business Premises is situated. At the meeting, DCR shall accept written and oral testimony regarding the application and then prepare a written report to the Cannabis Regulation Commission summarizing the testimony in favor and against the application. Notice of the community meeting shall be provided as specified in Section 104.05(b). This subsection shall not apply to an application for Non-Retailer Activity in a Business Premises less than 30,000 square feet or Non-Storefront Retailer Activity. The Applicant shall pay the required Community Meeting Fee pursuant to Section 104.19(e).

(c)   Within 10 days of receipt of the Notice of Complete application, the Applicant or a designated representative shall contact the Neighborhood Council and offer to appear before the Neighborhood Council to address questions about the application. Written evidence shall be provided to DCR such as an email to the Neighborhood Council or a copy of their meeting minutes.

### SEC. 104.05. NOTICE.
**(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)   **General.** Whenever notice is required under this article, the Applicant shall bear the cost of mailing and posting of the notice in accordance with the mailing procedures in the Rules and Regulations and the applicable notice fees pursuant to Section 104.19(d). The Department or Executive Director may adopt Rules and Regulations consistent with this section for the posting of notices.

(b)   **Types of Notice.**

1.   **Written Notice.** Written notices shall contain the following information: purpose of the notice, name of the Applicant, application number, Business Premises address, Commercial Cannabis Activities requested, and the Council District and Community Plan Area in which the Business Premises is located. The notice shall also inform interested parties on how to provide DCR with information about the application. DCR shall post written notices on its website and shall send via electronic mail to: (1) the closest neighborhood council; (2) the business improvement district, if applicable; and (3) the City Council Office within which the Business Premises is situated.

2. **Mailed Notice.** Mailed notices shall contain the following information: date, time and place where the community meeting or public hearing will be held, or if the community meeting will be held online, a link to the webinar or virtual meeting. The notice shall also include: the purpose of the meeting, name of the Applicant, application number, Business Premises address, Commercial Cannabis Activities requested, and the Council District and Community Plan Area in which the Business Premises is located. The notice shall inform interested parties how to provide DCR with information about the application. DCR shall post the mailed notice on its website and shall send the notice by U.S. mail to: (1) the Applicant; (2) Applicant's authorized agents or representatives; (3) Owner or owners listed on the Application; and (4) the owners and occupants of all property within 500 feet of the property line of the lot on which the subject Business Premises is located. For the purpose of notification of property owners, the last known name and address of owners as shown on the records of the City Engineer or the records of the County Assessor shall be used. For occupants, the notice shall be addressed to "occupant" and mailed to all property addresses within the 500-foot radius. Where all property within the 500-foot radius is under the same ownership as the Business Premises, the owners of all property that adjoins that ownership, or is separated from it only by a street, alley, public right-of-way or other easement, shall also be notified as set forth above. In addition, DCR shall post the notice on its website and shall send the notice by electronic mail to: (1) the closest neighborhood council; (2) the business improvement district, if applicable; and (3) the City Council Office within which the Business Premises is situated.

3. **Posted Notice.** Posted notices shall contain the following information: date, time and place where the meeting or public hearing will be held, or if the meeting will be held online, a link to the webinar or virtual meeting. The notice shall also include: the purpose of the meeting, name of the Applicant, application number, Business Premises address, Commercial Cannabis Activities requested, and the Council District and Community Plan Area in which the Business Premises is located. The notice shall also inform interested parties how to provide DCR with information about the application. The notice shall be posted in a conspicuous place on the property where the Business Premises is located. The notice shall be provided by DCR electronically and printed by the Applicant on a minimum of 11" x 17" paper size with a minimum 20 font size. The notice shall be posted immediately upon receipt from DCR.

(c) **Required Notices.**

1. **Notice of Complete Application.** Within 10 days of DCR's determination that an application is complete, DCR shall provide written notice as described in Subsection (b)(1). The Applicant shall provide written evidence to DCR that the Applicant offered to appear before the relevant neighborhood council to address questions about the application.

2. **Notice of Community Meeting.** No less than 20 days prior to the date of any community meeting required under this article, DCR shall provide Mailed and Posted Notice of the meeting as described in Subsections (b)(2) and (3).

3. **Notice of Cannabis Regulation Commission Public Hearing.** No less than 20 days prior to the date of any Cannabis Regulation Commission hearing required under this article, DCR shall provide mailed and posted notice of the hearing as described in Subsection (b)(2) and (3).

4. **Notice of Public Convenience or Necessity (PCN) Request Filing.** Within 10 days of DCR transmitting an applicant's request to the City Clerk that the City Council find that approval of the license application would serve the public convenience or necessity, DCR shall provide written notice under Section 104.05(b)(1). **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

5. **Notice to Interested Parties.** Upon written request to DCR, any Person shall be placed on DCR's interested party notification list to receive notices required under this section by email.

## SEC. 104.06. ISSUANCE OF LICENSE.
### (Amended by Ord. No. 186,703, Eff. 7/10/20.)

(a)   **Storefront Retailer Commercial Cannabis Activity.** With respect to an application for a License for Storefront Retailer Commercial Cannabis Activity or for Microbusiness Commercial Cannabis Activity that includes Storefront Retailer Commercial Cannabis Activity, DCR shall either deny the issuance of the License with no hearing at any time during application processing, or, within 90 calendar days of the date DCR deems the application complete, make a recommendation to the Commission to issue the License. The date of the recommendation shall be the date when DCR transmits its report to the Commission for consideration to be scheduled at a future Commission meeting. DCR shall process applications specified in this subsection consistent with the Social Equity Program processing specified in Section 104.20(c)(4)(i). Except as otherwise permitted under Section 104.07, Type 10 Licenses shall be limited to only Social Equity Applicants, as defined in Section 104.20(a) and (b), until January 1, 2025.

1.   DCR may deny, with no hearing and based upon written findings and evidence in the record, the issuance of a License where the Applicant fails to meet any of the requirements of Article 5 of Chapter X of this Code, or for any of the following reasons:

(i)   The Applicant's Business Premises is substantially different from the diagram of the Business Premises submitted by the Applicant, in that the size, layout, location of common entryways, doorways, or passage ways, means of public entry or exit, or limited-access areas within the Business Premises are not the same;

(ii)   The Applicant denied DCR employees or agents access to the Business Premises;

(iii)   The Applicant made a material misrepresentation or false statement on the application, or knowingly failed to disclose a material fact or any documentation required by the Department;

(iv)   The Applicant failed timely to provide DCR with additional requested information, including documentation;

(v)   The Applicant was denied a license, permit or other authorization to engage in Commercial Cannabis Activity by any state or other local licensing authority due to any illegal act or omission of the Applicant;

(vi)   Issuance of a License would create a significant public safety problem as documented by a law enforcement agency;

(vii)   The Applicant's Business Premises is located in a Community Plan Area which has reached Undue Concentration, unless the City Council has adopted written findings that approval of the License application would serve public convenience or necessity, supported by evidence in the record;

(viii)   The Applicant failed to adhere to the requirements of this article or the Rules and Regulations;

(ix)   The Applicant engaged in unlicensed Commercial Cannabis Activity in violation of Section 104.15;

(x)   The Applicant's Business Premises was the site of Unlicensed Commercial Cannabis Activity, in violation of Section 104.15, on or after January 1, 2018;

(xi)   Temporary Approval has been revoked; or

(xii)   The Applicant is ineligible for a License under Section 104.03.

2.   DCR's decision to deny the issuance of the License is final and effective upon the close of the 15-day appeal period if not timely appealed to the Commission by the Applicant as provided in Section 104.10. There is no further appeal to the City Council. A final denial of a License or exhaustion of all administrative appeals shall terminate any active Temporary Approval.

3.   If the decision by DCR is to recommend approval of the application, then the Commission shall make the determination whether to issue the License after it conducts a public hearing. Notice of the public hearing shall be made pursuant to Section 104.05(b). Prior to making its decision, the Commission shall accept and consider written information submitted and oral testimony. The Commission shall consider the decision by DCR to recommend approval of the application, the written summary of the community meeting prepared by DCR, the record before DCR and any written information and oral testimony timely provided to the Commission.

(i)   The Commission may deny the issuance of the License for any of the reasons stated in Section 104.06(a)(1) of this article, based upon written findings and evidence in the record. The Commission's decision to deny the issuance of the License is final and effective upon the close of the 15-calendar day appeal period if not timely appealed to the City Council by the Applicant as provided in Section 104.10.

(ii)   The Commission may approve the issuance of the License with written findings and evidence in the record to support that the Applicant and Business Premises meet the restrictions of Article 5 of Chapter X of this Code. The Commission may impose conditions to address public safety concerns based on findings and evidence in the record. The Commission shall not approve the issuance of a License for an Applicant with a Business Premises located in a Community Plan Area of Undue Concentration unless the City Council has found that approval of the application would serve public convenience or necessity.

(iii)   The Commission's decision to approve the issuance of the License is final and effective upon the close of the 15-day appeal period if not timely appealed to the City Council by the Applicant or any other person aggrieved by the decision, as provided in Section 104.10.

(b)   **Non-Retailer Commercial Cannabis Activity in a Business Premises Less than 30,000 Square Feet or Non-Storefront Retailer Commercial Cannabis Activity.** With respect to an application for a License for Non-Retailer Commercial Cannabis Activity where the Business Premises is less than 30,000 square feet or Non-Storefront Retailer Commercial Cannabis Activity, DCR shall either deny the issuance of the License with no hearing at any time during application processing or, within 90 calendar days of the date DCR deems the application complete, approve the issuance of the License with no hearing. Prior to making its decision, DCR shall consider written information submitted by the public and other interested parties. DCR's decision shall be based on written findings and evidence in the record to support that the Applicant and Business Premises meet the restrictions of Article 5 of Chapter X of this Code. DCR may approve the issuance of the License with the imposition of conditions to address public safety concerns. DCR shall process applications specified in this subsection consistent with the Social Equity Program processing specified in Section 104.20(c)(4)(i). Except as otherwise permitted under Sections 104.07 and 104.08, Types 1A, 1C, 2A, 3A, 4, 5A and 9 Licenses shall be limited to only Social Equity Applicants, as defined in Section 104.20(a) and (b), until January 1, 2025. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

1.   DCR's decision to approve or deny the issuance of the License is final and effective upon the close of the 15 calendar-day appeal period if not timely appealed to the Commission by the Applicant or any other person aggrieved by the decision, as provided in Section 104.10. A final denial of a License or exhaustion of all administrative appeals shall terminate any active Temporary Approval.

(c) **Non-Retailer Commercial Cannabis Activity in a Business Premises 30,000 Square Feet or Larger.** With respect to an application for a License for a Non-Retailer Commercial Cannabis Activity in a Business Premises 30,000 square feet or larger, DCR shall either deny the issuance of the License with no hearing at any time during application processing or, within 90 calendar days of the date DCR deems the application complete, make a recommendation to the Commission to issue the License. The date of the recommendation shall be the date when DCR transmits its report to the Commission for consideration to be scheduled at a future Commission meeting. DCR shall process applications specified in this subsection consistent with the Social Equity Program processing specified in Section 104.20(c)(4)(i). Except as otherwise permitted under Sections 104.07 and 104.08, Types 1A, 1C, 2A, 3A, 4, 5A and 9 Licenses shall be limited to only Social Equity Applicants, as defined in Section 104.20(a) and (b), until January 1, 2025. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

1. DCR may deny the issuance of the License based on written findings, evidence in the record, and for any of the reasons listed in Section 104.06(a)(1). DCR's decision to deny the issuance of the License is final and effective upon the close of the 15-calendar day appeal period if not timely appealed to the Commission by the Applicant, as provided in Section 104.10. There is no further appeal to the City Council. A final denial of a License or exhaustion of all administrative appeals shall terminate any active Temporary Approval.

2. If DCR recommends approval of the application, then the Commission shall make the determination whether to issue the License after it conducts a public hearing. Notice of the public hearing shall be made pursuant to Section 104.05(c)(3). Prior to making its decision, the Commission shall accept and consider written information submitted and oral testimony. The Commission shall consider the decision by DCR to recommend approval of the application, the written summary of the community meeting prepared by DCR, the record before DCR and any written information and oral testimony timely provided to the Commission. The Commission may approve the issuance of the License based on written findings and evidence in the record to support that the Applicant and Business Premises meet the restrictions of Article 5 of Chapter X of this Code. The Commission may also impose conditions to address public safety concerns. The Commission may deny the issuance of the License based on written findings, evidence in the record and for any of the reasons stated in Section 104.06(a)(1) of this article.

3. The Commission's decision to approve or deny the issuance of the License is final and effective upon the close of the 15 calendar-day appeal period if not timely appealed to the City Council by the Applicant or any other person aggrieved by the decision, as provided in Section 104.10. A final denial of a License or exhaustion of all administrative appeals shall terminate any active Temporary Approval.

(d) **Temporary Approval. (Amended by Ord. No. 187,459, Eff. 4/15/22.)** DCR may, at its discretion, issue Temporary Approval to engage in Commercial Cannabis Activity at a Business Premises location provided that the Applicant pays the Temporary Approval Application Fee for each Commercial Cannabis Activity, pursuant to Section 104.19, and the following requirements are met: (1) the Business Premises location passes an Initial Inspection; (2) the Applicant submits the required information, forms and documents; (3) the Applicant agrees to indemnify the City on a form provided by DCR; and (4) if applicable, Applicants subject to Section 104.20 provide all business records and agreements necessary to demonstrate that the Social Equity Individual Applicant owns at least the minimum Equity Share required under Section 104.20(a)(2). Applicants seeking Temporary Approval shall submit all required information, forms, and documents through the DCR Licensing Portal within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the Pre-Application Review record is eligible for further processing. A Temporary Approval Application shall be deemed abandoned pursuant to Section 104.03(h) if not timely submitted within one (1) calendar year. Issuance of a Temporary Approval does not create a vested right in the holder to either a renewal of the Temporary Approval, or to the issuance of a subsequent nontemporary License. Temporary Approval authorizes the Applicant to conduct Commercial Cannabis Activity(ies), subject to the Applicant obtaining all necessary permits, licenses, or other authorizations required by law from the City, State or other public agencies. Temporary Approval does not waive or otherwise circumvent other City or State requirements or necessary permits from the City, State, or other public agencies, including, but not limited, to, a Certificate of Occupancy, permit or authorization of the Los Angeles Fire Department, health permit from the County of Los Angeles, or authorization from the State. If at

any time during the processing of an Application or after the issuance of Temporary Approval it is discovered that an Application has been improperly prepared or required information, forms or documents have not been submitted in accordance with this Code or the Rules and Regulations, upon notification to the Applicant, processing of that Application shall be suspended until the Application has been corrected or the required information, forms or documents are provided. Material misrepresentations, false statements, or the failure to disclose a material fact in a Temporary Approval Application or modification request may result in the denial of Temporary Approval.

1.   DCR may immediately suspend a Temporary Approval without a hearing based upon: (1) notice from another City, State, or other public agency that an Applicant's use of or conduct at the Business Premises poses an imminent threat to life or public safety; (2) notice to DCR or DCR's discovery that the Applicant is conducting Commercial Cannabis Activity without all necessary permits, inspections or similar clearances to operate from another City, State or other public agency; or (3) notice from the State or DCR's discovery that the Applicant is conducting Commercial Cannabis Activity without an active State license for that Commercial Cannabis Activity. DCR's written findings shall conform with Section 104.13(c). After suspension, the Applicant may request an administrative hearing pursuant to Section 104.14. An Applicant may not conduct Commercial Cannabis Activity while Temporary Approval is suspended.

