MICHAEL N. FEUER, City Attorney (SBN 111529X)
DAVID J. MICHAELSON, Chief Assistant City Attorney
TAYLOR C. WAGNIERE, Deputy City Attorney (SBN 293379)
KABIR CHOPRA, Deputy City Attorney (SBN 285383)
PATRICK HAGAN, Deputy City Attorney (SBN 266237)
221 N. Figueroa St., Suite 1245
Los Angeles, California 90012
Telephone: (408) 616-0621
patrick.hagan@lacity.org

Attorneys for Defendants
CITY OF LOS ANGELES, which includes
LOS ANGELES DEPARTMENT OF CANNABIS
REGULATION; AND MICHELLE GARAKIAN,
in her official capacity

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARISCITE, INC. AND KENNETH GAY,<br><br>            Plaintiffs,<br><br>      v.<br><br>CITY OF LOS ANGELES; LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN,<br><br>            Defendants, | Case No.: 2:22-cv-08685-SPG-SK<br><br>Hon. Sherilyn Peace Garnett<br><br>**DECLARATION OF JASON KILLEEN IN SUPPORT OF OPPOSITION TO APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

**DECLARATION OF JASON KILLEEN**

I, Jason Killeen, do hereby declare:

1. I am currently employed as the Assistant Executive Director of the City of Los Angeles ("City") Department of Cannabis Regulation ("DCR"), a defendant in the above-captioned matter.

2. I have personal knowledge of the matters set forth herein and could and would competently testify thereto if called and sworn as a witness.

3. I have read all the pertinent pleadings and briefs on file in this matter, including: (a) Plaintiffs' Complaint and exhibits submitted therewith; and (b) Plaintiffs' Notice of Application and Application for a Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should not Issue, and the declarations and exhibits submitted therewith, and I am aware of their contents.

4. As the Assistant Executive Director, I am responsible for managing and supervising DCR's licensing program for commercial cannabis activities, including, but not limited to, the Social Equity Individual Applicant ("SEIA") eligibility verification process.

5. DCR's licensing program includes a social equity component intended to promote equitable ownership and employment opportunities in the cannabis industry in order to decrease disparities in life outcomes for marginalized communities, and to address the disproportionate impacts of prior cannabis criminalization. The retail, delivery, and cultivation application processes are exclusively available to verified SEIAs until January 1, 2025. Verified SEIAs also have access to educational programming and grant opportunities. After January 1, 2025, all commercial cannabis application types will be available to all applicants.

**The SEIA Verification Process**

6. To participate in the Social Equity Program, an individual must request verification as a SEIA. To be verified as a SEIA, an individual must demonstrate two of the following three criteria: (a) a qualifying California Cannabis Arrest or Conviction

prior to November 8, 2016; (b) 10 years of cumulative residency in a Disproportionately Impacted Area; or (c) low income in the 2020 or 2021 calendar year. (Los Angeles Municipal Code ("LAMC") § 104.20(b)(1)(i).) These are collectively referred to as "Verification Criteria."

    a. A "California Cannabis Arrest or Conviction" means "an arrest or conviction in California for any crime under the laws of the State of California or the United States relating to the sale, possession, use, manufacture, or cultivation of Cannabis that occurred prior to November 8, 2016." (LAMC § 104.20(b) (1)(ii)(3).) An arrest or conviction under the City's prior cannabis laws is not a qualifying arrest or conviction. (Id.) This criterion may be evidenced by arrest records, court records, or other official government documents which contain the individual's name and the relevant statute or crime.

    b. "Disproportionately Impacted Area" means "Police Reporting Districts as established in the Expanded Social Equity Analysis, or as established using the same methodology and criteria in a similar analysis provided by an Applicant for an area outside of the City." (LAMC § 104.20(b) (1)(ii)(4).) This criterion may be evidenced by submitting at least one document per year of residency, including but not limited to, school transcripts, leases, utility bills, phone bills, government issued identification cards, dated bank statements, tax returns, financial statements, voter registration, government or court documents, vehicle registration, home-related paperwork, insurance documents, and pay stubs.

    c. "Low Income" means both of the following "(1) the Social Equity Individual Applicant meets the low-income thresholds established in the annual U.S. Department of Housing and Urban Development (HUD) income limits based upon the Area Median Income (AMI) for