(i)   If DCR suspends a Temporary Approval because the Applicant is conducting Commercial Cannabis Activity at Business Premises without authorization from the State or without a required permit inspection or clearance to operate from another City, State or public agency, DCR may reinstate Temporary Approval if the Applicant provides evidence of the relevant State license(s) or required permit, inspection or clearance to operate, or if such a showing is made during an administrative hearing.

2.   DCR may issue a Notice of Violation based upon notice from another City, State, or other public agency, including but not limited to the Los Angeles Fire Department or Department of Building and Safety, that the Applicant has not taken the necessary corrective action to cure a violation, notice to correct, or other form of non-compliance within 90 days, or other time allotted by the citing agency. DCR's written findings shall conform with Section 104.13(c). The Applicant may request an administrative hearing pursuant to Section 104.14.

3.   DCR may issue a Notice of Violation based upon evidence that the Temporary Approval was procured by fraud, misrepresentation, deceit, or material misstatement of fact in the application for licensure. DCR's written findings shall conform with Section 104.13(c). The Applicant may request an administrative hearing pursuant to Section 104.14.

(e)   **CEQA.** Compliance with the California Environmental Quality Act (CEQA).

1.   **CEQA Definitions.** The following definitions shall apply in this subsection:

(i)   **"CEQA"** means the California Environmental Quality Act, California Public Resources Code Sections 21000 et seq. (CEQA Guidelines, Section 15353.)

(ii)   **"Environment"** means the physical conditions which exist within the area which will be affected by a proposed project including land, air, water, minerals, flora, fauna, ambient noise, and objects of historical or aesthetic significance. The area involved shall be the area in which significant effects would occur either directly or indirectly as a result of the project. The "environment" includes both natural and man-made conditions. (CEQA Guidelines, Section 15360.)

(iii)   **"Lead Agency"** means the public agency which has the principal responsibility for carrying out or approving a project. The Lead Agency will decide whether an EIR or Negative

Declaration will be required for the project and will cause the document to be prepared. Criteria for determining which agency will be the Lead Agency for a project are contained in Section 15051. (CEQA Guidelines, Section 15367.)

(iv)  "**Project**" means the whole of an action, which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment as defined by CEQA Guidelines Section 15378.

(v)  "**Responsible Agency**" means a public agency which proposes to carry out or approve a project, for which a Lead Agency is preparing or has prepared an EIR or Negative Declaration. For the purposes of CEQA, the term "Responsible Agency" includes all public agencies other than the Lead Agency which have discretionary approval power over the project. (CEQA Guidelines, Section 15381.)

(vi)  "**Significant Effect on the Environment**" means a substantial, or potentially substantial, adverse change in any of the physical conditions within the area affected by the project, including land, air, water, minerals, flora, fauna, ambient noise, and objects of historic or aesthetic significance. An economic or social change by itself shall not be considered a significant effect on the environment. A social or economic change related to a physical change may be considered in determining whether the physical change is significant. (CEQA Guidelines, Section 15382.)

2.  Prior to the submission of an annual License Application containing a complete project description for a License, and payment of all applicable fees, DCR shall consider whether the Project has been subject to prior environmental review under CEQA and, if not, what form of environmental review for the License is appropriate. If DCR proposes to act as the local Lead Agency under CEQA, DCR shall prepare, or oversee the preparation of, the appropriate CEQA document which may include: reliance on one or more categorical or statutory exemptions, a negative declaration or mitigated negative declaration, an environmental impact report, a sustainable communities environmental assessment, an addendum or other document provided by CEQA. The Commission or its designee shall consider and adopt the CEQA document prior to issuance of the License. If a Significant Effect on the Environment is identified, the Commission or its designee shall adopt one or more findings, supported by substantial evidence in the record, consistent with Public Resources Code Sections 21081 and 21081.6, and CEQA Guidelines Section 15091. Alternatively, if DCR acts as a Responsible Agency under CEQA, the Commission or its designee, prior to approval of a License, shall consider the Lead Agency's environmental document and make the findings required by Public Resources Code Section 21081, and CEQA Guidelines Sections 15096(g)-(h) and 15050(b). **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

3.  Appeals concerning CEQA may be filed pursuant to the procedures in LAMC Section 197.01 et seq. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

## SEC. 104.06.1. SOCIAL EQUITY PROGRAM COMMERCIAL CANNABIS ACTIVITY APPLICATION PROCESSING.
**(Title and Section Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)  DCR shall process an Application under this section consistent with Section 104.20(c)(4)(i). Applications that meet the requirements of this section shall be eligible for further processing pursuant to Section 104.06.

(b)  **Type 10 Application Processing – Round 1.**

1.  **Social Equity Individual Applicant Verification.** For a period of 60 calendar days, beginning on a date at DCR's sole discretion, an individual may apply to be verified as a Tier 1 or Tier 2 Social Equity Individual Applicant as defined in Section 104.20(a). DCR's determination of whether an individual is a

Social Equity Individual Applicant shall be made with no hearing, is final and not appealable. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

2.    **Application Period.** DCR shall, on a date starting at its sole discretion, accept Type 10 applications for processing under this subsection for a period of 14 calendar days, provided that DCR posts written notice of the processing period on its website at least 15 calendar days before the start date of the processing period. DCR shall not accept or process applications under this subsection before it has made technical assistance available for a period of at least 45 calendar days to prospective or verified Social Equity Applicants, as defined in Section 104.20.

3.    To be eligible to apply in Round 1, an Applicant shall have an individual Owner that is a Tier 1 or Tier 2 Social Equity Individual Applicant verified pursuant to this subsection and who owns an Equity Share in the Applicant that meets the requirements of Section 104.20(a). An individual may not be the Tier 1 or Tier 2 Social Equity Individual Applicant for more than one Applicant in Round 1. An individual who is an Owner of an EMMD shall not be eligible to be the Tier 1 or Tier 2 Social Equity Individual Applicant for an Applicant, but may be an Owner of an Applicant if otherwise allowed under this article.

4.    During the 14-calendar-day application period, an Applicant shall submit, in a form and manner determined by DCR, an application that includes all of the following: (1) a copy of an executed lease agreement or property deed for its Business Premises; (2) an ownership and financial interest holder form; (3) a financial information form; (4) a Business Premises diagram; (5) proposed staffing and security plans; (6) a dated radius map including horizontal lines and labeling of any sensitive uses relative to a Type 10 License; (7) a labor peace agreement attestation form; (8) an indemnification agreement provided by DCR; and (9) all business records and agreements necessary to demonstrate that a Tier 1 or Tier 2 Social Equity Applicant owns the minimum Equity Share in the Applicant required under Section 104.20. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

5.    An Applicant's Business Premises shall meet the following requirements:

(i)    The Business Premises meets all applicable requirements of Article 5 of Chapter X of this Code;

(ii)    The Business Premises is outside of a 700-foot radius of another Type 10 Applicant's Business Premises, as measured in the manner specified in Section 105.02(b) of this Code. If two or more Round 1 Applicants' Business Premises are within a 700-foot radius of one another, the Applicant who first submitted an application that meets the requirements of this subsection shall be eligible for further processing and all other Round 1 Applicants within a 700-foot radius of the first Applicant shall be ineligible for further processing in Round 1.

(iii)    The Business Premises is not subject to a finding of Undue Concentration. For purposes of this subsection only, DCR shall determine whether the Business Premises is subject to a finding of Undue Concentration based upon the time and date an Applicant submitted an application that meets the requirements of this subsection.

6.    The first 75 Tier 1 Applicants and the first 25 Tier 2 Applicants who meet the requirements of this subsection shall be eligible for further processing pursuant to Section 104.06. If less than 75 Tier 1 Applicants meet the requirements of this subsection, DCR may process additional Tier 2 applications, based upon the time and date of application submission, until DCR has identified 100 Tier 1 and Tier 2 Applicants who meet the requirements of this subsection. All Applicants who submitted an application that are not eligible for further processing and qualify under Section 104.06.1(c)(3) may apply for Type 10 Application Processing - Round 2. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

7.  DCR shall, subject to review of any applications previously deemed ineligible as described below, process Applications up to and including DCR Record No. LA-C-19-310245-R-APP from the list published by DCR titled "Phase 3 Retail Round 1 Submissions (09/03/19, 10 am to 09/17/2019 10 am)", dated September 26, 2019. Notwithstanding any prior notice and/or action by DCR, Applicants that were deemed ineligible for further processing due to a Community Plan Area having reached Undue Concentration on or after September 3, 2019, or the failure to submit proof of deposit may be deemed eligible for further processing if all other requirements are met. Applications deemed eligible for further processing under Section 104.06.1(b)(6) as of January 1, 2020, and Applications deemed eligible for further processing under Section 104.06.1(b)(7) after January 1, 2021, shall not be included in the calculation of Undue Concentration, as defined in Section 104.01(a)(49). **(Amended by Ord. No. 187,058, Eff. 7/4/21.)**

8.  An Applicant shall pay all required application fees pursuant to Section 104.19 within 30 days of being issued an invoice by DCR or its application shall be deemed abandoned. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

(c)  **Type 10 Application Processing – Round 2.**

1.  **Applicant Eligibility Verification.** DCR shall establish a 60 calendar day eligibility verification period for individuals to apply to be verified under the revised eligibility criteria in Section 104.20(b). An Applicant shall pay the SEIA Eligibility Verification Fee pursuant to Section 104.19(a) within 30 days of being issued an invoice by DCR. DCR shall have at least 90 calendar days to determine Social Equity Applicant eligibility which shall not run concurrently with the 60-calendar day eligibility verification period. DCR's determination of whether an individual is a Social Equity Individual Applicant shall be made with no hearing, is final and not appealable. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

2.  **Registration Period.** DCR shall, on a date beginning at its sole discretion, accept registrations for an Application lottery under this subsection for a period of 30 calendar days from verified Social Equity Individual Applicants, as defined in Section 104.20(b). DCR shall not accept registrations under this subsection before it has made technical assistance available for a period of at least 45 calendar days to prospective or verified Social Equity Individual Applicants. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

3.  **Social Equity Individual Applicant.** To be eligible to participate in the Application lottery pursuant to Subsection (c)(4), the Applicant shall have an individual Owner that is a Social Equity Individual Applicant verified pursuant to Subsection (c)(1). The Social Equity Individual Applicant must have a prior California Cannabis Arrest or Conviction and must also meet one of the following two criteria, as defined in Section 104.20(b)(1)(i): (1) Low-Income; or (2) ten years' cumulative residency in Disproportionately Impacted Area. A Social Equity Individual Applicant shall be disqualified from participating in the Application lottery for any of the offenses specified in Section 104.03(a)(1) or for any of the circumstances in Section 104.03(a)(2).

4.  **Application Lottery.** Verified Social Equity Individual Applicants who have registered pursuant to subdivision 2 shall be entered into an Application lottery. DCR may identify as many Social Equity Individual Applicants eligible for further processing through an Application lottery as there are total available Licenses in Community Plan Areas that have not reached Undue Concentration. Social Equity Individual Applicants shall be randomly selected during the lottery, which shall take place at a location, date and time determined by DCR in its sole discretion. DCR shall post a notice at least 15 calendar days prior to the lottery, which shall include the procedures and protocol to conduct the lottery and information regarding how the public can view or live stream the event. Applications drawn at the lottery shall be processed pursuant to Section 104.06.1(c)(5). **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

5.  **Business Premises.** Social Equity Individual Applicants selected during the Application lottery shall be afforded a maximum of one (1) calendar year from the date of the Application lottery to

complete the Pre-Application Review process using a compliant property in any Community Plan Area that has not reached Undue Concentration on a first come, first served basis until each Community Plan Area has reached Undue Concentration. Social Equity Individual Applicants shall submit a Pre-Application Review record through the DCR Licensing Portal, including all documents as determined by DCR, and pay a Pre-Application Review Fee pursuant to Section 104.19 for DCR to determine the eligibility of a proposed Business Premises location pursuant to Section 104.03(a)(3) and Article 5 of Chapter X of this Code. Pre-Application Review records shall be processed by DCR in the order filed. A Social Equity Individual Applicant whose Business Premises location is deemed ineligible under Section 104.03(a)(3) and/or Article 5 of Chapter X of this Code shall be permitted to submit new Pre-Application Review record(s) identifying new Business Premises location(s), subject to the payment of any applicable fee in Section 104.19, and provided that the new Business Premises location(s) is submitted within the original one (1) calendar year time limitation. If the Pre-Application Review record is deemed eligible for further processing, the Social Equity Individual Applicant shall submit a Temporary Approval Application or annual License Application through the DCR Licensing Portal, including all required information, forms, and documents, within one (1) calendar year of the date DCR notifies the Applicant by electronic mail that the Pre-Application Review record is deemed eligible for further processing. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

6.   **Additional Application Lottery.** If additional capacity is available in any Community Plan Area after a lottery ends, DCR will hold another lottery pursuant to Subsection (c)(4).

7.   **Application Fees.** An Applicant shall pay all required application fees pursuant to Section 104.19 within 30 days of being issued an invoice by DCR, or the application shall be deemed abandoned. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

(d)   **Public Convenience or Necessity Application Processing. (Amended by Ord. No. 187,095, Eff. 7/1/21.)** In addition to Type 10 applications processed in Round 1 and Round 2 under this section, on or after September 3, 2019, DCR shall process any Type 10 application with a Business Premises located in a Community Plan Area that has reached Undue Concentration if the Applicant meets the following requirements:

1.   The Applicant has an individual Owner who is a Social Equity Individual Applicant who has been verified pursuant to Section 104.20;

2.   The Applicant submits a Pre-Application and pays a Pre-Application Review Fee pursuant to Section 104.19 for DCR to determine compliance of the Business Premises location pursuant to Section 104.03(a)(3) and Article 5 of Chapter X of this Code;

3.   The Business Premises location complies with Section 104.03(a)(3) and Article 5 of Chapter X of this Code, and the Applicant submits, in a form and manner determined by DCR, all required documents and information;

4.   The City Council, pursuant to Section 104.03(a)(4), has found that approval of the application would serve public convenience or necessity;

5.   Applicants who submit an application that meets the requirements of Subdivisions 1., 2., 3. and 4. of this subsection shall then submit a Temporary Approval Application Fee pursuant to Section 104.19 within 30 days of the City Council's action becoming final. Applicants shall also submit, in a form and manner determined by DCR, the information and documents required in Section 104.06(d). An Applicant who fails to meet these requirements in the time allotted by DCR shall have its application deemed abandoned.

6.   Applicants who submit an application that meets the requirements of this subsection shall be eligible for further processing pursuant to Section 104.06.

7. An Applicant shall pay all required application fees under Section 104.19 within 30 days of being issued an invoice by DCR or its application shall be deemed abandoned.

(e) **Type 9 Application Processing.**

    1. **Applicant Eligibility Verification.** Social Equity Individual Applicants verified pursuant to Section 104.20(a) or (b) may participate in application processing under this subsection. DCR's determination of whether an individual is a Social Equity Individual Applicant shall be made with no hearing, is final and not appealable.