Los Angeles County based on household size; and (2) the Social Equity Individual Applicant does not have Assets in excess of the amount as defined in this subsection." (LAMC § 104.20(b)(1)(ii)(5).) This criterion may be evidenced by (i) a complete tax return, including all schedules, for calendar year 2020 or 2021; and (ii) DCR's Asset Attestation Form in which the individual attested to the fact that their net assets were at, or below, four times the relevant thresholds, as described below, based on their household size. (LAMC § 104.20(b)(1)(ii)(1).)

        d. "Asset" means "net assets at, or below, four times the Low-Income thresholds based on Household Size. Examples of liquid accounts that shall be disclosed include but are not limited to, saving accounts, checking accounts, certificates of deposit, money market accounts, stocks, trusts, and gifts. Qualified retirement accounts and an applicant's primary residence shall be excluded for purposes of the calculation, but other forms of real estate shall be included. Such retirement accounts are limited to accounts that are intended for retirement and that would incur a penalty if withdrawn before a specified retirement age per each account." (LAMC § 104.20(b)(1)(ii)(1).)

**The Phase 3 Retail Round 2 ("P3RR2") Lottery**

    7.    DCR's next planned application phase is for retail storefront applications. In this next phase, DCR will identify SEIAs who are eligible to submit retail storefront applications through a random selection process, called the P3RR2 Lottery. (LAMC § 104.06.1(c).)

    8.    Selection in the P3RR2 Lottery does not guarantee a license; it merely provides the selected individual an opportunity to submit a Pre-Application Review record. If selected in the P3RR2 Lottery, individuals will have a maximum of one (1)

calendar year from the date of the P3RR2 Lottery to complete the first step of DCR's application process, a Pre-Application Review, by identifying a proposed business location compliant with LAMC section 105.00 et seq.  After a compliant location is identified, individuals selected in the P3RR2 Lottery must complete DCR's Temporary Approval Application and/or annual application process, which requires the submission of numerous required documents and forms, the payment of fees, and passing inspections, among other requirements.

9. DCR plans to hold the P3RR2 Lottery on or around December 8, 2022.

10. To participate in the P3RR2 Lottery, individuals must be verified as a SEIA with a qualifying California Cannabis Arrest or Conviction, and either one of the remaining two criteria.  (LAMC § 104.06.1(c)(3).)

11. In anticipation of the P3RR2 Lottery, between May 26, 2022 and July 25, 2022, DCR accepted requests and documentation evidencing Verification Criteria from individuals seeking to become verified as SEIAs.  (LAMC § 104.06.1(c)(1).)  As part of a request for verification, individuals were required to submit documentation evidencing that they met the Verification Criteria.

12. DCR received approximately 1,139 unique eligibility verification requests. Of the 1,139 unique submissions received, approximately 516 were verified to participate in the lottery and 623 were not verified to participate in the Lottery. Individuals who were not verified as SEIAs were not verified because the documentation they submitted did not sufficiently demonstrate: (1) a qualifying arrest or conviction; (2) a qualifying arrest or conviction and at least one other Verification Criteria, or (3) any of the Verification Criteria.

13. After July 25, 2022 at 4:00 P.M. Pacific Time (PT), the eligibility verification request submission period closed.  Incomplete and/or deficient submissions could not be corrected, supplemented or otherwise modified after July 25, 2022 at 4:00 P.M.  After the verification request submission period closed, DCR began reviewing the submissions to determine eligibility.  (LAMC § 104.06.1(c)(1).).

**Mr. Gay's Verification Request**

14. On May 26, 2022, Mr. Gay created a DCR Licensing Portal account. PUBLICUSER391288 was assigned to Mr. Gay's user account.

15. On July 12, 2022, Mr. Gay submitted a request to DCR to be verified as a SEIA purporting to satisfy all three Verification Criteria, namely that he has a prior California Cannabis Arrest or Conviction, low income status, and ten years' cumulative residency in a Disproportionately Impacted Area.