    2. **Application Period.** DCR shall, on a date beginning at its sole discretion, accept applications for processing under this subsection, provided that it posts written notice on its website at least 15 calendar days before the start date of the processing period. To be eligible for processing under this subsection, a Type 9 Applicant shall submit the following application documents: (1) a copy of an executed lease agreement with proof of a deposit or property deed for its Business Premises; (2) a Business Premises diagram; and (3) a dated radius map including horizontal lines and labeling of any sensitive uses relative to a Type 9 License.

    3. An Applicant who submitted a complete application pursuant to Subsection (b) of this section, but was ineligible for further processing because its Business Premises was in a Community Plan Area that reached Undue Concentration or was within a 700-foot radius of another Type 10 application, shall receive priority processing for a Type 9 License relative to all other Social Equity Applicants applying for Type 9 License.

    4. **Application Fees.** An Applicant shall pay all required application fees pursuant to Section 104.19 within 30 days of being issued an invoice by DCR, or its application shall be deemed abandoned. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

(f) **Non-Retail Application Processing.**

    1. **Applicant Eligibility Verification.** Social Equity Applicants verified pursuant to Section 104.20(a) or (b) may participate in application processing under this subsection. DCR's determination of whether an individual is a Social Equity Individual Applicant shall be made with no hearing, is final and not appealable.

    2. **Application Period.** DCR shall, on a date beginning at its sole discretion, accept applications for processing under this subsection, provided that it posts written notice on its website at least 15 calendar days before the start date of the processing period. To be eligible for processing under this subsection, an Applicant shall submit the following application documents: (1) letter from the landlord or other evidence of a legal right to occupy the Business Premises; (2) a Business Premises diagram; and (3) a dated radius map including horizontal lines and labeling of any sensitive uses relative to a Type 10 License. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

    3. **Application Fees.** An Applicant shall pay all required application fees pursuant to Section 104.19 within 30 days of being issued an invoice by DCR, or its application shall be deemed abandoned. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

### SEC. 104.07. PROPOSITION M PRIORITY PROCESSING.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

    (a) Proposition M Priority Processing Applications for Retailer Commercial Cannabis Activity, which includes delivery, and on-site cultivation consistent with Proposition D, shall be accepted and processed by DCR for the first 60 days after DCR starts accepting applications. EMMD Applicants may apply for a maximum of

one Microbusiness License (Type 12); or a maximum combination of one Retailer License (Type 10), one Distributor License (Type 11), one Manufacturer License (Type 6 only) and one Cultivation, Indoor (Type 1A, 1C, 2A or 3A) License for the one location identified in its original or amended BTRC and as demonstrated in previous Commercial Cannabis Activity as of March 7, 2017. **(Amended by Ord. No. 185,608, Eff. 7/23/18.)**

(b)  An EMMD that as of January 1, 2018, meets all of Proposition D requirements shall continue to have limited immunity up until the time the EMMD receives Temporary Approval. The limited immunity shall terminate if the EMMD Applicant fails to seek or obtain a Temporary Approval, although the limited immunity shall be extended through any appeal of the Temporary Approval denial. The limited immunity shall be as follows: the EMMD shall not be subject to the remedies set forth in Los Angeles Municipal Code Sections 11.00 or 12.27.1 solely on the basis of engaging in medical Commercial Cannabis Activity, provided however that, as authorized by California Health and Safety Code Section 11362.83, this limited immunity is available and may be asserted as an affirmative defense only so long as the requirements of this Section are adhered to by the EMMD and only by an EMMD at the one Business Premises operated by the EMMD. This limited immunity shall not be available to and shall not be asserted as an affirmative defense to any violation of law except as expressly set forth in this Section. Further, nothing contained in this limited immunity is intended to provide or shall be asserted as a defense to a claim for violation of law brought by any county, state or federal governmental authority.

(c)  DCR's determination of whether an EMMD Applicant is eligible for Proposition M Priority Processing shall be made with no hearing and shall be final and effective upon the close of the 15-day appeal period if the EMMD Applicant does not timely request an administrative hearing, as provided in Section 104.10. In making its determination, DCR may request additional information from the EMMD Applicant. DCR shall make written findings when the EMMD Applicant does not meet the requirements for priority processing for EMMDs. In determining whether an EMMD Applicant meets the requirements for priority processing, DCR shall consider whether the EMMD Applicant cured any non-substantive administrative violations in C. through F., and M. under LAMC Section 45.19.6.3. Once DCR deems a Proposition M Priority Processing Application is complete and eligible for a Proposition M Priority Processing, DCR shall issue the EMMD a Temporary Approval. EMMDs issued a Temporary Approval shall have their License(s) processed and reviewed pursuant to Section 104.06. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(d)  If Proposition M Priority Processing is denied by DCR and, if appealed to the Commission or hearing officer and is also denied by the Commission or the hearing officer, the EMMD Applicant shall immediately cease all Commercial Cannabis Activity at the Business Premises and the EMMD Applicant shall not be entitled to the limited immunity from prosecution afforded by Proposition D. An EMMD Applicant determined ineligible for Proposition M Priority Processing may apply for a License by filing a new application and abiding by the application priority in effect at that time. DCR shall not refund any fee for an application determined ineligible for Proposition M Priority Processing. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(e)  An EMMD otherwise eligible for Proposition M Priority Processing shall not be denied a Temporary Approval or a License based upon the EMMD's Business Premises location initially or amended prior to the enacted date of Section 45.19.7.2, or subsequent location approved pursuant to Section 45.19.7.2, if located in a Community Plan Area that has reached Undue Concentration. An EMMD otherwise eligible for Proposition M Priority Processing shall not be denied a Temporary Approval or a License based upon the location of: (1) the EMMD's original Business Premises; (2) Business Premises amended prior to the enactment of Section 45.19.7.2; or (3) subsequent Business Premises approved pursuant to Section 45.19.7.2, if located in a Community Plan Area that has reached Undue Concentration. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(f)  An EMMD shall submit to a financial audit by the City's Office of Finance and clear all City tax obligations prior to the issuance of a Temporary Approval or a License, and the renewal of a Temporary Approval or a License. For purposes of this subsection only, an EMMD that has entered into a payment plan with the City's Office of Finance pursuant to LAMC Section 21.18 to pay all outstanding City-owed business taxes is deemed current on all City-owed business taxes and is deemed to have submitted payment for all City-owed business taxes. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

   (g)   An Initial Inspection for a Temporary Approval is not required for an EMMD whose Proposition M Priority Processing Application is accepted by DCR. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

   (h)   An EMMD issued a License pursuant to Proposition M Priority Processing is not required to adhere to the zone, distance and sensitive use restrictions stated in Section 105.02 of this Code as long as, and on the condition that, the EMMD operates and continues to operate in compliance with the distance and sensitive use restrictions (Los Angeles Municipal Code Section 45.19.6.3 L. and O.) of Proposition D notwithstanding those restrictions are or would have been repealed. This limited grandfathering shall not create, confer, or convey any vested right or non-conforming right or benefit regarding any activity conducted by the EMMD beyond the term and activities provided by the City License. This limited grandfathering shall cease on December 31, 2025, after which all EMMDs shall be required to cease conducting any Commercial Cannabis Activities on Business Premises that do not meet the zone requirements of Article 5 of Chapter X of this Code. If an EMMD issued a License fails to operate in compliance with the specified provisions of Proposition D, the EMMD's Temporary Approval or License shall be subject to revocation. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

### SEC. 104.08. NON-RETAILER COMMERCIAL CANNABIS ACTIVITY PRIOR TO JANUARY 1, 2016, PROCESSING.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

   (a)   An Applicant who applies for a License for Non-Retailer Commercial Cannabis Activity and who meets the following criteria, as determined by DCR, shall receive Temporary Approval to operate pending the review of its application: (1) the Applicant was engaged prior to January 1, 2016 in the same Non-Retailer Commercial Cannabis Activity that it now seeks a License for; (2) the Applicant provides evidence and attests under penalty of perjury that it was a supplier to an EMMD prior to January 1, 2017; (3) the Business Premises meets all of the land use and sensitive use requirements of Article 5 of Chapter X of this Code; (4) the Applicant passes a pre-license inspection; (5) there are no fire or life safety violations on the Business Premises; (6) the Applicant paid all outstanding City business tax obligations; (7) the Applicant indemnifies the City from any potential liability on a form approved by DCR; (8) the Applicant provides a written attestation that it will enter into an agreement with a testing laboratory for testing of all Cannabis and Cannabis products and attests to testing all of its Cannabis and Cannabis products in accordance with state standards; (9) the Applicant is not engaged in Retailer Commercial Cannabis Activity at the Business Premises; (10) the Applicant attests that it will cease all operations if denied a State license or City License; (11) the Applicant qualifies under the Social Equity Program as it existed as of January 1, 2020; and (12) the Applicant attests that it will comply with all operating requirements imposed by DCR and understands that DCR may immediately suspend or revoke the Temporary Approval if the Applicant fails to abide by any City operating requirement. For purposes of this subsection only, an Applicant who has entered into a payment plan with the City's Office of Finance pursuant to LAMC Section 21.18 to pay all outstanding City-owed business taxes is deemed current on all City-owed business taxes and is deemed to have submitted payment for all City-owed business taxes. Prior to determining that an Applicant is eligible for processing under this section, DCR, at its discretion, may provide an Applicant with local authorization to apply for a temporary license from the Bureau of Cannabis Control, the California Department of Food and Agriculture or the California Department of Public Health. This local authorization shall not permit an Applicant to engage in Commercial Cannabis Activities unless DCR grants the Applicant a Temporary Approval. This local authorization must be renewed pursuant to Section 104.12. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

   (b)   A completed application accepted by DCR as eligible for processing under this section shall be processed and reviewed pursuant to Section 104.06. DCR may request additional information from the Applicant. DCR shall make written findings when the Applicant does not meet the requirements for processing under this section. DCR's determination of whether an Applicant is eligible for processing under this section shall be made with no hearing and shall be final and effective 15 days after the date of its mailing if the Applicant does not timely request an administrative hearing, as provided in Section 104.10. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(c)   An Applicant that submitted an application pursuant to this section by September 13, 2018, paid all fees required under Section 104.19, and received from DCR local authorization under this section shall not be subject to the remedies set forth in Los Angeles Municipal Code Sections 11.00 or 12.27.1 solely on the basis of Non-Retailer Commercial Cannabis Activity; provided, however, that, as authorized by California Health and Safety Code Section 11362.83, this limited immunity is available and may be asserted as an affirmative defense only so long as the requirements of this section are adhered to by the Applicant and only by an Applicant at the one Business Premises identified in its application. This limited immunity shall terminate upon the close of the 15-day appeal period if the Applicant does not timely request an administrative hearing, as provided in Section 104.10. This limited immunity shall not be available to and shall not be asserted as an affirmative defense to any violation of law except as expressly set forth in this section. Further, nothing contained in this limited immunity is intended to provide or shall be asserted as a defense to a claim for violation of law brought by any county, state or federal governmental authority. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(d)   Once application processing pursuant to Section 104.07 begins, DCR may, at its discretion, accept Section 104.08 applications for a period of 30 business days. **(Amended by Ord. No. 185,608, Eff. 7/23/18.)**

(e)   An Applicant under this section that has not received Temporary Approval shall report to DCR by July 1, 2019, whether it has made substantial progress, as determined by DCR, towards preparing its Business Premises to pass an Initial Inspection. An Applicant who cannot report substantial progress by July 1, 2019, shall have its application deemed abandoned. An Applicant who reports substantial progress by July 1, 2019, shall be required to pass an Initial Inspection by December 31, 2019, or its application shall be deemed abandoned unless DCR grants the Applicant an extension due to extenuating circumstances as determined by DCR in its sole discretion. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

### SEC. 104.09. TESTING LAB LICENSES.
**(Amended by Ord. No. 185,629, Eff. 7/2/18.)**

An Applicant seeking a Testing Lab License (Type 8) may submit an application to DCR at any time after DCR first accepts applications for any License. If an Applicant obtains or attests that it has or intends to seek ISO/IEC 17025 accreditation for all testing methods required by Title 16, Div. 42 of the California Code of Regulations and meets all laboratory-employee qualifications required by Title 16, Div. 42 of the California Code of Regulations, DCR may issue a Temporary Approval to the testing lab before completion of a pre-licensing inspection. If an Applicant is denied an ISO/IEC 17025 accreditation, its Temporary Approval shall be immediately revoked and it shall immediately cease all Testing Commercial Cannabis Activity.

### SEC. 104.10. LICENSE APPEAL PROCEDURE.
**(Amended by Ord. No. 185,850, Eff. 11/28/18.)**

(a)   **Appeals.**

  1.   An appeal as authorized in Section 104.06, 104.07 or 104.08 must be filed with DCR within 15 days of the date of the mailing of the written decision by DCR or the Commission (lower level decision maker). The appeal shall set forth the specific basis upon which the appellant claims there was an error or abuse of discretion by the lower level decision maker. Any appeal not filed within the 15-day period shall be rejected as untimely. The lower level decision maker shall transmit to the appellate body the appeal, the file of the matter, along with any report if one was prepared responding to the allegations made in the appeal.

  2.   The Commission shall hold a public hearing to consider an appeal as authorized in Section 104.06 within 60 days of the Commission's receipt of the appeal. DCR shall provide notice of a Commission

public hearing under this subsection pursuant to Section 104.05(b). The City Council shall hold a public hearing to consider an appeal of a Commission decision as authorized in Section 104.06 within 15 City Council meeting days of City Council's receipt of the appeal. Notwithstanding the notice requirements in Section 104.05(b), no later than 5 days prior to any City Council hearing under this subsection, DCR shall provide notice of the hearing via email to the appellant's agent for service of process and all Persons on DCR's Interested Party Notification list.

    3.   An administrative hearing officer shall hold a hearing to consider an appeal as authorized in Section 104.07 or 104.08 within 60 days of the date DCR receives the request for an administrative hearing. An administrative hearing under this subsection shall be conducted in the manner specified in Section 104.14.

    4.   The time for holding a hearing under this section may be extended by mutual agreement between the appellate body and the appellant. Failure of the appellate body to act within the time period allowed shall be deemed a denial of the appeal.

    5.   The appellate body may consider the decision and record before the lower level decision maker and any new written information and oral testimony timely provided to the appellate body. The appellate body shall, however, rule on the record and evidence de novo, substituting its own judgment for that of the lower level decision maker without deferring to the lower level decision maker's findings and determinations. The appellate body may reverse or modify, in whole or in part, any decision of the lower level decision maker. The appellate body shall make the same written findings required to be made by the lower level decision maker, supported by evidence in the record.

    6.   The appellate body shall issue its decision within 30 days of the closure of the hearing on the appeal. Failure of the appellate body to issue its decision timely shall be deemed a denial of the appeal.


### SEC. 104.11. MANDATORY REQUIREMENTS.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

  (a)   A License is not transferable unless the change to the Licensee's organizational structure or ownership is submitted to and approved by DCR. The Licensee shall complete a change of ownership application, pay all applicable fees and obtain the written approval of the change of ownership by DCR, pursuant to the Rules and Regulations. A change from non-profit status to for-profit status by an EMMD is exempt from this requirement if no other ownership change is made in accordance with Proposition D's ownership rules and notice is provided to DCR within five business days. This exemption is not available after a License is issued.

  (b)   A License must be prominently displayed at the Business Premises in a manner that makes it readable from the exterior of the Business Premises.