16. Based on the records submitted, Mr. Gay did not satisfy any of the Verification Criteria. Mr. Gay cannot be verified as a SEIA for the following reasons:

    a. **Mr. Gay did not submit sufficient documentation of a qualifying cannabis arrest of conviction**. Mr. Gay's conviction occurred under the laws of the State of Michigan. The documentation submitted to evidence Mr. Gay's conviction is also insufficient because it is not an official government record, unclear, incomplete, or modified from the official government record. Mr. Gay submitted two documents to support this criterion:

        i. **"ICHAT" Michigan Criminal History Record Information Criteria**. First, this document does not appear to be an official government record. Page 1 includes several disclaimers discouraging reliance on the document. Additionally, the document appears to be modified. Specifically, Mr. Gay appears to have inserted an unnumbered page between the pages numbered two and three. The unnumbered page is the only page listing Mr. Gay's purported cannabis arrest or conviction. A true and correct copy of this document is attached to the Declaration of Kenneth Gay as Exhibit 2.

        ii. **Motion and Order for Discharge from Probation**. Based on this document, Mr. Gay was arrested and/or convicted under

Michigan's Public Health Code section 333.7401. This code section relates to both marijuana and synthetic equivalents. The Centers for Disease Control and Prevention (CDC) reports that there are hundreds of different chemicals sold as synthetic marijuana. Pursuant to California Health and Safety Code 11357.5, synthetic marijuana is illegal in California and is not considered cannabis. Therefore, it is unclear whether Mr. Gay's arrest or conviction is, in fact, cannabis-related. A true and correct copy of this document is attached to the Declaration of Kenneth Gay as Exhibit 1.

iii. Additional official government or court records would be required to verify Mr. Gay under this criterion.

b. **Mr. Gay failed to fully disclose his assets or income**.

i. Mr. Gay's income documentation is incomplete because Mr. Gay did not disclose at least three material facts on his Asset Attestation Form. The Asset Attestation Form states that the "submission of false or misleading information or the failure to disclose material facts may result in the denial of [a] Social Equity Individual Applicant eligibility verification request, or the subsequent denial of an application." A true and correct copy of this document, redacted for Mr. Gay's personal information, is attached hereto as **Exhibit A**.

ii. First, Schedule C of Mr. Gay's 2020 tax return reveals that there are assets associated with his construction company, including vehicles, equipment, and/or tools, that are not disclosed on his Assest Attestation Form. A true and correct copy of Mr. Gay's 2020 tax return is attached to the Declaration of Kenneth Gay as Exhibit 3.

     iii. Second, California Secretary of State public records show that Mr. Gay possesses a 51% equity stake (51,000 shares) in Variscite, Inc. This was not disclosed on Mr. Gay's Asset Attestation Form. A true and correct copy of this document is appended to the City's Request for Judicial Notice.

     iv. Third, Mr. Gay's litigation in other jurisdictions demonstrates he has business interests in entities other than Variscite, Inc., including Peridot Tree, Inc. and Variscite NY One, Inc. *See, e.g., Peridot Tree, Inc. v. Sacramento*, 2022 WL 10629241 (E.D. Cal. Oct. 18, 2022).

  **c. Mr. Gay did not submit sufficient documentation of his residency in a Disproportionately Impacted Area for two reasons:**

     i. Mr. Gay did not submit an analysis using the same methodology and criteria for an area outside of the City, as required under LAMC section 104.20(b)(1)(ii)(4). Although Mr. Gay submitted a document pertinent to this subject, it does not show the criteria used to determine eligible locations or the underlying methodology. DCR would have accepted an analysis that demonstrated Battle Creek, MI qualifies as a Disproportionately Impacted Area using the same methodology and criteria as used to determine Disproportionately Impacted Areas in the City. A true and correct copy of this document is attached to the Declaration of Christian Kernkamp as Exhibit 3.

     ii. Mr. Gay also did not submit enough records to evidence 10 years of cumulative residency in any location. Specifically, he submitted five sufficient records which evidence only five years of residency. Specifically, Mr. Gay submitted his

probation discharge order, which evidences his residence for the year 2010 (attached as Exhibit 1 to the Declaration of Kenneth Gay); a contract for the purchase of property, which evidences his residence for the year 2015 (attached as Exhibit 6 to the Declaration of Kenneth Gay); and his tax returns from the years 2018, 2019, and 2020, which evidence his residence for those years (Mr. Gay's 2019 and 2020 tax returns are attached as Exhibits 3 and 4 to the Declaration of Kenneth Gay). Mr. Gay also submitted an undated letter from Gail A. Hardy purportedly evidencing Mr. Gay's residency. DCR has never accepted declarations or attestations as proof of residency; thus, Gail A. Hardy's undated letter is not sufficient evidence of Mr. Gay's residency. Therefore, even if Battle Creek, MI was a Disproportionately Impacted Area, DCR would not have verified Mr. Gay under this criterion because he did not submit evidence of 10 years of cumulative residency in Battle Creek, MI. The letter from Ms. Hardy is attached to the declaration of Kenneth Gay as Exhibit 5.