  (c)   A Licensee shall designate a supervisor, manager or person-in-charge at all times during regular business hours.

  (d)   The name and contact number of the Neighborhood Liaison must be prominently displayed at the Business Premises in a manner that makes it readable from the exterior of the Business Premises.

  (e)   Every Applicant or Licensee shall attest that he/she will not manufacture, prepare, package or label any products other than Cannabis products or accessories related to Cannabis use at the Business Premises.

  (f)   Every Applicant and Licensee shall adhere to all the operational requirements in the Rules and Regulations.

(g) An Applicant and Licensee shall be subject to inspection, investigation or audit by DCR or its agents, with no notice required, to determine compliance with this article. An inspection, investigation or audit is a review of any books, records, accounts, inventory, or onsite operations specific to the Business Premises and License.

    1. Inspections, investigations, or audits may include, but are not limited to, employees or agents of the Los Angeles County Department of Public Health or the following City departments: DCR, Department of Building and Safety, Department of City Planning, Police Department, Fire Department and the Office of Finance. The Fire Department shall enforce the City's Fire Code and California Code of Regulation, Title 24, Part 9.

    2. DCR and its agents may conduct an on-site inspection prior to issuing a new or renewal License in accordance with the requirements of the State of California and the Rules and Regulations. DCR may record the inspection, investigation, or audit.

    3. An Applicant or Licensee shall allow DCR access to the Business Premises for any of the following purposes: determine accuracy and completeness of the application; determine compliance with this article and the Rules and Regulations; audit or inspect records; investigate a complaint received by DCR regarding the application or License; inspect incoming or outgoing shipments of Cannabis and Cannabis products, storage areas, production processes, labeling and packaging processes, and conveyances used in the manufacture, storage or transportation of Cannabis products; inspect pertinent equipment, raw material, finished and unfinished materials, containers, packaging and labeling that relates to whether the Cannabis or Cannabis product is compliant; investigate the adulteration or misbranding of any Cannabis product, or production of any Cannabis product without a License, including the ability to inspect any place where any Cannabis product is suspected of being illegally manufactured or held; and investigate the operations and other activities associated with Commercial Cannabis Activity engaged in by the Licensee.

(h) For purposes of any notice to an Applicant or Licensee required pursuant to this article, DCR shall provide such notice to the Applicant's or Licensee's agent for service of process as updated by the Applicant or Licensee. **(Amended by Ord. No. 185,850, Eff. 11/28/18.)**

(i) Failure to cooperate fully with an inspection, investigation or audit is a violation of this article.

(j) In construing and enforcing this article and the Rules and Regulations, any act, omission, or failure of an agent, officer, or other person acting for or employed by a Licensee, within the scope of his or her employment or office, shall in every case be deemed the act, omission, or failure of the Licensee.

(k) If Applicant or Licensee contend that any information provided to the City is confidential, Applicant or Licensee shall mark that information as confidential at the time of submitting it to the City. If the City obtains a request for disclosure of the information, the City may provide Applicant or Licensee notice of the request for disclosure and allow Applicant or Licensee a period of time determined by the City to seek a court protective order. The City may publically release the information absent the issuance of the protective order or if the City is required by law to release the information.

(l) If the state adopts a law requiring a state Cannabis license applicant to agree to enter into a Labor Peace Agreement with any bona-fide labor organization who requests such an agreement, then an Applicant for a City Licensee shall meet that same requirement, with the exception that the requirement applies to Applicants with 10 or more Employees.

(m) A Licensee shall make a good-faith effort to have no less than 30% of the weekly hours of the Licensee's workforce performed by Employees whose primary place of residence is within a three mile radius of the Business Premises. A Licensee shall make a good-faith effort to have no less than 10% of the weekly hours of the Licensee's workforce performed by Employees who are Transitional Workers. Transitional Worker means a person who, at the time of starting employment at the Business Premises, resides in an Economically

Disadvantaged Area or Extremely Economically Disadvantaged Area, as those terms are defined in Section 11.5.6 of this Code, and faces at least two of the following barriers to employment: (1) being homeless; (2) being a custodial single parent; (3) receiving public assistance; (4) lacking a GED or high school diploma; (5) having a criminal record or other involvement with the criminal justice system; (6) suffering from chronic unemployment; (7) emancipated from the foster care system; (8) being a veteran; or (9) over the age of 65 and financially compromised. At a minimum, a Licensee is required to contact local community-based organizations, City of Los Angeles Work Source Centers, and other such similar organizations to facilitate job outreach, development, and placement services. A Licensee is required to provide a detailed semiannual report on the first business day of January and the first business day of July every year that provides evidence of its outreach efforts, including the number of persons interviewed, and details on who was hired to satisfy the good-faith effort requirement.

   (n)   It shall be unlawful for a Licensee or any other party to discriminate in any manner or take adverse action against any Employee in retaliation for exercising rights protected under this article. These rights include, but are not limited to: the right to file a complaint or inform any person about any party's alleged noncompliance with this article; and the right to inform any person of his or her potential rights under this article and to assist him or her in asserting such rights. Protections under this article shall apply to any Employee who mistakenly, but in good faith, alleges noncompliance with this article. Taking adverse action against an Employee within 90 days of the Employee's exercise of rights protected under this article shall raise a rebuttable presumption of having done so in retaliation for the exercise of such rights.

   (o)   Effective April 1, 2018, a Licensee may only transact Commercial Cannabis business with a Person who possesses a State License for Commercial Cannabis Activity. Failure to comply with this requirement is a Moderate Violation under Section 104.13(b).

   (p)   An Applicant with Temporary Approval or a Licensee engaged in Storefront Retail Activity (Type 10) shall display an authorized cannabis business emblem placard as required by this Article. If the County of Los Angeles establishes a cannabis business emblem placard program, DCR may require an Applicant with Temporary Approval or a Licensee engaged in Storefront Retail Activity to participate in the program. **(Added by Ord. No. 185,850, Eff. 11/28/18.)**


   ## SEC. 104.12. RENEWAL AND CANCELLATION.
   **(Added by Ord. No. 185,343, Eff. 12/19/17.)**

   (a)   Every License, including Temporary Approvals, shall be renewed annually. If a License is not timely renewed, it shall expire after 11:59 p.m. on December 31 for the year issued. Applicants shall pay the applicable renewal fee pursuant to Section 104.19(b). To renew a License, a License renewal application shall be submitted and applicable renewal fee shall be paid by the Licensee no earlier than 120 calendar days before the expiration of the License, and no later than 60 calendar days before the expiration of the License. Failure to receive a notice for License renewal from DCR does not relieve a Licensee of the obligation to renew a License. In the event the License is not renewed prior to the expiration date, the Licensee shall cease all Commercial Cannabis Activity until such time that the License is issued a new License from DCR and a license from the State of California. **(Amended by Ord. No. 186,919, Eff. 2/24/21.)**

      1.   Notwithstanding the deadlines in Subsection (a), after January 1, 2021, Licensees may submit a late renewal application and/or make a late renewal fee payment between November 3rd and December 31st before the expiration date of a License or Temporary Approval. Late renewal applications and/or late renewal fees submitted between November 3rd and December 31st shall be subject to the Expedited Services Fees (Time and a Half Rate), provided in Section 104.19(h), which shall be due by December 31st.

      2.   Notwithstanding the deadlines in Subsection (a), after January 1, 2021, Licensees may submit a late renewal application and/or make a late renewal fee payment between January 1st and the final day of February after the expiration date of a License or Temporary Approval. Late renewal applications and/or

late renewal fees submitted between January 1st and the final day of February shall be subject to the Expedited Services Fees (Double Time Rate), provided in Section 104.19(h), which shall be due by the final day of February. All commercial cannabis businesses with an expired License or Temporary Approval must cease unlicensed Commercial Cannabis Activity until a new License or Temporary Approval is issued. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

3. **One-Time Extension Due to COVID-19.** Due to the COVID-19 pandemic and the Mayor's emergency orders relating to COVID-19, Licensees may submit a late 2019, 2020, and/or 2021 renewal application and/or make late renewal fee payments for 2019, 2020, and/or 2021 renewal applications on or before July 31, 2021. All renewal applications and/or renewal fees submitted pursuant to this one-time extension shall be subject to the Expedited Services Fees (Double Time Rate), set forth in Section 104.19(h), which shall be due at the time of renewal fee payment. Expired licenses may be reinstated if all applicable renewal fees and/or Expedited Services Fees are timely paid. **(Amended by Ord. No. 187,058, Eff. 7/4/21.)**

(b)  At the time a License renewal application is submitted to DCR, a Licensee must include updated annual licensing documents required by Rule and Regulation No. 3. As part of the License renewal process, DCR may require modification to the Licensee's security plan. Except for Tier 3 Licensees, Licensees subject to Section 104.20 shall also submit Equity Share documents in compliance with Section 104.20(a)(2). **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(c)  To renew a license, a Licensee shall be in good standing with the requirements in this article and shall not be delinquent on any City tax or fee. For purposes of this subsection only, a Licensee who has entered into a payment plan with the City's Office of Finance pursuant to LAMC Section 21.18 to pay all outstanding City-owed business taxes shall not be deemed delinquent on any City tax. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(d)  Any Licensee who has ceased a Commercial Cannabis Activity at a Business Premises for a continuous period of 180 days shall not be authorized to renew its license unless authorized by DCR in accordance with the Rules and Regulations. **(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(e)  DCR may cancel any License upon the request of the Licensee.

(f)  The Licensee may file an administrative appeal of the decision to deny License renewal pursuant to Section 104.14 within 15 days of the date of DCR mailing the denial letter. Failure to file an administrative appeal shall constitute a failure to exhaust administrative remedies. **(Added by Ord. No. 186,703, Eff. 7/10/20.)**

### SEC. 104.13. ADMINISTRATIVE VIOLATIONS AND PENALTIES.
**(Amended by Ord. No. 185,850, Eff. 11/28/18.)**

(a)  **Violations of this Article.** Within five years of discovering a Licensee or owner of Business Premises has violated this article, the Rules and Regulations, or a License condition (violation), DCR may issue a Notice of Violation (NOV) and impose any administrative penalties or order corrective actions as provided in Section 104.13(b). Any action of DCR does not preclude any enforcement agency from taking its own enforcement action for violation of any local, state or federal law or regulation.

(b)  **Administrative Penalties and Corrective Actions.**

1.  Administrative fines: In addition to any of the remedies and penalties set forth in this article or any other law, DCR may impose administrative fines on a Licensee or owner of a Business Premises using the violation classes and fine amounts specified below. The types of violations associated with each class shall be delineated in the Rules and Regulations.

(i)   "Minor" violation – amount equal to 50% of the current Cannabis License fee for each and every violation;

(ii)   "Moderate" violation – amount equal to 150% of the current Cannabis License fee for each and every violation; and

(iii)   "Serious" violation – amount equal to 300% of the current Cannabis License fee for each and every violation.

Repeat Minor or Moderate violations that occur within a two-year period and result in an administrative fine may result in escalation to a higher class of violation.

DCR, at its discretion, may impose a reduced administrative fine after considering factors, including: 1) the extent of harm or potential harm caused by the violation; 2) the nature and persistence of the violation; 3) the length of time over which the violation occurs; 4) the history of past violations; 5) any mitigating evidence; and 6) the Licensee's or owner of the Business Premises' financial resources.

2.   License Suspension or Revocation or More Restrictive License Conditions: In addition to any of the remedies and penalties set forth in this article or any other law, DCR may suspend or revoke a License or impose more restrictive License conditions after considering factors, including: 1) the extent of harm or potential harm caused by the violation; 2) the nature and persistence of the violation; 3) the length of time over which the violation occurs; 4) the history of past violations; and 5) any mitigating evidence.

3.   Corrective Action: In addition to any of the remedies and penalties set forth in this article or any other law, DCR may order a Licensee or Business Premises owner to undertake corrective action to remedy the violation or prevent future violations.

4.   Reinstatement: DCR may reinstate a Licensee's authorization to conduct Commercial Cannabis Activity after suspension if the Licensee completes any corrective action(s) to remedy the violation, or if a hearing officer orders reinstatement following an administrative hearing authorized by Section 104.14. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

(c)   **Notice of Violation.**

1.   DCR shall issue a NOV by mail to the Licensee's agent for service of process or the owner of the Business Premises as shown on the records of the City Engineer or the records of the County Assessor. The NOV shall contain all of the following:

(i)   a brief description of the violation;

(ii)   a brief description of and rationale for the administrative penalties and corrective action, if any, imposed; and

(iii)   a timeframe in which the Licensee or owner of the Business Premises shall take corrective action, if any, and comply with the administrative penalties, if any, which shall not be sooner than 15 days from the date of mailing of the NOV.

The NOV shall also inform the Licensee or owner of the Business Premises that they may request an administrative hearing, pursuant to Section 104.14, within 15 days of the date DCR mailed the NOV. The Licensee or the Business Premises owner's right to an administrative hearing shall be deemed waived if he or she fails to file a timely request for an administrative hearing.

2.   The NOV shall be final and effective 15 days after the date of its mailing if no hearing was timely requested. If a Licensee or owner of a Business Premises timely requests a hearing, any portion of the

NOV upheld or modified by an appellate body shall be final and effective 15 days after the date the appellate body's decision is deemed final under Section 104.14.

3.   If after a NOV becomes final and effective, a Licensee or owner of a Business Premises fails to comply with the administrative penalties and corrective action, if any, in the NOV, DCR may take one or more of the following actions: 1) denial of a License renewal; 2) revocation or suspension of a License; or 3) imposition of more restrictive License conditions.

4.   **Stipulated Agreements.** Prior to or after issuing an NOV, DCR, at its discretion, may enter into a written agreement with a Licensee or owner of a Business Premises whereby the Licensee or owner of a Business Premises stipulates to committing a violation in exchange for a negotiated administrative penalty or corrective action, if any. If a Licensee or owner of a Business Premises violates a stipulated agreement, DCR may issue or re-issue an NOV and impose any administrative penalties authorized under Section 104.13(b).

(d)   **Administrative Hold.** To prevent destruction of evidence, illegal diversion of Cannabis or a Cannabis product, or to address a potential threat to the environment or public safety, DCR may order an administrative hold of Cannabis or a Cannabis product. DCR shall give written notice, by mail, of the administrative hold to the Licensee and shall provide a description of the Cannabis and/or Cannabis product subject to the administrative hold, along with a statement for the basis of issuing the administrative hold. Within 24 hours of receipt of the notice of administrative hold, the Licensee shall physically segregate all applicable Cannabis and/or Cannabis products subject to the hold and shall safeguard and preserve the subject property as required in the notice and the Rules and Regulations. Following the issuance of a notice of administrative hold to the Licensee, DCR shall identify the Cannabis and/or Cannabis product subject to the administrative hold in DCR's track-and-trace system. While the administrative hold is in effect, the Licensee is restricted from selling, donating, transferring, transporting, or destroying the administratively held property. Nothing herein shall prevent a Licensee from the continued possession, cultivation, or harvesting of Cannabis subject to the administrative hold. During the hold period, all Cannabis and/or Cannabis products subject to an administrative hold shall be put into separate batches. Nothing herein shall prevent a Licensee from voluntarily surrendering Cannabis and/or a Cannabis product that is subject to an administrative hold. The Licensee shall identify the Cannabis and/or Cannabis product being voluntarily surrendered in DCR's track-and-trace system. Voluntary surrender does not waive the right to an administrative hearing pursuant to Section 104.14 within 15 days of the date of mailing of the written notice by DCR.