17. Individuals must satisfy at least two of the Verification Criteria to be verified as a SEIA.

18. Mr. Gay does not meet any of the Verification Criteria. Thus, DCR did not verify him as a SEIA.

19. A qualifying California cannabis arrest or conviction does not require residency in California. Multiple non-California residents were successfully verified to participate in the P3RR2 Lottery.

20. Conversely, California residency is not itself sufficient to demonstrate a California cannabis arrest or conviction. DCR received verification requests from

California residents who submitted evidence of an Arizona cannabis arrest and a Florida cannabis conviction. Neither met the arrest or conviction Verification Criteria.

**The P3RR2 Lottery and Public Convenience or Necessity Licensing Process**

21. The P3RR2 Lottery will be held on December 8, 2022. Approximately 100 SEIAs will be selected in the P3RR2 lottery and provided an opportunity to submit a retail storefront application thereafter. 508 of the 516 eligible verified SEIAs are currently registered for the P3RR2 Lottery.

22. LAMC section 104.06.1(c)(6) authorizes DCR to hold additional lotteries after the P3RR2 Lottery. DCR anticipates it will hold a second retail lottery in early 2023 to select an additional 75+ SEIAs to submit retail storefront applications.

23. In addition to the lottery process, retail storefront application opportunities are available through the City's Public Convenience and Necessity ("PCN") process. PCN applications are available in Community Plan Areas of the City which have reached or surpassed the permissible number of retail storefront licenses based on population size. A PCN application requires approval of the Los Angeles City Council before DCR may accept and process an application.

24. Under LAMC section 104.06.1(d)(1), PCN applicants must be verified SEIAs. However, unlike the P3RR2 Lottery, SEIAs applying for the PCN process do not need a California Cannabis Arrest or Conviction.

25. Mr. Gay may again request verification as a SEIA when DCR opens a new verification window. DCR anticipates opening a new SEIA verification period shortly after the P3RR2 Lottery is concluded.

26. If verified at a later date, Mr. Gay may apply for a retail storefront license through the PCN process without a California Cannabis Arrest or Conviction.

**Potential Harm to the City and P3RR2 Lottery Applicants**

27. In California, commercial cannabis applicants must obtain a license from their local jurisdiction and from the State of California Department of Cannabis Control ("DCC") prior to beginning operations.

28. A provisional license from DCC allows an applicant to begin commercial cannabis operations while pursuing an annual license. If applicants do not have a provisional license, they must delay their beginning of their business operations until they obtain an annual license from the City and DCC.

29. As of the date of this declaration, March 31, 2023 is the last day for SEIAs to submit provisional license applications to DCC.

30. DCC requires provisional license applications to include evidence of "Local Compliance Underway." DCR issues a "Notice of Local Compliance Underway" when a complete application is submitted and the relevant application fees are paid. An executed lease or property deed is required to submit a complete application to DCR and DCC.

31. If SEIAs do not meet DCC's March 31, 2022 deadline, they must delay the beginning of their operations until they apply for and obtain a City and DCC annual license. SEIAs who miss the March 31, 2022 deadline will likely be forced to rent or mortgages to maintain property where they cannot yet conduct a cannabis business until they complete the annual license process. Compared to the provisional licensing process, the DCC annual licensing process is significantly longer and more expensive. Under current law, the annual license application process will take at least 12 to 18 months to complete. Currently, the difference in holding costs between the provisional license and annual license processes exceed $100,000 per business.

32. Unlike the annual licensing process, SEIAs can complete DCR's temporary license process and DCC provisional license process in less than three months.