## SEC. 104.14. ADMINISTRATIVE HEARING PROCEDURE.
**(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(a)   A request for an administrative hearing may be filed for the following DCR actions:

1.   Issuance of a NOV by DCR.

2.   Denial of an application for License renewal by DCR.

3.   Notice of an administrative hold by DCR.

4.   Determination by DCR that an Applicant is not eligible for processing pursuant to Section 104.07 or 104.08.

5.   A suspension order pursuant to Section 104.06(d)(1).

(b)   For hearings authorized by subsection (a) and Section 104.06(d)(1), an administrative hearing shall be held within 10 days of the suspension order, unless the Licensee and DCR mutually agree to a later date. Pre-hearing disclosures pursuant to subsection (e) shall be sent by simultaneous email service upon the other party

and the hearing officer no later than two (2) days before the hearing. An Applicant may not conduct Commercial Cannabis Activity pending the outcome of the administrative hearing. Failure to request an administrative hearing within 5 days of the suspension order shall constitute a failure to exhaust administrative remedies.

(c)   For all other hearings authorized by Subsection (a), a request for an administrative hearing shall be filed with DCR within 15 days of the date of mailing of the notice of DCR's action, unless a later date is provided in the notice. Failure to timely request an administrative hearing shall constitute a failure to exhaust administrative remedies. An Applicant or Licensee may continue to conduct Commercial Cannabis Activity until receipt of a hearing officer's final order upholding DCR's denial, suspension or other action that requires the Applicant or Licensee to cease Commercial Cannabis Activity. If DCR places an administrative hold on Cannabis and/or a Cannabis product, the hold shall remain in effect pending the outcome of the administrative hearing.

(d)   DCR shall select a hearing officer and schedule an administrative hearing within 45 calendar days from the date DCR received the appeal, except that hearings as authorized in Sections 104.07 or 104.08 shall be scheduled within 60 days of the date DCR received the appeal. DCR shall mail the notice of the hearing to the appellant and the appellant's authorized agent or representative no later than 20 calendar days prior to the date of the hearing. The time for holding a hearing may be extended by mutual agreement between DCR and the appellant.

(e)   **Pre-Hearing Disclosures.** No later than seven calendar days prior to an administrative hearing, DCR and the appellant shall make the following pre-hearing disclosures to the hearing officer, with simultaneous email service upon the other party: (i) a brief statement of the facts and issues relating to the appeal; (ii) a copy of all documentary evidence to be offered at the hearing; and (iii) a list of all witnesses to be presented at the hearing. The hearing officer shall not issue any decision relating to the appeal before the hearing.

(f)   DCR may promulgate Administrative Hearing Procedures concerning hearing processes and procedures. Administrative hearings shall be conducted as follows:

1.   The hearing shall be recorded by an audio device provided by DCR. Any party to the hearing may, at its own expense, cause the hearing to be audio recorded and transcribed by a certified court reporter;

2.   DCR shall have the burden of proof by the preponderance of the evidence;

3.   The hearing officer may accept evidence on which persons would commonly rely in the conduct of their business affairs;

4.   The hearing officer may continue the hearing and request additional relevant information from any party; and

5.   Within 30 days of the conclusion of the hearing, the hearing officer shall issue a written decision that includes a statement of the factual and legal basis of the decision. The hearing officer shall use a de novo standard of review and may uphold or reject, in whole or in part, DCR's action. The hearing officer may waive or reduce the administrative penalties in an NOV after considering the factors specified in 104.13(b).

The hearing officer's decision shall be sent by mail to the appellant and the appellant's authorized agent or representative and shall become final on the date of mailing date. The issuance of a final order from a hearing officer after an administrative appeal hearing exhausts administrative remedies.

## SEC. 104.15. ENFORCEMENT AND PENALTIES FOR UNLAWFUL CANNABIS RELATED ACTIVITY.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

(a)    **Prohibitions on Unlicensed Commercial Cannabis Activity and Certain Medical Marijuana Collectives.**

1.   It is unlawful for a Person to establish, operate, or participate as an Employee, contractor, agent or volunteer, in any unlicensed Commercial Cannabis Activity in the City.

2.   It is unlawful for a Person to establish, operate or participate in a medical marijuana collective or cooperative unless in a dwelling unit with three or fewer qualified patients, persons with identification cards or primary caregivers, or any combination thereof.

3.   The prohibitions in Subsections (a)1. and (a)2., include renting, leasing to or otherwise allowing any unlicensed Commercial Cannabis Activity or a medical marijuana collective or cooperative to occupy or use any building or land.

(b)   Starting on January 1, 2018, it is unlawful to:

1.   Own or operate an Unlawful Establishment;

2.   Participate as an Employee, contractor, agent or volunteer or in any other capacity in an Unlawful Establishment;

3.   Use any portion of any parcel of land as an Unlawful Establishment; or

4.   Lease, rent to, or otherwise allow an Unlawful Establishment to occupy any portion of parcel of land.

(c)   A violation of this section is a public nuisance and may be abated by the City or by the City Attorney, on behalf of the people of the State of California, as a nuisance by means of a restraining order, injunction or any other order or judgment in law or equity issued by a court of competent jurisdiction. The City or the City Attorney, on behalf of the people of the State of California, may seek injunctive relief to enjoin violations of, or to compel compliance with, this section or seek any other relief or remedy available at law or equity. Each day that a violation continues is deemed to be a new and separate offense and subject to a maximum civil penalty of $20,000 for each and every offense.

(d)   Any Person violating this section shall be guilty of a misdemeanor punishable by a fine of not more than $1,000 or by imprisonment in the County Jail for a period of not more than six months, or by both a fine and imprisonment. Each day that a violation continues is deemed to be a new and separate offense. A violation of this section by an Employee, contractor, agent or volunteer, who has no financial interest in the Unlawful Establishment, may be punishable by means of a citation issued under the City's Administrative Citation Enforcement Program. **(Amended by Ord. No. 185,850, Eff. 11/28/18.)**

(e)   The Department of Water of Power (DWP) is authorized to disconnect utilities at a location occupied by an Unlawful Establishment if (i) the Police Department or other City Department provides written confirmation to DWP that commercial cannabis activity is occurring at the location, and (ii) DCR provides written confirmation to DWP that the City has not issued Temporary Approval or a License to engage in commercial cannabis activity at the location. The manner and form of the written confirmation shall be established and agreed to by the referenced departments. **(Added by Ord. No. 186,029, Eff. 3/14/19.)**

(f)   The remedies specified in this section are cumulative and in addition to any other remedies available under state or local law for a violation of this article. **(Relettered by Ord. No. 186,029, Eff. 3/14/19.)**

(g)   Nothing in this section shall be construed as requiring the City to allow, permit, license, authorize or otherwise regulate medical or nonmedical Cannabis, or as abridging the City's police power with respect to enforcement regarding medical or nonmedical Cannabis. **(Relettered by Ord. No. 186,029, Eff. 3/14/19.)**

(h)    A City Department may recover its costs incurred through the abatement of, or enforcement activity against, an Unlawful Establishment as provided under Los Angeles Administrative Code Section 7.35.3 or any other applicable law. **(Added by Ord. No. 186,223, Eff. 8/14/19.)**


### SEC. 104.15.1. PADLOCKING, BARRICADING, AND FENCING PROPERTY WHERE UNLICENSED COMMERCIAL CANNABIS ACTIVITY OCCURS.
**(Added by Ord. No. 186,918, Eff. 3/27/21.)**

(a)   **Public Nuisance.** Unlicensed Commercial Cannabis Activity is a public nuisance.

(b)    **Installation of Protective Devices.** The Department of Building and Safety (LADBS), after notice pursuant to Subsection (c), is authorized to padlock, barricade, and fence (protective devices) any location occupied by an Unlawful Establishment if: (i) the Police Department provides written confirmation to LADBS that Commercial Cannabis Activity is occurring at the location; and (ii) DCR provides written confirmation to LADBS that the City has not issued a Temporary Approval or a License to engage in Commercial Cannabis Activity at the location. If the property owner or authorized occupant requests a hearing pursuant to Subsection (d), LADBS shall not padlock, barricade, or fence the property without the authorization of the hearing officer.

(c)   **Notice.** The notice required in Subsection (b) shall be posted on the property and a copy mailed first class to the owner of the property as shown on the last equalized assessment roll. The notice shall state that the City has information that unlicensed Commercial Cannabis Activity is occurring on the property and the City may padlock, barricade, and fence the property if, within 10 calendar days of the notice, the activity is not abated or the property owner or authorized occupant fails to request a hearing pursuant to Subsection (d). The notice shall further state that the property owner and authorized occupant shall be jointly and severally responsible to pay the City's costs for installing, maintaining, and removing the protective devices plus an amount equal to 40 percent of such cost to cover the City's expense to administer and supervise the required work. The notice shall explain how the property owner and authorized occupant can request a hearing.

(d)   **Opportunity for Hearing Before Installing Protective Devices.** If the property owner or authorized occupant requests a hearing within 10 calendar days of the mailing of the notice in Subsection (c), LADBS shall not padlock, barricade, or fence the property without the authorization of the hearing officer. The hearing shall be set on a date within 30 calendar days of the mailing of the notice in Subsection (c). If the hearing officer determines that unlicensed Commercial Cannabis Activity is not occurring on the property, then the property shall not be padlocked, barricaded, and fenced. If the hearing officer determines that unlicensed Commercial Cannabis Activity is occurring on the property, then the hearing officer may authorize LADBS to padlock, barricade, and fence the property. The hearing officer may consider whether unlicensed Commercial Cannabis Activity was occurring on the property before the hearing date and the benefit of authorizing the protective devices to curb such future activity.

(e)   **Opportunity for Hearing to Remove Protective Devices.** The property owner or authorized occupant may request a hearing to remove the protective devices. The protective devices may be removed at the direction of a hearing officer who holds a hearing and determines that unlicensed Commercial Cannabis Activity is not occurring on the property. The hearing shall be set on a date no more than 15 calendar days after the date of the request by the property owner or authorized occupant. If the hearing officer determines that unlicensed Commercial Cannabis Activity is not occurring on the property at the time of the hearing and the property owner and occupant demonstrate to the hearing officer that they have taken reasonable measures to prevent the occurrence of unlicensed Commercial Cannabis Activity on the property, then the hearing officer shall order the removal of the padlock, barricade, and fence. If the hearing officer determines that unlicensed Commercial Cannabis Activity was not occurring on the property at the time of the notice in Subsection (c), then the property owner and authorized occupant shall not be responsible to pay the City's costs for installing, maintaining, and removing the protective devices.

(f) **Hearing Process.** Hearings afforded under Subsections (d) and (e) are the property owner's and authorized occupant's exclusive means for administrative review of the City's actions. Requests for hearings must be made by the property owner or authorized occupant in writing on a form approved by the City. At the hearing, the City, property owner, and authorized occupant may present any evidence or testimony relevant to whether unlicensed Commercial Cannabis Activity is occurring on the property and evidence and testimony relevant to the reasonable measures taken by the property owner and/or authorized occupant to prevent the occurrence of unlicensed Commercial Cannabis Activity. The City, property owner, and authorized occupant may cross examine witnesses. If the property owner or authorized occupant fail to appear at the hearing, then the hearing may proceed in their absence. For good cause only, the hearing officer, at the request of the property owner or authorized occupant, may continue the hearing for up to 10 calendar days. The decision of the hearing officer shall be based on the preponderance of the evidence and testimony provided at the hearing. The decision shall be rendered within five business days of the hearing and include a statement of the factual and legal basis of the decision. A copy of the hearing officer's decision shall be posted on the property and mailed to the property owner and the authorized occupant at the address of the property location, and provided to LADBS and DCR. The decision by the hearing officer is the exclusive means of review and shall be final and not administratively appealable.

(g) **Possession and Responsibility to Maintain Property.** In exercising the powers authorized in this section, the City takes no legal possessory interest in the property or anything contained on the property. The property owner or authorized occupant, as applicable, shall remain responsible to maintain the property in a safe and sanitary condition and in good repair.

(h) **Personal Property.** It shall be the responsibility of the property owner or authorized occupant to remove or secure any personal property or other possessions on the property.

(i) **Limited Access of Areas Secured by Protective Devices.** During the time LADBS has padlocked, barricaded, or fenced the property under this section, no person shall access any portion of the area secured by the protective devices, except that the property owner, including the agent of the property owner, or authorized occupant may access the property pursuant to Subsections (g) and (h). Any person who violates this subsection shall be guilty of a misdemeanor. This subsection shall not apply to law enforcement personnel, public officers, or public employees acting within the course and scope of their employment or in the performance of their official duties.

(j) **Recordation.** A copy of the notice described in Subsection (c) shall be recorded with the Office of the County Recorder. After the City has determined that unlicensed Commercial Cannabis Activity is not occurring on the property, the City shall file with the Office of the County Recorder a certificate terminating the above recorded status of the property.

(k) **Reimbursement of City Costs.** The property owner and authorized occupant shall be jointly and severally responsible to reimburse the City's costs for installing, maintaining, and removing the protective devices plus an amount equal to 40 percent of such cost to cover the cost of administering and supervising the required work. The City may pursue collection of any costs imposed under this section as provided in Los Angeles Administrative Code Sections 7.35.1 through 7.35.10, or through any legal remedy before any court of competent jurisdiction.

## SEC. 104.16. ADMINISTRATION.
**(Amended by Ord. No. 185,629, Eff. 7/2/18.)**

DCR shall administer the Rules and Regulations as adopted by the City Council. DCR may promulgate and enforce Rules and Regulations related to this article, which shall have the force and effect of law, and may be relied upon by Applicants, Licensees, or other parties to determine their rights and responsibilities. The Commission may recommend to the City Council or DCR amendments to the Rules and Regulations.

### SEC. 104.17. SEVERABILITY.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

If any section, subsection, subdivision, clause, sentence, phrase or portion of this article is held unconstitutional or invalid or unenforceable by any court or tribunal of competent jurisdiction, the remaining sections, subsections, subdivisions, clauses, sentences, phrases or portions of this measure shall remain in full force and effect, and to this end the provisions of this article are severable. Notwithstanding anything to the contrary in the prior sentence, if any State or City licensure requirement is held unconstitutional or invalid or unenforceable by any court or tribunal of competent jurisdiction, the Commercial Cannabis Activity subject to such licensure requirement shall be prohibited in the City.

### SEC. 104.18. NO VESTED OR NONCONFORMING RIGHTS.
**(Added by Ord. No. 185,343, Eff. 12/19/17.)**

Neither this article, nor any other provision of this Code, or action, failure to act, statement, representation, recognition, certificate, approval, permit or License issued by the City, DCR, the Commission, or their respective representatives, agents, employees, attorneys or assigns, shall create, confer, or convey any vested or nonconforming right or benefit regarding any Commercial Cannabis Activity beyond the period of time and range of activities specifically provided by the licenses issued by the State of California and the City. This article does not create, confer, or convey any right or benefit regarding any activity beyond the lawfulness of any License issued by the City to engage in Commercial Cannabis Activity or any applicable State of California license for such activity. If any City License or any applicable State license is held unconstitutional, invalid or unenforceable for any reason by any court or tribunal of competent jurisdiction, the Commercial Cannabis Activity subject to such license shall be prohibited in the City of Los Angeles and all operations shall immediately cease in the City. The owner of any City License or any applicable State license assumes all risk associated with the validity of such licenses. The owner of any license found to be unconstitutional, invalid or unenforceable and required thereby to cease Commercial Cannabis Activity, shall not be entitled to any compensation from the City based upon such license; the finding that such license is unconstitutional, invalid or unenforceable; or the requirement that any Commercial Cannabis Activity must thereby immediately cease in the City.