33. Any postponement of DCR's verification process and/or P3RR2 Lottery will jeopardize the ability for SEIAs selected in the P3RR2 Lottery to apply for a provisional license by March 31, 2023.

//

//

//

1   I declare under penalty of perjury under the laws of the State of California and the
2   United States that the foregoing is true and correct.

4   Date:  December 1, 2022

_____
Jason Killeen

# EXHIBIT A



# ASSET ATTESTATION

SEP-6003-FORM

**Instructions:** This attestation is a required part of the Social Equity Individual Applicant eligibility verification process if you seek to be verified based on the "Low Income" criteria in Los Angeles Municipal Code (LAMC) section 104.20(b)(1). Please carefully review the definitions below to ensure that you understand the relevant restrictions.

**"Asset"** means net assets at, or below, four times the Low-Income thresholds based on Household Size. Examples of liquid accounts that shall be disclosed include but are not limited to, saving accounts, checking accounts, certificates of deposit, money market accounts, stocks, trusts, and gifts. Qualified retirement accounts and an applicant's primary residence shall be excluded for purposes of the calculation, but other forms of real estate shall be included. Retirement accounts are limited to accounts that are intended for retirement and that would incur a penalty if withdrawn before a specified retirement age per each account.

**"Household Size"** means the number of individuals that meet any of the following criteria:

1. All spouses or domestic partners must be included in the household and must appear in the submission content.
2. All household members who are under 18 years of age must be the legal dependent of an adult household member, except in the case of emancipated minors, as claimed on the most recent income tax return, or legal minor children of title holders.
3. Pregnant applicants will only be counted as two household members with verifiable medical documentation.
4. Temporarily absent household members who intend to live in the residence upon return may be considered, if verifiable documentation supporting their absence is provided. Such household members include, but are not limited to, household members serving temporarily in the armed forces, or who are temporarily institutionalized.
5. Live-in assistants, foster children will not be counted toward household size. Individuals not listed on the Social Equity Individual Applicant's most recent tax return, such as elderly relatives, live-in assistants, and foster children will not be counted toward household size.

**"Low-Income"** means both of the following definitions are met:

1. The Social Equity Individual Applicant meets the low-income thresholds established in the annual U.S. Department of Housing and Urban Development (HUD) income limits based upon the Area Median Income (AMI) for Los Angeles County based on household size; and,
2. The Social Equity Individual Applicant does not have Assets in excess of four times the HUD income limits based on the Social Equity Individual Applicant's household size.

Department of Cannabis Regulation
221 N. Figueroa Ave., Suite 1245, Los Angeles, CA 90012
(213) 978 - 0738 · cannabis@lacity.org
www.cannabis.lacity.org

Asset Attestation

Requester Name: **Kenneth Gay**          Phone: ▬▬▬

ACA Reference ID No.: ▬▬▬          Email: ▬▬▬

Mailing Address: ▬▬▬

Requester's 2020 income: $_____          2020 Household Size: 1

Requester's 2021 income: $_____          2021 Household Size: 1

2020 HUD income limit based on Household Size: $ 63,100

2021 HUD income limit based on Household Size: $ 66,250

I hereby attest that I have the assets identified below for the following asset categories:

| Saving account(s): | $ ▬▬▬ | Real estate: | $ ▬▬▬ |
|---|---|---|---|
| Checking account(s): | $ ▬▬▬ | Real estate: | $ |
| Money market account(s): | $ | Other: | $ |
| Stock(s): | $ | Other: | $ |
| Trust(s): | $ | Other: | $ |
| Gift(s): | $ | Other: | $ |

I attest that the information provided in this Asset Attestation form is true, correct, and complete as of the date of my signature below. I have the authority to make the attestations contained within this form. I understand that submission of false or misleading information or the failure to disclose material facts may result in the denial of my Social Equity Individual Applicant eligibility verification request, or the subsequent denial of an application, the suspension or revocation of a license, and/or any other penalties allowed by law.

Printed Name: **Kenneth Gay**          Date: 5/31/22

Signature: *[signed]*

Note: the ▮▮▮▮▮ in real estate is my primary home.  The property has 3 units on it.  I live in one unit, and I rent out the other two units to tenants.  I am not sure if the property counts as my primary home or counts as an asset for the Department of Cannabis Regulation's purposes, so I disclosed the property.