### SEC. 104.19. FEES AND FINES.
**(Amended by Ord. No. 186,708, Eff. 8/10/20.)**

(a) **Application and License Filing Fees.** The following fees shall be payable pursuant to Section 104.03 and any other sections specified in accordance with the following schedule:

| Type | Fee |
|------|-----|
| Type | Fee |
| Pre-Application Review [a] | $597 |
| Temporary Approval Application [b] | $5,720 |
| Annual License Application [b] | $7,691 |
| EMMD Temporary Approval Application [b] (Section 104.07) | $9,360 |

| | |
|---|---|
| Sec. 104.08 Temporary Approval Application [b]<br><br>(Section 104.08) | $11,806 |
| SEP [1] Temporary Approval Application [b]<br><br>(Section 104.06.1(b)) | $8,059 |
| SEP [1] Temporary Approval Application [b]<br><br>(Section 104.06.1(c) - (f)) | $6,969 |
| LAFD Inspection [a][d] | Actual Cost |
| Annual Primary Personnel LiveScan Review [c][e] | $450 |
| Primary Personnel Background Review [a] | $614 |
| SEIA [2] Eligibility Verification (Section 104.06.1) | $597 |

(a)  Fee is charged per Application.
(b)  Fee is charged per Activity.
(c)  Fee is charged per Individual.
(d)  Fee is based on the actual cost. Cannabis LAFD Inspection Fee shall be based on the current LAFD hourly Inspector Rate, at a four-hour minimum. The Fire Department will invoice the Applicant separately to recover any inspection costs exceeding four hours.
(e)  Fee is based on the annual review and assessment of any criminal offender record information on Primary Personnel obtained via LiveScan.
1   SEP - Social Equity Program pursuant to Sec. 104.20.
2   SEIA - Social Equity Individual Applicant pursuant to Sec. 104.20.

(b)   **License Renewal Fees.** The following renewal fees shall be payable pursuant to Section 104.12 in accordance with the following schedule:

| Type | Fee |
|---|---|
| Temporary Approval Renewal Fee [b] | $4,233 |
| License Renewal [b] | $8,486 |
| SEP [1] License Renewal [b] | $9,735 |

(b)  Fee is charged per Activity.
1   SEP - Social Equity Program pursuant to Sec. 104.20.

(c)   **Environmental Assessment Fees.** For the processing of each initial study prepared or filed in connection with an Application, or for the processing of any supplemental report or for the preparation of a general exemption pursuant to City's California Environmental Quality Act Guidelines, the following environmental assessment fees shall be payable, pursuant to Sections 104.03(c) and 104.06(e) in accordance with the following schedule:

| Type | Fee |
|---|---|
| Type | Fee |
| Environmental Assessment / Initial Study [a] | $6,024 |
| Addendum prior to Environmental Determination [a] | $4,137 |

| | |
|---|---|
| Categorical Exemption | $2,596 |
| Mitigated Negative Declaration / Negative Declaration - Expanded Initial Study (a) | $16,454 |
| Environmental Impact Report - Initial Deposit (a) | $16,454 |
| Environmental Analysis Review Services (a)(d) | Actual Cost |
| Publication Fee (a)(d) | $732 plus Actual Cost (d) |

(a)  Fee is charged per Application.
(d)  Fee is based on the actual cost. The Department shall calculate actual costs and the resultant fee in accordance with Section 104.19(j).

(d)  **Notice Fees. (Amended by Ord. No. 187,095, Eff. 7/1/21.)** Notice fees shall be payable pursuant to Section 104.05 in accordance with the following schedule:

| Type | Fee |
|---|---|
| Written Notice (a) | $484 |
| Mailed Notice (a)(d) | $1,683 plus Actual Cost (d) |
| Printed Notice (a) | $484 |

(a)  Fee is charged per Application.
(d)  Fee is based on the actual cost. In addition to the Department's fee for Mailed Notice, the Applicant shall pay the actual mailing and postage costs directly to the Department's mailing services contractor.

(e)  **Meeting, Hearing and Appeal Filing Fees.** Meeting and hearing appeal fees shall be payable pursuant to Sections 104.04 and 104.06 in accordance with the following schedule:

| Type | Fee |
|---|---|
| Community Meeting (a) | $986 |
| Cannabis Regulation Commission Hearing (a) | $1,940 |
| Appeal to the Cannabis Regulation Commission (a) | $6,802 |
| Appeal to City Council (a) | $6,210 |

(a)  Fee is charged per Application.

(f)  **Administrative Hearing Appeal Filing Fees.** Administrative hearing appeal filing fees shall be payable pursuant to Section 104.14 in accordance with the following schedule:

| Type | Fee |
|---|---|
| Type | Fee |
| Notice of Violation | $4,669 |
| Denial of License Renewal | $4,669 |

| | |
|---|---|
| Notice of Administrative Hold | $4,669 |
| Notice of Ineligibility (Section 104.07, 104.08) | $4,669 |
| Notice of Ineligibility | $12,927 |
| Temporary Approval Suspension or Revocation | $12,927 |
| License Suspension/Revocation | $18,676 |

(g) **Public Convenience or Necessity (PCN) Filing Fees.** PCN fees shall be payable pursuant to Section 104.03(a)(4) and in accordance with the following schedule:

| Type | Fee |
|---|---|
| Cannabis Public Convenience or Necessity Filing Fee [b] | $1,592 |

(b) Fee is charged per Activity.

(h) **Modification and Other Filing Fees.** Modification and other fees shall be payable pursuant to Section 104.03(e) and in accordance with the following schedule:

| Type | Fee |
|---|---|
| Type | Fee |
| Modification Request Form Review [f] | $542 |
| Business Premises Relocation [f] | $3,554 |
| Business Diagram Modification [f] | $3,368 |
| Ownership Structure Modification [f] | $2,335 |
| SEP [1] Ownership Structure Modification [f] | $3,870 |
| Primary Personnel Background Review [a] | $614 |
| Primary Personnel LiveScan Review [c] | $450 |
| Land-Use Document Review [f][g] | $186 |
| Dated Radius Map Document Review [f][g] | $186 |
| Site Plan Document Review [f][g] | $123 |
| Evidence of Legal Right to Occupy Document Review [f][g] | $101 |
| Executed Lease or Property Deed Document Review [f][g] | $597 |
| Business Premises Diagram Document Review [f][g] | $489 |
| Business Formation and Organization Document Review [f][g] | $1,194 |
| Organizational Chart Document Review [f][g] | $428 |

| | |
|---|---:|
| Ownership Disclosure Form Document Review [f][g] | $131 |
| History of Denial Document Review [f][g] | $244 |
| Equity Share Documents / Social Equity Agreement Review [f][g] | $1,248 |
| Indemnification Agreement Document Review [f][g] | $56 |
| Waste Management Plan Document Review [f][g] | $597 |
| Certificate of Occupancy Document Review [f][g] | $131 |
| Commercial Cannabis Activity Plan Document Review [f][g] | $597 |
| Financial Information Document Review Fee [f][g] | $624 |
| Labor Peace Agreement Document Review [f][g] | $131 |
| Management Company Agreement Document Review [f][g] | $597 |
| Proof of Bond or Insurance Document Review [f][g] | $131 |
| Security Plan Document Review [f][g] | $597 |
| Staffing Plan Document Review [f][g] | $597 |
| Standard Operating Procedures Document Review [f][g] | $1,221 |
| Standard Inspection [h] | $2,468 |
| Off-Hours Inspection [h] | $3,623 |
| Extraordinary Projects or Services [d] | Actual Cost [d] |
| Expedited Services (Time and a Half Rate) | 142.04% of Regular Fee |
| Expedited Services (Double Time Rate) | 189.38% of Regular Fee |

(a)  Fee is charged per Application.
(c)  Fee is charged per Individual.
(d)  Fee is based on the actual cost. The Department shall calculate actual costs and the resultant fee in accordance with Section 104.19(j).
(f)  Fee is charged per modification request by the Applicant.
(g)  Fee is charged for supplemental document review when requested by DCR to assess compliance.
(h)  Fee is charged per inspection trip. If the Department determines that, in addition to the routine inspections pursuant to this article or the rules and regulations, additional inspections or abatement actions are required to process an application or enforce compliance with this article or the rules and regulations, the Applicant or Licensee shall pay separate fees for each inspection.
1  SEP - Social Equity Program pursuant to Sec. 104.20.

(i)  **Fines, Violations, and Non-Compliance Fees[h].** Fines, violations, and non-compliance fees shall be payable pursuant to Section 104.13 and the Rules and Regulations in accordance with the following schedule:

| Type | Fee |
|---|---|
| | |

| Type | Fee |
|------|-----|
| Cannabis Code Violation Inspection | $2,317 |
| Cannabis Code Violation Inspection (Off-Hours) | $3,051 |
| Cannabis License Non-Compliance Inspection Fee | $4,416 |
| Cannabis License Non-Compliance Inspection (Off-Hours) | $5,886 |
| Cannabis License Violation Fine - Minor Violation [i] | $7,004 |
| Cannabis License Violation Fine - Moderate Violation [i] | $21,013 |
| Cannabis License Violation Fine - Major Violation [i] | $42,026 |

(h)    Fee is charged per inspection trip. If the Department determines that, in addition to the routine inspections pursuant to this article or the rules and regulations, additional inspections or abatement actions are required to process an application or enforce compliance with this article or the rules and regulations, the Applicant or Licensee shall pay separate fees for each inspection.

(i)    Fee is charged per violation.

(j)    **Actual Cost.** In addition to the fees expressly set forth in this article, the Department may negotiate with an Applicant or Licensee (the "Requestor") for reimbursement of the actual costs associated with the City's processing of applications, licenses, or related services which requires another City department, a City contractor, or unusually heavy commitments of Department resources. Actual Cost may be charged for Commercial Cannabis Activity services not expressly enumerated in this Article provided the Department and the Requestor agree upon:

(i)    The processing services required, including environmental reviews, and the personnel, time and physical resources which the City will need to accomplish those processing services.

(ii)    The costs which are to be funded shall consist of the actual costs to the City which include, but are not limited to: wages, including overtime, retirement, compensated time off and other benefits, bureau/divisional overhead, departmental overhead and general City overhead, which are incurred in connection with the employees assigned to perform the processing services for the major project, the direct costs of material and equipment required to furnish the processing services, the reasonable out-of-pocket expenses incurred by any employee assigned to furnish the processing services, and the cost of hiring outside consultants necessary to provide the City with special expertise.

(iii)    The Requestor shall deposit funds into the Cannabis Regulation Special Revenue Trust Fund based on the estimated costs of providing the processing services.

(iv)    The Department shall promptly advise the Requestor if, at any time during the processing period, the Department believes that the costs of accomplishing the processing services will exceed the estimated costs. The Department and the Requestor shall agree to a procedure for deposit of additional funds if the funds deposited are not adequate to fund the agreed upon processing services.

(v)    The Department shall maintain appropriate records of the actual costs of the processing services, prepare a report for the Requestor upon completion of processing services, and refund any unused portion of the deposit to the Requestor.

(vi)    Entering into the processing service agreement is voluntary.

(k)    **Filing Fee Credit.** At the discretion of the Department, an Applicant for any determination for which fees are required by this section may be allowed credit for the fees paid upon a reapplication for the same activity under a different application procedure when the Department finds that the Applicant made a good-faith attempt

to file the application properly and that the application could be more appropriately approved if filed under a different procedure. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(l)   **Refunds.** DCR has the sole discretion to consider and approve the issuance of partial or full refunds depending on the actual services performed for the full cost. This subdivision shall not be construed to allow a credit or refund to be given at the Applicant's option. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**


### SEC. 104.20. SOCIAL EQUITY PROGRAM.
**(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)   **Program – Original Eligibility Verification.** Except for Tier 3 Applicants, as defined in Section 104.20(a)(1)(iv), an Applicant that submitted an Application subject to Section 104.08 by September 13, 2018, or submitted an application for program eligibility verification during the verification period between May 28, 2019, and July 29, 2019, and/or met the criteria in this subsection for a Commercial Cannabis Activity License pursuant to Section 104.06.1(b), shall comply with Section 104.20(a)(2) when a License is issued or renewed. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

1.   **Social Equity Individual Applicant – Individual Eligibility Verification.** An individual subject to this subsection shall be verified as Social Equity Individual Applicant. A Social Equity Individual Applicant may be further verified as a Tier 1 Social Equity Individual Applicant, Tier 2 Social Equity Individual Applicant, or a Tier 3 Applicant in accordance with the definitions and criteria in this subsection.

(i)   The following definitions shall apply in this subsection:

(1)   **"California Cannabis Arrest or Conviction"** means an arrest or conviction in California for any crime under the laws of the State of California or the United States relating to the sale, possession, use, manufacture, or cultivation of Cannabis that occurred prior to November 8, 2016. An arrest, prosecution or conviction for a violation of Proposition D, as codified in former Article 5.1 of Chapter IV of the Los Angeles Municipal Code, notwithstanding that Proposition D has been repealed, is not a California Arrest or Cannabis Conviction. A Social Equity Applicant with a California Cannabis Arrest or Conviction shall be ineligible to apply for a License in any of the circumstances specified in Section 104.03(a), subject to the time restrictions therein.

(2)   **"Disproportionately Impacted Area"** means eligible zip codes based on the "More Inclusive Option" as described on page 23 of the "Cannabis Social Equity Analysis Report" commissioned by the City in 2017, and referenced in Regulation No. 13 of the Rules and Regulations, or as established using the same methodology and criteria in a similar analysis provided by an Applicant for an area outside of the City.

(3)   **"Low-Income"** means 80 percent or below of Area Median Income for the City based on the 2016 American Community Survey and updated with each decennial census.

(4)   **"Tier 1 Social Equity Individual Applicant"** is an individual who meets the following criteria at the time of applying for a license: (1) Low-Income and prior California Cannabis Arrest or Conviction; or (2) Low-Income and a minimum of five years' cumulative residency in a Disproportionately Impacted Area.

(5)   **"Tier 2 Social Equity Individual Applicant"** is an individual who meets the following criteria at time of applying for a license: (1) Low-Income and a minimum of five years' cumulative residency in a Disproportionately Impacted Area; or (2) a minimum of 10 years' cumulative residency in a Disproportionately Impacted Area.

(6)  **"Tier 3 Applicant"** is a Person who applied for a Commercial Cannabis Activity License under Section 104.08 and does not meet the criteria of a Tier 1 Social Equity Individual Applicant or Tier 2 Social Equity Individual Applicant.

2.  **Social Equity Applicant – Entity Eligibility Verification.** A Social Equity Applicant shall comply with the Equity Share criteria in this subdivision before a License is issued or renewed. Upon a Social Equity Applicant's request, DCR may conduct an Equity Share review under this subsection for the Applicant entity prior to the filing of a complete Temporary Approval Application, subject to the payment of the Equity Share Documents / Social Equity Agreement Review Fee pursuant to Section 104.19. This Equity Share review may replace the required Equity Share review during the Temporary Approval Application process, provided that the Social Equity Applicant attests that there are no changes to ownership since the original Equity Share review was conducted and that there are no additional or new agreements that were not previously disclosed to DCR during the original Equity Share review. DCR may conduct a new Equity Share review if there are changes to ownership, operating agreements, bylaws, and/or other agreements or material facts related to compliance with this subsection that were not disclosed during the original review. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

(i)  **Ownership Percentage**. A Tier 1 Social Equity Individual Applicant shall own no less than a 51 percent Equity Share in the Person to whom the License is issued. A Tier 2 Social Equity Individual Applicant shall own no less than a 33 1/3 percent Equity Share in the Person to whom the License issued.

(ii)  **"Equity Share"** means all of the following:

(1)  **Unconditional ownership of the Equity Share.** The Equity Share shall not be subject to conditions precedent, conditions subsequent, executory agreements, voting trusts, restrictions on or assignments of voting. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(2)  **Profits, dividends, and distributions.** Social Equity Individual Applicants shall receive all of the following:

(A)  At least their Equity Share percent of the distribution of profits paid to the owners of the Social Equity Applicant or Licensee;

(B)  100 percent of the value of each share of stock, member interest, partnership interest, or other equivalent owned by them in the event that the stock, member interest, or partnership interest is sold; and

(C)  At least their Equity Share percent of the retained earnings of the Social Equity Applicant or Licensee and 100 percent of the unencumbered value of each share of stock, member interest, or partnership interest owned in the event of dissolution of the corporation, limited liability company, or partnership.

(3)  **Voting rights and control.** Social Equity Individual Applicants shall receive the following at all times:

(A)  At least their Equity Share percent of the voting rights on all business decisions, including, but not limited to, long-term decisions, daily business operations, retention and supervision of the executive team, managers, and management companies, and the implementation of policies.

(B)  The highest officer position in the Social Equity Applicant or Licensee, such as the position of chief executive officer, unless another natural person is appointed to that position by mutual agreement of the parties. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(4)  **Successors.** The Equity Share shall not be subject to arrangements causing or potentially causing ownership benefits in the Social Equity Applicant or Licensee to go to another in any circumstance other than after death or incapacity. In the case of death or incapacity, a Social Equity Individual Applicant shall identify his or her own successor in interest or assignee of their Equity Share. If a Social Equity Individual Applicant dies, the Social Equity Applicant or Licensee will continue to qualify under this section with the requisite Equity Shares so long as the surviving spouse or successor in interest of the deceased Social Equity Individual Applicant inherits or otherwise acquires all of such Individual's ownership interest in the Social Equity Applicant or Licensee. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

(iii)  **Additional Equity Share Requirements.**

(1)  All Owners shall: (1) comply in all respects with the Equity Share criteria and requirements in this section ("Equity Share Requirements") in dealings with one another; (2) keep records evidencing their compliance; and (3) on the other party's reasonable request, provide these records of compliance to the other party.

(2)  Any action or inaction taken by a party in violation of the Equity Share Requirements shall entitle the other party to initiate a legal action in the Superior Court of Los Angeles, including, but not limited to, an action for specific performance, declaratory relief, and/or injunctive relief, to enforce the Equity Share Requirements against the other party.

(3)  Any annual License(s) issued to a Social Equity Applicant may be suspended or revoked, or a License renewal denied, if it can be shown, by a preponderance of the evidence, that any provision in an operating agreement, contract, business formation document, or any other agreement between Owners of the Social Equity Applicant violates any of the Equity Share Requirements and is not cured within the time allotted by DCR. **(Amended by Ord. No. 187,095, Eff. 7/1/21.)**

(4)  All Owners are required to incorporate the following addendum into operating agreement documents to evidence compliance with Equity Share Requirements: "To the extent that any provision of this agreement, or part thereof, is or may be construed to be inconsistent with or in violation of the "Equity Share" requirements set forth in Los Angeles Municipal Code section 104.20, such provision(s) shall be ineffective, unenforceable, and null and void."

(b)  **Program – Expanded Eligibility Verification.** An individual seeking to participate in the Social Equity Program shall meet the criteria and requirements in this subsection

1.  **Social Equity Individual Applicant – Individual Eligibility Verification.** An Applicant subject to this subsection shall be verified as a Social Equity Individual Applicant in accordance with the definitions and criteria in this subsection.

(i)  **"Social Equity Individual Applicant"** means an individual who meets two of the following three criteria: (1) Low-Income; (2) a prior California Cannabis Arrest or Conviction; (3) ten years' cumulative residency in a Disproportionately Impacted Area. For the purposes of Section 104.06.1(c), "Social Equity Individual Applicant" means an individual with a prior

California Cannabis Arrest or Conviction and who also meets one of the following two criteria: (1) Low-Income; or (2) ten years' cumulative residency in a Disproportionately Impacted Area.

(ii)   The following definitions shall apply in this subsection:

(1)   "**Asset**" means net assets at, or below, four times the Low-Income thresholds based on Household Size. Examples of liquid accounts that shall be disclosed include but are not limited to, saving accounts, checking accounts, certificates of deposit, money market accounts, stocks, trusts, and gifts. Qualified retirement accounts and an applicant's primary residence shall be excluded for purposes of the calculation, but other forms of real estate shall be included. Such retirement accounts are limited to accounts that are intended for retirement and that would incur a penalty if withdrawn before a specified retirement age per each account.

(2)   "**Household Size**" means the number of individuals that meet any of the following criteria:

(A)   All spouses or domestic partners must be included in the household and must appear in the submission content.

(B)   All household members who are under 18 years of age must be the legal dependent of an adult household member, except in the case of emancipated minors, as claimed on the most recent income tax return, or legal minor children of title holders.

(C)   Pregnant applicants will only be counted as two household members with verifiable medical documentation.

(D)   Temporarily absent household members who intend to live in the residence upon return may be considered, if verifiable documentation supporting their absence is provided. Such household members include, but are not limited to, household members serving temporarily in the armed forces, or who are temporarily institutionalized.

(E)   Live-in assistants, foster children will not be counted toward household size. Individuals not listed on the Social Equity Individual Applicant's most recent tax return, such as elderly relatives, live-in assistants, and foster children will not be counted toward household size.

(3)   "**California Cannabis Arrest or Conviction**" means an arrest or conviction in California for any crime under the laws of the State of California or the United States relating to the sale, possession, use, manufacture, or cultivation of Cannabis that occurred prior to November 8, 2016. An arrest, prosecution or conviction for a violation of Proposition D, as codified in former Article 5.1 of Chapter IV of the Los Angeles Municipal Code, notwithstanding that Proposition D has been repealed, is not a California Arrest or Cannabis Conviction. A Social Equity Applicant with a California Cannabis Arrest or Conviction shall be ineligible to apply for a License in any of the circumstances specified in Section 104.03(a), subject to the time restrictions therein.

(4)   "**Disproportionately Impacted Area**" means Police Reporting Districts as established in the Expanded Social Equity Analysis, or as established using the same methodology and criteria in a similar analysis provided by an Applicant for an area outside of the City.

(5) **"Low-Income"** means both of the following definitions are met: (1) the Social Equity Individual Applicant meets the low-income thresholds established in the annual U.S. Department of Housing and Urban Development (HUD) income limits based upon the Area Median Income (AMI) for Los Angeles County based on household size; and (2) the Social Equity Individual Applicant does not have Assets in excess of the amount as defined in this subsection. For the purpose of assessing whether the low-income threshold has been met, DCR shall calculate the Household Size based the criteria in Subsection (b) (1)(ii)(2)(A) through (E).

2.   **Social Equity Applicant – Entity Eligibility Verification.** An Applicant must comply with the Equity Share requirements in this subsection before a License is issued or renewed. Upon a Social Equity Applicant's request, DCR may conduct an Equity Share review under this subsection for a Applicant entity prior to the filing of a complete Temporary Approval Application, subject to the payment of the Equity Share Documents / Social Equity Agreement Review Fee pursuant to Section 104.19. This Equity Share review may replace the required Equity Share review during the Temporary Approval Application process, provided that the Social Equity Applicant attests that there are no changes to ownership since the original Equity Share review was conducted and that there are no additional or new agreements that were not previously disclosed to DCR during the original Equity Share review. DCR may conduct a new Equity Share review if there are changes to ownership, operating agreements, bylaws, and/or other agreements or material facts related to compliance with this subsection that were not disclosed during the original review. **(Amended by Ord. No. 187,459, Eff. 4/15/22.)**

(i)   **Ownership Percentage.** The Social Equity Individual Applicant shall own no less than a 51 percent Equity Share in the Person to whom the License is issued.

(ii)   **"Equity Share"** is defined in Subsection (a)(2) and incorporated herein by reference.

(iii)   Additional Equity Share Requirements in Section 104.20(a)(2)(iii) which are incorporated herein by reference. **(Added by Ord. No. 187,095, Eff. 7/1/21.)**

(c)   **Programming – Benefits and Requirements.**

1.   **Programming – Ownership and Disclosure Requirements.** Social Equity Applicants shall comply with the requirements in this subsection and in the Rules and Regulations.

(i)   Social Equity Applicants may only transfer control or ownership to Persons who meet the same Equity Share requirements, and only upon the prior written approval of DCR. DCR shall promulgate Rules and Regulations for the transfer of control or ownership.

(ii)   Social Equity Applicants shall provide to DCR bylaws or operating agreements which specify the percentage of ownership and control by each Person.

(iii)   Social Equity Applicants shall disclose to DCR any management or employee staffing agreements it has or will enter into during the period of the License.

(iv)   Social Equity Applicants shall disclose any options to purchase equity or control in the Social Equity Applicant.

(v)   At the time of requesting an annual license renewal pursuant to Section 104.12, Social Equity Applicants shall provide to DCR a financial statement for its most recently completed fiscal year.

(vi)   On or before March 1 of each year, Licensees subject to Section 104.20 shall submit to DCR an annual "Equity Report" signed by all Owners that describes the business plan guidance,

services, consulting, training, and/or other technical assistance that encourages and supports the establishment and growth of the Social Equity Licensee, and the estimated dollar value of those services, that were provided by the Owners to the Social Equity Individual Applicant Owner during the past calendar year. As part of the Equity Report, all Owners must execute an affidavit under penalty of perjury confirming compliance with all requirements set forth in Section 104.20, and acknowledging the requirements to disclose agreements about the management, control or direction of the licensed entity, profits, and/or loans. **(Added by Ord. No. 187,459, Eff. 4/15/22.)**

2.   **Programming – Workforce Requirements.** Social Equity Applicants and Tier 3 Applicants shall comply with the workforce requirements in this subdivision.

  (i)   **Definitions.**

      (1)   **"Social Equity Worker"** means an individual who meets the criteria in Section 104.20(a), except for Tier 3 Applicants, or who meet the criteria in Section 104.20(b).

      (2)   **"Transitional Worker"** means an individual who, at the time of starting employment at the Business Premises, resides in an Economically Disadvantaged Area or Extremely Economically Disadvantaged Area, as those terms are defined in Section 11.5.6 of this Code, and faces at least two of the following barriers to employment: (1) being homeless; (2) being a custodial single parent; (3) receiving public assistance; (4) lacking a GED or high school diploma; (5) having a criminal record or other involvement with the criminal justice system; (6) suffering from chronic unemployment; (7) emancipated from the foster care system; (8) being a veteran; or (9) over the age of 65 and financially compromised.

  (ii)   **Social Equity Applicants.** A Social Equity Individual Applicant shall make a good faith effort to have no less than 50 percent of the weekly hours of the Licensee's workforce performed by Employees whose primary place of residence is within a 3-mile radius of the Business Premises location. Of those Employees, 20 percent shall be Social Equity Workers and 10 percent shall be Transitional Workers.

  (iii)   **Tier 3 Applicants.** A Tier 3 Applicant shall make a good faith effort to have no less than 50 percent of the weekly hours of the Licensee's workforce performed by Employees whose primary place of residence is within a five-mile radius of the Business Premises. Of those employees, 30 percent shall be Social Equity Workers and 10 percent Transitional Workers. At a minimum, a Licensee is required to contact local community-based organizations, City of Los Angeles Work Source Centers, and other similar organizations to facilitate job outreach, development, and placement services. A Licensee is required to provide a detailed semiannual report on the first business day of January and the first business day of July every year that provides evidence of its outreach efforts, including the number of persons interviewed, and details on who was hired to satisfy the good faith requirement.

3.   **Programming – Social Equity Agreement Requirements.** Tier 3 Applicants shall comply with the requirements in this subsection.

  (i)   Prior to the issuance of a License, a Tier 3 Applicant shall enter into a Social Equity Agreement with the City to provide to a Social Equity Individual Applicant for a period of three years: (1) Ancillary Business Costs; (2) Property; and (3) Education and Training. Social Equity Agreements shall be processed and approved by DCR.

      (1)   **Ancillary Business Costs.** Tier 3 Applicants shall provide security, management, equipment and other ancillary business costs to a Social Equity Individual Applicant.

(2) **Education and Training.** Tier 3 Applicants shall provide a minimum of 50 hours per year in business development education and training to a Social Equity Individual Applicant. Education and Training provided by Tier 3 Applicants may include: accounting, inventory management, payroll practices, tax preparation, employee recruitment, retention and workforce outreach, or reporting requirements training.

(3) **Property – Onsite.** Tier 3 Applicants shall provide floor area, at no cost and inclusive of utilities, within their Business Premises location, or at an off-site location, pursuant to Subsection (c)(3)(i)(4), established as a separate Business Premises for a Social Equity Individual Applicant, for a period of three years to engage in a Commercial Cannabis Activity in accordance with Article 5, Chapter X of this Code. The minimum requirements of the floor area provided shall be: (1) Cultivation - minimum 500 square feet or 10 percent of Tier 3 Applicant's entire Business Premises, whichever is greater; (2) Manufacturing - minimum 800 square feet or 10 percent of Tier 3 Applicant's entire Business Premises, whichever is greater; (3) Testing - minimum 1,000 square feet or 10 percent of Tier 3 Applicant's entire Business Premises, whichever is greater; (4) Distributor - minimum 1,000 square feet or 10 percent of Tier 3 Applicant's entire Business Premises, whichever is greater; (5) Non-storefront retail - minimum 1,000 square feet or 10 percent of Tier 3 Applicant's entire Business Premises, whichever is greater; (6) Storefront retail - minimum 1,000 square feet or 10 percent of Tier 3 Applicant's entire Business Premises, whichever is greater.

(4) **Property – Off-site.** A Tier 3 Applicant shall provide floor area meeting the minimum requirements under Subsection 104.20(c)(3)(i)(3), at no cost and inclusive of utilities, to a Social Equity Individual Applicant at a different off-site Business Premises location in the City, unless property is provided on-site as specified in this section, subject to the following conditions:

(A) The Social Equity Individual Applicant can conduct the Commercial Cannabis Activity for its License type at the off-site location without violating any of the land use or sensitive use requirements in Article 5, Chapter X of this Code.

(B) A Tier 3 Applicant shall be responsible for all costs to bring the off-site location into compliance with all site specific and property related regulations, including, but not limited to, Building Code and Fire Code regulations.

(C) The Social Equity Individual Applicant has the legal right to occupy and use the new location for Commercial Cannabis Activity.

(D) DCR finds that the facilities at the off-site location are substantially similar to the facilities at the Tier 3 Applicant's Business Premises.

(5) **Property Support.** In lieu of providing the minimum property requirements in Subsections (c)(3)(i)(3) and (4), a Tier 3 Applicant may provide property support directly to the Social Equity Individual Applicant equal to the greater of the following:

(A) The actual monthly cost per square foot of leased space at the Tier 3 Applicant's Business Premises multiplied by the amount of space required by this subsection multiplied by 36 months; or

(B) The arithmetic mean of the cost per square foot of leased space for a total of 10 commercial cannabis businesses within a one mile radius, and authorized by DCR for the same Commercial Cannabis Activity, of the Tier 3 Social Equity Applicant's Business Premises multiplied by the amount of space required by this

subsection multiplied by 36 months. If there are less than 10 commercial cannabis businesses within the one mile radius, the radius shall be increased in 100-foot increments until a total of 10 businesses are included.

(6)    A Tier 3 Applicant shall provide property support directly to the Social Equity Individual Applicant in one of the following manners: (1) in full upon the first effective day of the Social Equity Agreement; (2) in three equal payments on dates determined by DCR within the first 24 months of the term of the Social Equity Agreement; (3) in 36 equal monthly payments during the term of the Social Equity Agreement; or (4) as agreed upon by the Social Equity Individual Applicant and the Tier 3 Applicant, and approved by DCR.

4.    **Programming – Benefits.** Social Equity Applicants verified in accordance with Subsections (a) and (b) may receive benefits outlined in this subsection. Tier 3 Applicants shall not be processed under this subsection but shall be afforded priority processing as described in Section 104.08.

(i)    **Processing.**

(1)    DCR shall process Applications for Social Equity Applicants in accordance with Section 104.06.1.

(2)    DCR shall provide priority processing to Social Equity Applicants applying for a Non-Retailer License on a 1:1 ratio with all non-Social Equity Individual Applicants.

(3)    DCR shall process Applications or renewals from Social Equity Applicants in accordance with Subsections (a) or (b) before processing an Application or renewal from non-Social Equity Applicants.

(ii)    **Fee Deferral Program.** DCR shall administer the Fee Deferral Program based on requirements and restrictions established in the Rules and Regulations. Participation in the Fee Deferral Program may be subject to the availability of resources.

(iii)    **Business, Licensing and Compliance Assistance.** DCR shall provide Business, Licensing and Compliance Assistance through programming and curriculum development and training in the areas of state and local licensing requirements, commercial cannabis regulations, general business development, cannabis-specific business development and workforce development.

(iv)    **Financial Grant Program.** DCR shall administer the Financial Grant Program based on requirements and restrictions established in the Rules and Regulations. Participation in this Financial Grant Program may be subject to the availability of resources.

(v)    **Ancillary Business Costs.** Social Equity Applicants may receive security, management, equipment and other ancillary business costs provided by a Tier 3 Applicant pursuant to a Social Equity Agreement as defined in Section 104.20(c)(3). Participation may be subject to the availability of resources.

(vi)    **Education and Training.** Social Equity Applicants may receive a minimum of 50 hours per year in business development, education and training provided by a Tier 3 Applicant pursuant to a Social Equity Agreement as defined in Section 104.20(c)(3). Education and training provided by Tier 3 Applicants may include: accounting, inventory management, payroll practices, tax preparation, employee recruitment, retention and workforce outreach, and reporting requirements training. Participation may be subject to the availability of resources.

(vii)   **Property.** Social Equity Applicants may receive Property as specified in Section 104.20(c)(3) provided by a Tier 3 Applicant. Participation may be subject to the availability of resources.

### SEC. 104.21. MANAGEMENT COMPANIES.
**(Amended by Ord. No. 186,703, Eff. 7/10/20.)**

(a)   A Licensee shall provide to DCR a copy of all written agreements and contracts, including all amendments thereto, with every Management Company that manages Commercial Cannabis Activity on its behalf and all other information and documents DCR requires to determine the nature and scope of a Management Company's participation in Commercial Cannabis Activity.

(b)   DCR may prohibit a Licensee from permitting a Management Company to manage Commercial Cannabis Activity on the Licensee's behalf if:

   1.   Any Owner of the Management Company would be ineligible to apply for a License pursuant to Section 104.03(a) or to receive a License pursuant to Section 104.06(a)(1);

   2.   DCR or another Cannabis licensing authority has determined that the Management Company has failed to comply with State or City operating requirements while managing Commercial Cannabis Activity; or

   3.   The Management Company cannot manage Commercial Cannabis Activity on behalf of any additional Licensees pursuant to the restrictions set forth in Section 104.21(f).

(c)   Every Management Company shall register with DCR pursuant to procedures established by DCR and provide DCR all requested information and documents regarding its participation in Commercial Cannabis Activity in the City.

(d)   A Management Company shall not hold an equity interest in a Licensee on whose behalf it manages Commercial Cannabis Activity. Notwithstanding the foregoing restriction, a Management Company may receive a share of a Licensee's revenues or profits in exchange for management services rendered, subject to limitations established by DCR.

(e)   A Management Company shall manage Commercial Cannabis Activity on a Licensee's behalf in adherence to the operational requirements in this article and the Rules and Regulations that apply to the License type. In construing and enforcing this article and the Rules and Regulations, any act, omission, or failure of a Management Company, including its officers, Employees and agents, shall in every case be deemed the act, omission, or failure of the Licensee.

(f)   Every Management Company shall be subject to the following restrictions:

   1.   Through June 30, 2019, a Management Company shall not manage Commercial Cannabis Activity on behalf of more than three percent of the Licensees in the City engaged in the same type of Commercial Cannabis Activity;

   2.   From July 1, 2019, through June 30, 2020, a Management Company shall not manage Commercial Cannabis Activity on behalf of more than four percent of the Licensees in the City engaged in the same type of Commercial Cannabis Activity;

   3.   From July 1, 2020, through June 30, 2021, a Management Company shall not manage Commercial Cannabis Activity on behalf of more than five percent of the Licensees in the City engaged in the same type of Commercial Cannabis Activity;

4.   From July 1, 2021, through June 30, 2022, a Management Company shall not manage Commercial Cannabis Activity on behalf of more than six percent of the Licensees in the City engaged in the same type of Commercial Cannabis Activity; and

5.   On or after July 1, 2022, a Management Company shall not manage Commercial Cannabis Activity on behalf of more than seven percent of the Licensees in the City engaged in the same type of Commercial Cannabis Activity.

## SEC. 104.22. CANNABIS CORPORATE RESPONSIBILITY REPORT.
### (Amended by Ord. No. 186,703, Eff. 7/10/20.)

(a)   DCR shall develop criteria and guidelines for Cannabis Corporate Responsibility Reports (Report). DCR shall post the criteria, guidelines and any amendments on its website.

(b)   Prior to the issuance of a License or renewal pursuant to Section 104.12, a Licensee shall submit to DCR a Report that describes the Licensee's community engagement, corporate philanthropy, relationship with the neighborhood surrounding the Licensee's Business Premises, and compliance with applicable City and State Cannabis laws and regulations within the previous calendar year. If a Licensee fails to timely submit a Report, DCR may impose administrative penalties or order corrective action as provided in Section 104.13(b). Reports may be publicly disclosed, including but not limited to posting on DCR's website.

(c)   If a Licensee holds Licenses for multiple Business Premises, the Licensee shall submit a separate Report for each Business Premises.

## SEC 104.23. STOREFRONT RETAILER EMBLEM PROGRAM.
### (Added by Ord. No. 185,850, Eff. 11/28/18.)

(a)   **Emblem Program Purpose.**

1.   A Licensee engaged in Storefront Retail Activity shall prominently display an Emblem Placard upon receipt from DCR, which shall serve as notice to the public that the Licensee is authorized by the City to engage in Storefront Retail Activity at its Business Premises. The Emblem Placard shall not create, confer or convey any vested or nonconforming right or benefit, including the right to engage in Commercial Cannabis Activity, to any Person in possession of the Emblem Placard. The Emblem Placard may not be sold, assigned, or otherwise transferred, and shall not be removed from the Licensee's Business Premises without written authorization from DCR.

(b)   **Procedure for Issuance, Posting, Inspection, and Revocation of Emblem Placard.**

1.   **Issuance.** DCR shall design and issue an Emblem Placard to all Licensees engaged in Storefront Retail Activity. A Licensee shall not, in any manner, copy, duplicate or reproduce an Emblem Placard provided by DCR.

2.   **Posting.** Immediately upon receipt of an Emblem Placard, a Licensee shall post the Emblem Placard in a location where it is clearly visible from the exterior of the Business Premises at all times and that is within 5 feet of the door used for patron access. If DCR, at its discretion, determines that the Emblem Placard would be more visible to the general public and patrons in another location on the Business Premises, the Licensee shall immediately move the Emblem Placard to that location.

A Licensee shall ensure that at all times the Emblem Placard is sufficiently illuminated, free from obstructions, and protected from damage, theft and tampering. A Licensee shall notify DCR within 24 hours after an Emblem Placard is damaged, stolen, or otherwise lost.

3. **Inspection.** Not less than once per year, DCR shall inspect every Licensee's Business Premises to determine whether the Emblem Placard is posted in compliance with the provisions of this regulation.

4. **Revocation.** If a Business Premises' License is revoked, not renewed, or cancelled, the Licensee shall immediately remove the Emblem Placard from public view and return the Emblem Placard to DCR.

(c) **Prohibited Uses of Emblem Placard.** It shall be a violation of this Code for any Person to display or use an Emblem Placard without authorization from DCR, or to use any placard, symbol, or rendering that is substantially or confusingly similar to an Emblem Placard.

# EXHIBIT B

11/8/22, 9:45 AM    FY 2021 Income Limits Documentation System -- Summary for Los Angeles-Long Beach-Glendale, CA HUD Metro FMR Area

Case 2:22-cv-08685-SPG-GK Document 1-1 Filed 12/02/22 Page 63 of 67 Page ID #:289



# FY 2021 INCOME LIMITS DOCUMENTATION SYSTEM

## FY 2021 Income Limits Summary

Selecting any of the buttons labeled "Click for More Detail" will display detailed calculation steps for each of the various parameters.

| FY 2021 Income Limit Area | Median Family Income [Click for More Detail] | FY 2021 Income Limit Category [Click for More Detail] | Persons in Family | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| **Los Angeles-Long Beach-Glendale, CA HUD Metro FMR Area** | $80,000 | Very Low (50%) Income Limits ($) [Click for More Detail] | 41,400 | 47,300 | 53,200 | **59,100** | 63,850 | 68,600 | 73,300 | 78,050 |
| | | Extremely Low Income Limits ($)* [Click for More Detail] | 24,850 | 28,400 | 31,950 | **35,450** | 38,300 | 41,150 | 44,000 | 46,800 |
| | | Low (80%) Income Limits ($) [Click for More Detail] | 66,250 | 75,700 | 85,150 | **94,600** | 102,200 | 109,750 | 117,350 | 124,900 |

**NOTE:** HUD generally uses the Office of Management and Budget (OMB) area definitions in the calculation of income limit program parameters. However, to ensure that program parameters do not vary significantly due to area definition changes, HUD has used custom geographic definitions for the **Los Angeles-Long Beach-Glendale, CA HUD Metro FMR Area**.

The **Los Angeles-Long Beach-Glendale, CA HUD Metro FMR Area** contains the following areas: Los Angeles County, CA;

* The FY 2014 Consolidated Appropriations Act changed the definition of extremely low-income to be the greater of 30/50ths (60 percent) of the Section 8 very low-income limit or the poverty guideline as established by the Department of Health and Human Services (HHS), provided that this amount is not greater than the Section 8 50% very low-income limit. Consequently, the extremely low income limits may equal the very low (50%) income limits.

Income Limit areas are based on FY 2021 Fair Market Rent (FMR) areas. For information on FMRs, please see our associated FY 2021 Fair Market Rent documentation system.

For last year's Median Family Income and Income Limits, please see here:

[FY2020 Median Family Income and Income Limits for Los Angeles-Long Beach-Glendale, CA HUD Metro FMR Area]

Select another FY 2021 HMFA Income Limit area that is a part of the **Los Angeles-Long Beach-Anaheim, CA MSA**
[Santa Ana-Anaheim-Irvine, CA Metro FMR Area]
[Select HMFA Income Limits Area]

Select any FY2021 HUD Metropolitan FMR Area's Income Limits:
[Los Angeles-Long Beach-Glendale, CA HUD Metro FMR Area]
[Select HMFA Income Limits Area]

Or press below to start over and select a different state:
[Select a new state]

Case 2:22-cv-08685-SPG-GK Document 14-1 Filed 12/02/22 Page 64 of 67 Page ID #:380

| |
|---|
| Update URL For bookmarking or E-Mailing |

Prepared by the Program Parameters and Research Division, HUD.

# EXHIBIT C



# FY 2021 INCOME LIMITS DOCUMENTATION SYSTEM

## FY 2021 Income Limits Summary

**Selecting any of the buttons labeled "Click for More Detail" will display detailed calculation steps for each of the various parameters.**

| FY 2021 Income Limit Area | Median Family Income *Click for More Detail* | FY 2021 Income Limit Category | Persons in Family | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| **Battle Creek, MI MSA** | $61,000 | Very Low (50%) Income Limits ($) *Click for More Detail* | 22,600 | 25,800 | 29,050 | **32,250** | 34,850 | 37,450 | 40,000 | 42,600 |
| | | Extremely Low Income Limits ($)* *Click for More Detail* | 13,550 | 17,420 | 21,960 | **26,500** | 31,040 | 35,580 | 40,000* | 42,600* |
| | | Low (80%) Income Limits ($) *Click for More Detail* | 36,150 | 41,300 | 46,450 | **51,600** | 55,750 | 59,900 | 64,000 | 68,150 |

**NOTE:** Calhoun County is part of the **Battle Creek, MI MSA**, so all information presented here applies to all of the **Battle Creek, MI MSA**.

The **Battle Creek, MI MSA** contains the following areas: Calhoun County, MI;

* The FY 2014 Consolidated Appropriations Act changed the definition of extremely low-income to be the greater of 30/50ths (60 percent) of the Section 8 very low-income limit or the poverty guideline as established by the Department of Health and Human Services (HHS), provided that this amount is not greater than the Section 8 50% very low-income limit. Consequently, the extremely low income limits may equal the very low (50%) income limits.

Income Limit areas are based on FY 2021 Fair Market Rent (FMR) areas. For information on FMRs, please see our associated FY 2021 Fair Market Rent documentation system.

For last year's Median Family Income and Income Limits, please see here:

*FY2020 Median Family Income and Income Limits for Battle Creek, MI MSA*

Select a different county or county equivalent in Michigan:

Barry County / Bay County / Benzie County / Berrien County / Branch County / Calhoun County

*Select county or county equivalent*

Select any FY2021 HUD Metropolitan FMR Area's Income Limits:

Battle Creek, MI MSA

*Select HMFA Income Limits Area*

Or press below to start over and select a different state:

*Select a new state*

Case 2:22-cv-08685-SPG-SK Document 14-1 Filed 12/03/22 Page 67 of 67 Page ID #:293

| Update URL For bookmarking or E-Mailing |
| --- |

Prepared by the Program Parameters and Research Division, HUD.