HYDEE FELDSTEIN SOTO, City Attorney
TAYLOR C. WAGNIERE, Deputy City Attorney (SBN 293379)
PATRICK HAGAN, Deputy City Attorney (SBN 266237)
KABIR CHOPRA, Deputy City Attorney (SBN 285383)
221 N. Figueroa St., Suite 1245
Los Angeles, California 90012
Telephone: (408) 616-0621
patrick.hagan@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES, which includes
LOS ANGELES DEPARTMENT OF CANNABIS
REGULATION; AND MICHELLE GARAKIAN,
in her official capacity

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARISCITE, INC. AND KENNETH GAY,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES; LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN,<br><br>　　　　Defendants, | Case No.: 2:22-cv-08685-SPG-SK<br><br>Hon. Sherilyn Peace Garnett<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS [F.R.C.P. 12(b)(6)] OR, IN THE ALTERNATIVE, TO ABSTAIN; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>**Date:**　　　　**Feb. 22, 2023**<br>**Time:**　　　　**1:30 p.m.**<br>**Location:**　　　**5C** |

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL:

PLEASE TAKE NOTICE THAT on February 22, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Sherilyn Peace Garnett, in Courtroom 5C of the United States Courthouse for the Central District of California, Western Division, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant City of Los Angeles, which includes the Los Angeles Department of Cannabis Regulation and Michelle Garakian, in her official capacity (collectively, "City") will and hereby does move to dismiss the Complaint filed by Plaintiffs Variscite, Inc. and Kenneth Gay ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In the alternative, the City moves for an order abstaining from exercising jurisdiction over this case.

The grounds for the City's motion to dismiss are as follows:

- Plaintiffs lack standing under Article III of the United States Constitution to challenge the City's cannabis licensing criteria because Mr. Gay's application was incomplete or misleading, meaning that his alleged injury did not arise out of the City's purportedly unconstitutional licensing criteria and a judgment striking those criteria down as unconstitutional would not redress that injury.

- Plaintiffs' challenge to the City's licensing criteria fails as a matter of law because the Ninth Circuit has not applied the Dormant Commerce Clause to local cannabis regulations, and courts within the Ninth Circuit have consistently declined to extend the protections of federal law to cannabis growers and sellers.

- Plaintiffs' challenge fails as a matter of law even if the Dormant Commerce Clause applied, because the City's licensing criteria do not discriminate against out-of-state applicants or otherwise burden interstate commerce.

The grounds for a motion in the alternative to abstain are those set forth in *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941) and in *Peridot Tree, Inc. v. City of Sacramento*, No. 2:22-cv-00289-KJM-DB, 2022 WL 10629241, at *1 (E.D. Cal. Oct. 17, 2022), namely that the interests of the federal courts in adjudicating this matter

1   are not sufficiently clear to warrant the exercise of jurisdiction, as compared to the

2   manifestly clear interests of the state courts.  The City also moves for abstention

3   pursuant to the first-to-file rule, on the grounds that the parties, issues, and subject

4   matter of this action and *Peridot Tree* are similar enough to warrant abstaining here to

5   allow the appeal in *Peridot Tree* to proceed first. *See Peta Inc. v. Beyond the Frame,*

6   *Ltd.*, No. CV 10-07576 MMM (SSx), 2011 U.S. Dist. LEXIS 157782, at *2 (C.D. Cal.

7   Feb. 16, 2011) ("The first-to-file rule is a principle of federal comity that permits a

8   district court to decline jurisdiction over an action when a complaint involving the same

9   parties and issues has already been filed in another district."); *Centocoor, Inc. v.*

10  *MedImmune, Inc.*, No. C 02-03252, 2002 U.S. Dist. LEXIS 21109, at *3 (N.D. Cal. Oct.

11  22, 2002) (stating that the first-to-file rule does not require identical issues or parties if

12  the actions involve closely related questions or common subject matter).

13          Pursuant to Local Rule 7-3, the City prepared and circulated a letter on December

14  12, 2022, requesting a meet-and-confer on the instant motion and setting forth the points

15  and authorities in support thereof.  Plaintiffs did not accept the City's invitation to meet-

16  and-confer.

17

18   Dated: Jan. 6, 2023                  Respectfully submitted,

19                                         **HYDEE FELDSTEIN SOTO,** City Attorney
                                           **TAYLOR C. WAGNIERE,** Deputy City Attorney

20                                         **KABIR CHOPRA,** Deputy City Attorney
                                           **PATRICK HAGAN,** Deputy City Attorney

21

22                                         By: _____

23                                         **PATRICK HAGAN**

                                           Attorneys for Defendant CITY OF LOS ANGELES,
24                                         which includes the LOS ANGELES DEPARTMENT OF
                                           CANNABIS REGULATION; AND MICHELLE
25                                         GARAKIAN, in her official capacity

26

27

28

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................. 12

II.     FACTUAL SUMMARY ....................................................................... 13

    A.   The City's Social Equity Program. ............................................. 13
    B.   The SEIA Verification Process. ................................................. 14
    C.   The Phase 3 Retail Round 2 ("P3rr2") Lottery. ........................ 15
    D.   PCN Process. .............................................................................. 15
    E.   Kenneth Gay's SEIA Application And Complaint. .................... 16

III.    LEGAL STANDARD. .......................................................................... 16

IV.     ARGUMENT: THE COURT MUST DISMISS THE COMPLAINT ................. 17

    A.   The Ninth Circuit Does Not Apply Federal Law, Including the
        Dormant Commerce Clause, to the Benefit of Cannabis Growers
        and Sellers. ................................................................................. 17

        1.   Ninth Circuit Courts Do Not Extend Trademark and RICO
            Protections to Cannabis Growers and Sellers. .................... 18
        2.   Ninth Circuit Courts Do Not Enforce Cannabis-Related Contracts. 19
        3.   Ninth Circuit Courts Do Not Recognize Due Process and Civil
            Rights Claims Arising from Cannabis Production and Sales. .......... 20
        4.   Ninth Circuit Courts Do Not Apply the Dormant Commerce Clause
            to Local Cannabis Regulations. ........................................... 21

    B.   The City's Social Equity Program Does Not Exclude Out-of-State
        Applicants or Otherwise Burden Interstate Commerce. ............................. 22

    C.   Plaintiffs Do Not Have Standing to Challenge the City's Social Equity
        Program. ..................................................................................... 25

        1.   Mr. Gay Failed to Submit Sufficient Documentation of Any
            Qualifying Conviction, Regardless of Where it Occurred. ............. 26
        2.   Mr. Gay Failed to Fully Disclose His Assets and Income,
            Disqualifying Him as a Low-Income Applicant. ............................ 27
        3.   Mr. Gay Failed to Submit Sufficient Documentation of 10 Years'
            Residence Anywhere, Regardless of Whether that Residence was in a
            DIA. ....................................................................................... 27

V.     ARGUMENT – THE COURT SHOULD ABSTAIN FROM EXERCISING
       JURISDICTION OVER THE INSTANT CASE. .................................................. 28

       A.     The Court Should Abstain Pursuant to the *Pullman* Doctrine. ................... 29
       B.     The Court Should Abstain Pursuant to the Principles of Federalism and
              Comity Articulated in *Peridot Tree*. .......................................................... 31
       C.     The Court Should Abstain Pursuant to the First-to-File Rule. .................. 33

VI.    CONCLUSION ...................................................................................................... 36

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Allegheny Cnty. v. Frank Mashuda Co.*,
   360 U.S. 185 (1959).....................................................................................29

6

7
*Alltrade, Inc. v. Uniweld Prod., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ..............................................................33, 34

8

9
*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir.2004) ......................................................................33

10

11
*Bernstein v. Virgin Am., Inc.*,
   277 F. Supp. 3d 1049 (N.D. Cal. 2017)....................................................24

12

13
*C-Y Dev. Co. v. City of Redlands*,
   703 F.2d 375 (9th Cir. 1983) ..............................................................29, 30

14

15
*Centocoor, Inc. v. MedImmune, Inc.*,
   2002 U.S. Dist. LEXIS 21109 (N.D. Cal. Oct. 22, 2002) ..........................3

16

17
*Centocor, Inc. v. MedImmune, Inc.*,
   2002 WL 31465299 (N.D. Cal. Oct.22, 2002) ...........................................34

18

19
*Certified Dry Cleaning Network, L.L. C. v. Tenke Corp.*,
   511 F.3d 535 (6th Cir.2007) ......................................................................33

20

21
*Church of Scientology of California v. United States Dep't. of the Army*,
   611 F.2d 738 (9th Cir.1980) ......................................................................33

22

23
*Courthouse News Serv. v. Planet*,
   750 F.3d 776 (9th Cir. 2014) .....................................................................29

24

25
*Ed Tobergte Associates, Inc. v. Zide Sport Shop of Ohio, Inc.*,
   83 F.Supp.2d 1197 (D.Kan.1999).............................................................35

26

27

28

*Excel Music, Inc. v. Simone*,
  1996 WL 5708 (E.D.La. Jan.5, 1996) ........................................................35

*Finch v. Treto*,
  2022 U.S. Dist. LEXIS 103222 (N.D. Ill. June 9, 2022)...........................22

*Gen. Motors Corp. v. Tracy*,
  519 U.S. 278 (1997)...................................................................................17

*Gerritsen v. Warner Bros. Ent. Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................................................13

*Gonzales v. Raich*,
  545 U.S. 1 (2005)................................................................................17, 20

*Greenline Industries, Inc. v. Agri–Process Innovations, Inc.*,
  2008 WL 2951743 (N.D.Cal. July 28, 2008) ............................................34

*Guthy–Renker Fitness, L.L. C. v. Icon Health & Fitness, Inc.*,
  179 F.R.D. 264 (C.D.Cal.1998)................................................................34

*Int'l Franchise Ass'n v. City of Seattle*,
  803 F.3d 389 (9th Cir. 2015) ..............................................................22, 24

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
  544 F.Supp.2d 949 (N.D.Cal.2008)...................................................34, 35

*Isthmus Landowners Assoc. v. State of California*,
  601 F.2d 1087 (9th Cir. 1979) ..................................................................30

*Kiva Health Brands LLC v. Kiva Brands Inc.*,
  402 F. Supp. 3d 877 (N.D. Cal. 2019)................................................18, 19

*In re Linda Vista Cinemas, L.L.C.*,
  442 B.R. 724 (Bankr.D.Ariz.2010) ..........................................................13

*Lowe v. City of Detroit*,
  544 F. Supp. 3d 804 (E.D. Mich. 2021) .............................................22, 23

NOTICE OF MOTION AND MOTION TO DISMISS/ABSTAIN; MEMO OF POINTS & AUTH. IN SUPPORT

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)..................................................................................25

*Maine v. Taylor,*
   477 U.S. 131 (1986)..................................................................................22

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
   519 F.3d 1025 (9th Cir. 2008) ................................................................16

*Maya v. Centex Corp.,*
   658 F.3d 1060 (9th Cir. 2011) ................................................................25

*Molus v. Swan,*
   2009 WL 160937 (S.D.Cal. Jan. 22, 2009) ...........................................13

*N.A. for the Advancement of Multijurisdiction Practice v. Berch,*
   773 F.3d 1037 (9th Cir. 2014) ................................................................24

*Nakash v. Marciano,*
   882 F.2d 1411 (9th Cir.1989) ................................................................34

*NovelPoster v. Javitch Canfield Group,*
   2014 WL 5594969 (N.D.Cal. Nov. 3, 2014) .........................................13

*NPG, LLC v. City of Portland,*
   2020 U.S. Dist. LEXIS 146958 (D. Me. Aug. 14, 2020) ........................22

*Nuclear Info. & Res. Serv. v. Nuclear Reg. Comm'n,*
   457 F.3d 941 (9th Cir. 2006) ..................................................................25

*Orion Wine Imps.. LLC v. Appelsmith,*
   837 F. App'x 585 (9th Cir. 2021)...........................................................25

*Pacesetter Systems, Inc. v. Medtronic, Inc.,*
   678 F.2d 93 (9th Cir.1982) .....................................................................33

*Pennzoil Co. v. Texaco, Inc.,*
   481 U.S. 1 (1987)....................................................................................32

NOTICE OF MOTION AND MOTION TO DISMISS/ABSTAIN; MEMO OF POINTS & AUTH. IN SUPPORT

*Peridot Tree, Inc. v. City of Sacramento*,
2022 U.S. Dist. LEXIS 190046 (E.D. Cal. Oct. 17, 2022)..............................21, 27, 31

*Peridot Tree, Inc. v. City of Sacramento*,
2022 WL 10629241 (E.D. Cal. Oct. 17, 2022).................................................. *passim*

*Peta Inc. v. Beyond the Frame, Ltd.*,
2011 U.S. Dist. LEXIS 157782 (C.D. Cal. Feb. 16, 2011) ..........................................3

*PETA, Inc. v. Beyond the Frame, Ltd.*,
2011 WL 686158 (C.D. Cal. Feb. 16, 2011) ...............................................................34

*Pike v. Bruce Church*,
397 U.S. 137 (1970)....................................................................................................22

*Polk v. Gontmakher*,
2019 U.S. Dist. LEXIS 146724 (W.D. Wash. Aug. 28, 2019)....................................19

*Porter v. Jones*,
319 F.3d 483 (9th Cir. 2003) ......................................................................................29

*Railroad Commission v. Pullman Co.*,
312 U.S. 496 (1941)................................................................................................1, 28

*Rocky Mt. Farmers Union v. Corey*,
730 F.3d 1070 (9th Cir. 2013) ....................................................................................22

*Santa Fe Improvement Co. v. City of Chula Vista*,
596 F.2d 838 (9th Cir. 1979) ......................................................................................30

*Save Power Ltd. v. Syntek Finance Corp.*,
121 U.S. 947 (5th Cir.1997) ..................................................................................33, 35

*Sederquist v. City of Tiburon*,
590 F.2d 278 (9th Cir. 1978) ......................................................................................30

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) ....................................................................................17

9

*Shulman v. Kaplan*,
    2020 WL 7094063 (C.D. Cal. Oct. 29, 2020) ............................................................18

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ...........................................................................16, 17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)............................................................................................25

*Staffin v. Cty. of Shasta*,
    No. 2:13-cv-00315 ............................................................................................20

*Texas Instruments Inc. v. Micron Semiconductor, Inc.*,
    815 F.Supp. 994 (E.D.Tex.1993) .........................................................................35

*Toigo v. Dep't of Health & Senior Servs.*,
    549 F. Supp. 3d 985 (W.D. Mo. 2021) .................................................................22

*Tracy v. USAA Cas. Ins. Co.*,
    2012 WL 928186 (D. Haw. Mar. 16, 2012) .......................................................19, 20

*United States v. Author Services*,
    804 F.2d 1520 (9th Cir.1986) ..............................................................................13

*United States v. Oakland Cannabis Buyers' Co-Op*,
    532 U.S. 483 (2001)............................................................................................33

*United States v. Wilson*,
    631 F.2d 118 (9th Cir.1980) ...............................................................................13

*Variscite NY One, Inc. v. State of New York et al.*,
    No. 1:2022-cv-01013 (N.D.N.Y Nov. 10, 2022)......................................................27

*Walker v. Progressive Casualty Ins. Co.*,
    2003 WL 21056704 (W.D.Wash. May 9, 2003) .....................................................34

*Ward v. Follett Corp.*,
    158 F.R.D. 645 (N.D.Cal.1994) ...........................................................................34

NOTICE OF MOTION AND MOTION TO DISMISS/ABSTAIN; MEMO OF POINTS & AUTH. IN SUPPORT

*West Gulf Maritime Association v. ILA Deep Sea Local 24,*
    751 F.2d 721 (5th Cir.1985) ........................................................34

**Statutes**
21 U.S.C. §§ 841, 812(c) ...........................................................17
28 U.S.C. § 2201 ......................................................................16
42 U.S.C. § 1983.................................................................16, 20

California Code of Civ. Proc. §1085 ........................................30

California Health and Safety Code §11357.5 ............................11

California's Alcoholic Beverage Control Act .............................26

Controlled Substances Act...............................................17, 18, 33

Los Angeles Municipal Code
    § 104.03(a)(4) ...............................................................16
    § 104.06.1(c) .................................................................15
    § 104.06.1(c)(3) ............................................................15
    § 104.20(a)(2)(i) ...........................................................24
    § 104.20(b)(1)(ii)(1) ...............................................15, 23
    § 104.20(b)(1)(ii)(3) ...............................................14, 23
    § 104.20(b)(1)(ii)(4) ..........................................14, 24, 27
    § 104.20(b)(1)(ii)(5) ...............................................15, 23

Lanham Act.............................................................................18
Public Health Code section 333.7401.......................................26
Racketeer Influenced and Corrupt Organizations Act.................18

**Other Authorities**
Fed. R. Evid. 201 ....................................................................13
Federal Rule of Civil Procedure 12(b)(6)....................... 16, 18, 20, 21
Local Rule 7-3.........................................................................3

NOTICE OF MOTION AND MOTION TO DISMISS/ABSTAIN; MEMO OF POINTS & AUTH. IN SUPPORT

1

## I.   **INTRODUCTION**

2      This case arises from the regulation of commercial cannabis licenses by the City

3 of Los Angeles, which includes the Los Angeles Department of Cannabis Regulation

4 ("DCR") and Michelle Garakian, in her official capacity (collectively, "City").  To

5 rectify the effects of California's disastrous war on cannabis, the City currently limits its

6 commercial cannabis licenses to individuals who have a California cannabis arrest or

7 conviction and have either a low income or live in an area that has been

8 disproportionately impacted by California's drug war.  Plaintiffs Variscite, Inc. and

9 Kenneth Gay ("Plaintiffs") claim the City's criteria violate the Dormant Commerce

10 Clause because they purportedly favor in-state applicants, and seek injunctive and

11 declaratory relief prohibiting the issuance of any further licenses on that basis.

12      The Court should dismiss Plaintiffs' Complaint for three reasons.  First, the Ninth

13 Circuit has not applied the Dormant Commerce Clause to local cannabis regulations,

14 precluding all of Plaintiffs' claims as a matter of law.  Second, none of the City's criteria

15 exclude out-of-state applicants or otherwise burden interstate commerce, and would not

16 violate the Dormant Commerce Clause if it applied.  Third, Plaintiffs do not have

17 standing to challenge the City's criteria because Plaintiffs would not qualify for a license

18 even if the purportedly unconstitutional criteria were stricken.

19      In the alternative, the Court should abstain from this case for three reasons.  First,

20 the Court should abstain pursuant to the *Pullman* abstention doctrine, to allow the state

21 court to render its own determination as to whether Mr. Gay would qualify for a license

22 even if the purportedly unconstitutional criteria were stricken.  Second, the Court should

23 abstain pursuant to the general principles of federalism and comity articulated in *Peridot*

24 *Tree*, a case brought by Mr. Gay in the federal district court for the Eastern District of

25 California.  Third, abstention is warranted pursuant to the first-to-file rule, to allow the

26 Ninth Circuit to render a determination on the *Perdidot Tree* matter and to avoid a

27 potentially conflicting determination here.

28      For these reasons, the Court should dismiss this case or abstain from it.

## II.    FACTUAL SUMMARY

### A.    The City's Social Equity Program.

In 2017, the City enacted its first commercial cannabis laws in anticipation of the decriminalization of certain retail cannabis activities.  The City's licensing scheme includes a Social Equity Program intended to promote equitable ownership and employment opportunities in the cannabis industry in order to decrease disparities in life outcomes for marginalized communities, and to address the disproportionate impacts of prior cannabis criminalization.  (Declaration of Jason Killeen[1] ["Killeen Decl."] ¶ 5 [ECF No. 14-2].)  The storefront retail, delivery, and cultivation application processes are exclusively available to verified Social Equity Individual Applicants ("SEIAs") until January 1, 2025. (*Id.*)  After January 1, 2025, all commercial cannabis application types will be available to all applicants, regardless of whether they meet the SEIA requirements. (*Id.*)

---

[1] For the Court's edification and to allow the Court to address the issue of standing at an early stage of litigation, the City requests that the Court take judicial notice of the Gay, Kernkamp, and Killeen Declarations [ECF Nos. 5-1, 5-2 through 5-8, and 14-2, respectively] filed in support of and in opposition to Plaintiffs' Application for a Temporary Restraining Order, along with the exhibits thereto. *See* Fed. R. Evid. 201; *Molus v. Swan*, No. 05cv452–MMA (WMc), 2009 WL 160937, *2 (S.D.Cal. Jan. 22, 2009) ("Courts also may take judicial notice of their own records"), citing *United States v. Author Services*, 804 F.2d 1520, 1523 (9th Cir.1986); *NovelPoster v. Javitch Canfield Group*, No. 13–CV–05186–WHO, 2014 WL 5594969, *4 n. 7 (N.D.Cal. Nov. 3, 2014) ("In conjunction with the motion, defendants requested judicial notice of various documents, including NovelPoster's ex parte application for a temporary restraining order in this case and this Court's subsequent order.... Defendants' request for judicial notice of the TRO application and order is GRANTED"); *In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 740 n. 7 (Bankr.D.Ariz.2010) (stating that "[t]he court takes judicial notice of its own records," specifically, a declaration attached to the opposition to a motion for preliminary injunction) citing *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir.1980); *see also Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (when requesting judicial notice of documents filed in the same case, "an accurate citation will suffice").  To avoid duplicative filings, the City also requests that the Court take judicial notice of its earlier RJN. [ECF No. 14-1.]

---

1

**B.     The SEIA Verification Process.**

2     To participate in the Social Equity Program, an individual must request

3  verification as a SEIA.  To be verified as a SEIA, an individual must submit evidence of

4  two of the following three criteria ("Verification Criteria"):  (a) a qualifying California

5  Cannabis Arrest or Conviction prior to November 8, 2016; and (b(1)) 10 years of

6  residency in a Disproportionately Impacted Area; or (b(2)) low income in the 2020 or

7  2021 calendar year.  (Los Angeles Municipal Code ("LAMC") § 104.20(b)(1)(i)[2].)

8  None of these criteria require an applicant to be a California resident.

9     A "California Cannabis Arrest or Conviction" means "an arrest or conviction in

10  California for any crime under the laws of the State of California or the United States

11  relating to the sale, possession, use, manufacture, or cultivation of Cannabis that

12  occurred prior to November 8, 2016."  (LAMC § 104.20(b)(1)(ii)(3).)  This criterion

13  may be evidenced by arrest records, court records, or other official government

14  documents which identify the relevant statute or crime.  (Killeen Decl. ¶ 6(a).)

15     "Disproportionately Impacted Area" ("DIA") means "Police Reporting Districts

16  as established in the Expanded Social Equity Analysis, or as established using the same

17  methodology and criteria in a similar analysis provided by an Applicant for an area

18  outside of the City."  (LAMC § 104.20(b)(1)(ii)(4).)  The Expanded Social Equity

19  Analysis is a report commissioned by the Los Angeles City Council to identify areas

20  within the City that have greater than the mean number of cannabis-related arrests for

21  the City and composed of 60 percent or more low-income households.  (Exh. 1 to Decl.

22  of Christian Kernkamp [ECF No. 5-3].) Residence in a DIA can be shown with at least

23  one document per year of residency, including leases, utility/phone bills, official ID

24  cards, bank or financial statements, tax returns, government documents, vehicle

25  registration, insurance documents, and pay stubs.  (Killeen Decl. ¶ 6(b).)

26

27     [2] Section 104 of the LAMC is attached as Exhibit A to the City's Request for
Judicial Notice in Opposition to Plaintiffs' Application for a TRO. [ECF No. 14-1.]  The

28  City requests that the Court take judicial notice of the materials in that RJN.

14

"Low Income" means both of the following "(1) the Social Equity Individual Applicant meets the low-income thresholds established in the annual U.S. Department of Housing and Urban Development (HUD) income limits based upon the Area Median Income (AMI) for Los Angeles County based on household size; and (2) the Social Equity Individual Applicant does not have Assets in excess of the amount as defined in this subsection." (LAMC § 104.20(b)(1)(ii)(5).)  This criterion may be evidenced by (i) a complete tax return, including all schedules, for calendar year 2020 or 2021; and (ii) the City's Asset Attestation Form showing net assets at or below four times the relevant thresholds.  (LAMC § 104.20(b)(1)(ii)(1); Killeen Decl. ¶ 6(c).)

C.   **The Phase 3 Retail Round 2 ("P3RR2") Lottery.**

The City's most recent application phase was for storefront retail applications. (Killeen Decl. ¶ 7.)  In this phase, the City identified SEIAs eligible to submit retail storefront applications through a random selection process, called the P3RR2 Lottery. (*Id.*; LAMC § 104.06.1(c).)  The City conducted the first iteration of the P3RR2 Lottery on December 8, 2022.  (Killeen Decl. ¶ 9; *see also* ECF No. 22 [Order Denying App. for TRO].)  Individuals participating in the P3RR2 Lottery were required to be verified as a SEIA with a California Cannabis Arrest or Conviction, and either one of the remaining two criteria. (LAMC § 104.06.1(c)(3); Killeen Decl. ¶ 10.)  In anticipation of the P3RR2 Lottery, the City accepted verification submissions between May 26, 2022 and July 25, 2022. (Killeen Decl. ¶ 11.)  The City received approximately 1,139 unique eligibility verification requests, 516 of which were verified.  (Killeen Decl. ¶ 12.) 508 of those participated in the lottery. (*Id.* ¶ 21.)

D.   **PCN Process.**

In addition to the lottery process, storefront retail license opportunities are available through the City's Public Convenience and Necessity ("PCN") process. (Killeen Decl. ¶ 23.) PCN applications may be submitted for Community Plan Areas of the City which have reached or surpassed the permissible number of storefront retail licenses based on population size.  (*Id.*; LAMC § 104.03(a)(4).) A PCN application

requires approval of the Los Angeles City Council before a licensing application may be processed.  (Killeen Decl. ¶ 23; LAMC § 104.03(a)(4).)  PCN applicants must be verified SEIAs.  (Killeen Decl. ¶ 23.)  Unlike the P3RR2 Lottery, SEIAs applying for the PCN process do not need a California Cannabis Arrest or Conviction.  (Killeen Decl. ¶ 23.)

### E.      Kenneth Gay's SEIA Application and Complaint.

On July 12, 2022, Mr. Gay applied to be verified as a SEIA for the P3RR2 Lottery.  (Killeen Decl. ¶ 15.)  Based on the records submitted, Mr. Gay did not satisfy any of the Verification Criteria.  (*Id.*)  He thereafter filed the instant case.

The complaint alleges that the City's California Cannabis Arrest or Conviction and DIA requirements violate the Dormant Commerce Clause.  On that basis, Plaintiffs assert four claims:  (1) per 42 U.S.C. § 1983, for violation of the Dormant Commerce Clause, against the City's Lottery scheme; (2) for declaratory relief, against the City's Lottery scheme; (3) per 28 U.S.C. § 1983, for violation of the Dormant Commerce Clause, against the City's PCN process; and (4) for declaratory relief, against the City's PCN process. (Comp. ¶¶ 35-50.)

## III.   LEGAL STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permit a court to dismiss a complaint where it "fail[s] to state a claim upon which relief can be granted." "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).  On a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013).

## IV.   ARGUMENT: THE COURT MUST DISMISS THE COMPLAINT.

The Court must dismiss the complaint for three reasons:  First, the Ninth Circuit has not applied the Dormant Commerce Clause to local cannabis regulations, precluding Plaintiffs' claims in their entirety as a matter of law.  Second, none of the City's criteria exclude out-of-state applicants or otherwise burden interstate commerce, and would not violate the Dormant Commerce Clause if it applied.  Third, Plaintiffs do not have standing to challenge the Social Equity Program because they cannot satisfy the unchallenged criteria to be verified as a SEIA.

### A.   The Ninth Circuit Does Not Apply Federal Law, Including the Dormant Commerce Clause, to the Benefit of Cannabis Growers and Sellers.

The Court should dismiss the complaint because the Dormant Commerce Clause does not, as a matter of law, apply to local cannabis regulations.  The purpose of the Dormant Commerce Clause is to preserve competitive interstate markets, but by enacting the Controlled Substances Act ("CSA"), Congress has outlawed the interstate market for cannabis.  *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997) (regarding the purpose of the Dormant Commerce Clause); 21 U.S.C. §§ 841, 812(c)(Schedule 1)(c)(10); *Gonzales v. Raich*, 545 U.S. 1, 22 (2005).  The Dormant Commerce Clause is therefore inapplicable, depriving Plaintiffs of a "cognizable legal theory" in support of their Complaint.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

The City's research revealed no cases in which the Ninth Circuit Court of Appeals or any district courts within the Ninth Circuit had applied the Dormant Commerce Clause to local cannabis regulations.  To the contrary, as set forth below, district courts within the Ninth Circuit, including the federal district court for the Central District of California, have routinely declined to apply federal law or equitable principles to the benefit of cannabis sellers like Plaintiffs.  Under current Ninth Circuit precedent, Plaintiffs' challenge must therefore fail insofar as it relies on the Dormant Commerce Clause.

1.      **Ninth Circuit Courts Do Not Extend Trademark and RICO**
**Protections to Cannabis Growers and Sellers.**

Courts within the Ninth Circuit are reluctant to extend the protections of federal law to cannabis sellers and growers.  For example, in *Shulman v. Kaplan*, the federal district court for the Central District of California refused to grant any relief on Racketeer Influenced and Corrupt Organizations Act ("RICO Act") and Lanham Act (i.e., trademark) claims on the grounds that to do so would violate the CSA. *Shulman v. Kaplan*, No. 219CV05413ABFFMX, 2020 WL 7094063, at *4 (C.D. Cal. Oct. 29, 2020).  In that case, the plaintiffs and defendants were involved in a cannabis production and sales business. *Id.* at *1.  After business relations faltered, the plaintiffs sued the defendants for, among other things, trademark violations, false advertising, and for violation of the RICO Act.  *Id.*  The defendants moved to dismiss under FRCP 12(b)(6), and Judge Andre Birotte, Jr. granted the motion in its entirety on the grounds that "any potential remedy in this case would contravene federal law under the CSA."  *Id.* at *5 ("A court order requiring monetary payment to Plaintiffs for the loss of profits or injury to a business that produces and markets cannabis would, in essence, (1) provide a remedy for actions that are unequivocally illegal under federal law, and (2) necessitate that a federal court contravene a federal statute (the CSA) in order to provide relief under a federal statute (RICO) . . . [t]he Court finds this contrary to public policy.").

Similarly, in *Kiva Health Brands LLC v. Kiva Brands, Inc.*, the federal district court for the Northern District of California refused to recognize a "first use" trademark defense and counterclaim asserted by the cannabis retailer on the grounds that cannabis is illegal under federal law.  *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 891 (N.D. Cal. 2019).  In that case, the plaintiff manufactured and sold organic foods without any connection to cannabis under a "Kiva" brand, and the defendant manufactured and sold cannabis products, also under a "Kiva" brand.  *Id.* at 881-82. The plaintiff sued the defendant for trademark violations, and the defendant asserted defenses and a counterclaim based on a "first use" that predated the plaintiff's use.  *Id.* at

887.  However, the court refused to recognize that defense, and dismissed the associated counterclaim because the defendant's cannabis sales were illegal under federal law.  *Id.* at 890 ("To hold that KBI's prior use of the KIVA mark on a product that is illegal under federal law is a legitimate defense to KHB's federal trademark would put the government in the anomalous position of extending the benefits of trademark protection to a seller based upon actions the seller took in violation of that government's own laws.") (internal quotations omitted).

### 2.  Ninth Circuit Courts Do Not Enforce Cannabis-Related Contracts.

Courts within the Ninth Circuit are also reluctant to enforce cannabis-related contracts, because they are illegal under federal law.  In *Polk v. Gontmakher*, for instance, the federal district court for the Western District of Washington refused to enforce a partnership agreement among cannabis growers and sellers on the grounds that "[c]ontracts that violate a federal statute are illegal and unenforceable."  *Polk v. Gontmakher*, No. 2:18-cv-01434-RAJ, 2019 U.S. Dist. LEXIS 146724, at *5 (W.D. Wash. Aug. 28, 2019).  In that case, Mr. Polk and Mr. Gontmakher agreed to launch a cannabis growing and selling business in 2013. *Id.* at *1.  Soon after, however, it became apparent that Mr. Polk's prior criminal conviction rendered him ineligible for a Washington state cannabis license. *Id.*  After attempting to remain at the business, he eventually departed. *Id.*  After his departure, Mr. Gontmakher disputed what was owed to him under the controlling agreements. *Id.* at *2.  The court easily dismissed all of his claims, however, on the grounds that "the production, distribution, and sale of marijuana remains illegal" and therefore "any agreement giving Mr. Polk an equity interest in NWCS is illegal under federal law." *Id.*

Likewise, in *Tracy v. USAA Casualty Insurance*, the federal district court for the District of Hawaii refused to enforce an insurance contract against an insurance company because the plaintiff's possession and cultivation of cannabis violated federal law. *Tracy v. USAA Cas. Ins. Co.*, No. CIV. 11-00487 LEK, 2012 WL 928186, at *1 (D.

Haw. Mar. 16, 2012).  In that case, the plaintiff suffered a burglary in which twelve of her cannabis plants were stolen.  *Id.*  She submitted a claim through her homeowners' insurance policy to the defendant, who refused to reimburse her for the plants.  *Id.*  She sued for breach of contract, and the defendant insurer moved for summary judgment on the grounds that, *inter alia*, the plaintiff had no legally cognizable interest in the cannabis plants.  *Id.* at *1-2.  The court agreed, and on that basis, refused to enforce the contract.  *Id.* at *13 ("To require Defendant to pay insurance proceeds for the replacement of medical marijuana plants would be contrary to federal law and public policy, as reflected in the CSA, *Gonzales*, and its progeny.").

> ### 3. Ninth Circuit Courts Do Not Recognize Due Process and Civil Rights Claims Arising from Cannabis Production and Sales.

Cannabis-related due process and civil rights claims are likewise rejected by federal courts.  In *Staffin v. County of Shasta*, for example, the federal district court for the Eastern District of California dismissed all claims brought by a cannabis retailer/distributor against the local sheriff on the grounds that the cannabis business, in its entirety, was illegal under federal law.  *Staffin v. Cty. of Shasta*, No. 2:13-cv-00315 JAM-CMK, 2013 U.S. Dist. LEXIS 64625, at *11 (E.D. Cal. May 6, 2013).  In that case, the plaintiff Christopher Staffin alleged that the local sheriff "began a harassment program in furtherance of a de facto policy to ban all medical marijuana cooperatives, collectives, dispensaries, operators, establishments, or providers."  *Id.* at *1.  On that basis, Mr. Staffin brought claims under Section 1983 for violation of the Contracts Clause (by interfering with his lease agreements, etc.), for violation of the Due Process clause (by seizing Mr. Staffin's cannabis products without due process of law); and for *Monell* claims (for official municipal policy depriving a plaintiff of his or her constitutional rights).  *Id.*  The county and sheriffs moved to dismiss under Rule 12(b)(6), and the court granted the motion.  The Court found that "no valid agreement exists" for the purposes of growing or selling cannabis, thus eliminating the Contract Clause claim; that the plaintiffs had no cognizable legal interest in cannabis products,

1     thus eliminating the due process claim; and that in the absence of an underlying

2     constitutional violation, the plaintiff likewise had no *Monell* claim. *Id.* at \*4-5.

3              **4.**       **Ninth Circuit Courts Do Not Apply the Dormant Commerce**

4                   **Clause to Local Cannabis Regulations.**

5        More recently, in *Peridot Tree v. City of Sacramento*, the district court for the

6     Eastern District of California abstained from the same question posed by this case,

7     namely whether the Dormant Commerce Clause applies to local cannabis regulations.

8     *Peridot Tree, Inc. v. City of Sacramento*, No. 2:22-cv-00289-KJM-DB, 2022 U.S. Dist.

9     LEXIS 190046, at \*2 (E.D. Cal. Oct. 17, 2022).  Mr. Gay is a plaintiff in that case, and

10    counsel for Plaintiffs here is also counsel for the Plaintiffs in *Peridot Tree*.  *Id.* at \*1.  As

11    relevant here, one of the reasons presented by the court for abstention was that the

12    purposes of the Dormant Commerce Clause – to preserve national markets for goods and

13    services – did not apply to a market that the federal government had deemed to be

14    illegal.  *Id.* at \*21.  The court found it "difficult to see what constitutional right a person

15    could have to participate freely in illegal interstate marijuana markets."  *Id.*  Thus, the

16    court found that "the nature of Peridot and Gay's claim . . . rests on shaky constitutional

17    grounds."  *Id.*  The court also abstained because Mr. Gay could not credibly request a

18    federal court to exercise its legal or equitable powers to allow him to commit a federal

19    crime. *Id.*

20        The foregoing authorities make clear that courts in the Ninth Circuit do not apply

21    the protections of federal law, including the Dormant Commerce Clause, to cannabis

22    retailers and growers.  Plaintiffs have not cited, and cannot cite, a single case from the

23    Ninth Circuit or a court within the Ninth Circuit in which the Dormant Commerce

24    Clause has been applied to the benefit of a cannabis manufacturer, distributor, or retailer.

25    For that reason, the Court must dismiss the Complaint as a matter of law pursuant to

26    Rule 12(b)(6) of the Federal Rules of Civil Procedure.

27

28

**B.**   **The City's Social Equity Program Does Not Exclude Out-of-State Applicants or Otherwise Burden Interstate Commerce.**

Even if the Dormant Commerce Clause were applied here, the City's Social Equity Program would not violate it.  The Dormant Commerce Clause guards against economic protectionism or discrimination against out-of-state economic interests.  *Rocky Mt. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013).  According to the Ninth Circuit:

> If a statute discriminates against out-of-state entities on its face, in its purpose, or in its practical effect, it is unconstitutional unless it "serves a legitimate local purpose, and this purpose could not be served as well by available nondiscriminatory means." Absent discrimination, we will uphold the law "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."

*Id.* at 1087-88 (citing *Maine v. Taylor*, 477 U.S. 131, 138 (1986), and *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970)); *accord Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 399-400 (9th Cir. 2015).

The SEIA requirements do not discriminate against out-of-state residents. None of the requirements are expressly limited to California residents.  To the contrary, each of the requirements were formulated in an open-ended fashion such that persons living outside of California may be verified as SEIAs.  The City's requirements are therefore unlike the requirements that were found to violate the Dormant Commerce Clause in the recent cannabis cases cited by Plaintiffs in their application for a TRO.  *See Finch v. Treto*, No. 22 C 1508, 2022 U.S. Dist. LEXIS 103222, at *6 (N.D. Ill. June 9, 2022); *Lowe v. City of Detroit*, 544 F. Supp. 3d 804, 808 (E.D. Mich. 2021); *Toigo v. Dep't of Health & Senior Servs.*, 549 F. Supp. 3d 985, 991 (W.D. Mo. 2021); *NPG, LLC v. City of Portland*, No. 2:20-cv-00208-NT, 2020 U.S. Dist. LEXIS 146958, at *3 (D. Me. Aug. 14, 2020).

**California Cannabis Arrest or Conviction.**  The Social Equity Program requires that an SEIA have a qualifying "California Cannabis Arrest or Conviction" that is "an arrest or conviction in California for any crime under the laws of the State of California or the United States relating to the sale, possession, use, manufacture, or cultivation of Cannabis that occurred prior to November 8, 2016."  (LAMC 104.20(b)(1)(ii)(3).) This requirement is plainly not limited to California residents.  Indeed, an out-of-state resident may have incurred a California arrest or conviction while visiting or traveling through the state.  Alternatively, a former California resident may have incurred a California arrest or conviction before moving out of the state.

**Low-Income.**  The Social Equity Program requires that an SEIA be "Low-Income," meaning that they meet the "low-income thresholds established in the annual U.S. Department of Housing and Urban Development (HUD) income limits based upon the Area Median Income (AMI) for Los Angeles County based on household size; and . . . [do] not have Assets in excess of [four times the Low-Income thresholds based on Household Size]."  (LAMC 104.20(b)(1)(ii)(1) [defining "Asset"], 104.20(b)(1)(ii)(5) [defining Low-Income].)  The Code contains no residency requirement at all.  In fact, by tying the definition of Low-Income to the area median income of Los Angeles County, the requirement is actually more forgiving and more inclusive to out-of-state residents who, on average, have a lower annual salaries and a lower cost of living than Los Angeles residents.  For example, the 2021 Low-Income HUD limit for a household of one person living in Los Angeles County, California, is $66,250 (RJN, Exh. B [ECF No. 14-2 at p. 63].), whereas the 2021 Low-Income HUD limit for a household of one person in Calhoun County, Michigan,[3] is $36,150 (*see* RJN, Exh. C [ECF No. 14-2 at p. 66.)— almost half as much.

---

[3] The records that Plaintiff Gay submitted to DCR in conjunction with his SEIA verification request show that he lives in Calhoun County, Michigan.  (*See* Gay Decl., Exh. 6 [ECF No. 5-1].)

**Disproportionately Impacted Area.**  The Social Equity Program requires that an SEIA have ten years of residency in a DIA, which are "Police Reporting Districts as established in the Expanded Social Equity Analysis, or as established using the same methodology and criteria in a similar analysis provided by an Applicant for an area outside of the City."  (LAMC 104.20(b)(1)(ii)(4).)  Once again, the Code contains no residency requirement.  Rather, the Code expressly contemplates DIAs "outside of the City," which include DIAs that are out of state.  *See*, *e.g.*, *Int'l Franchise Ass'n*, 803 F.3d at 400 (concluding a plaintiff failed to show that a local minimum wage ordinance facially discriminated against out-of-state entities or interstate commerce where the ordinance did not classify employers based on their location, the location of their employees, or the extent to which they participated in interstate commerce); *N.A. for the Advancement of Multijurisdiction Practice v. Berch*, 773 F.3d 1037, 1049 (9th Cir. 2014) (concluding a state law did not discriminate against out-of-state interests because "it requires the same of its citizens as it does citizens of other states").  The Code also does not limit a person to using a single DIA, or even their current place of residence to meet this requirement.

Similarly, the SEIA requirements do not "substantially burden" interstate commerce for several reasons.  *Bernstein v. Virgin Am., Inc.*, 277 F. Supp. 3d 1049, 1065 (N.D. Cal. 2017) (stating that a non-discriminatory law will only be struck down under the Dormant Commerce Clause if it places a "substantial burden" on interstate commerce, as opposed to a mere "incidental" one).  First, none of the SEIA requirements actually require a person to have ever lived in California, either currently or formerly. Second, the Code is flexible; it provides two alternative ways in which a person may be verified as an SEIA for the Lottery, *i.e.*, by having a California Cannabis Arrest or Conviction and being Low-Income, or, by having a California Cannabis Arrest or Conviction and have lived in a DIA for ten years.  Third, it is important to note that the SEIA requirements only apply to SEIAs, and not all Owners of an Applicant or Licensee.  (LAMC 104.20(a)(2)(i).)  Indeed, the Social Equity Program only requires

that an SEIA own a certain minimum percentage—not the entirety—of an Applicant or Licensee and, in this way, the Code specifically contemplates and accounts for the participation of out-of-state residents.  Thus, Plaintiffs are not prohibited from participating in the Social Equity Program; they can partner with an SEIA to participate in the P3RR2 Lottery and/or submit a PCN Application.

C.   **Plaintiffs Do Not Have Standing to Challenge the City's Social Equity Program.**

The Court must also deny Plaintiffs' application for a TRO because Plaintiffs do not have standing to challenge the City's Social Equity Program.  Standing is a fundamental prerequisite to obtaining any relief, equitable or otherwise, in federal courts.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The "irreducible constitutional minimum" for Article III standing requires any plaintiff to demonstrate he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Here, Mr. Gay would not be verified as a SEIA even if the purportedly unconstitutional aspects of the Verification Criteria were excised.  Specifically, Mr. Gay:  (1) failed to submit documentation showing a qualifying cannabis conviction (regardless of which state the conviction occurred in); (2) failed to submit documentation showing ten years' residence in a DIA (even if his area of residence were deemed a DIA); and (3) failed to submit evidence that he is "low-income" under federal HUD standards.

Thus, the "traceability" criterion of Article III standing cannot be met because the unchallenged provisions of the Social Equity Program would inflict the same "injury" on Mr. Gay by barring his verification.  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (requiring a "line of causation" between the defendant's action and the alleged harm).  Likewise, because Mr. Gay's verification would be denied even if the Court were to strike down the purportedly unconstitutional criteria, a favorable ruling

would not remedy Plaintiffs' alleged injury, which means the redressability criterion of Article III standing cannot be met as well.  *See Nuclear Info. & Res. Serv. v. Nuclear Reg. Comm'n*, 457 F.3d 941, 955 (9th Cir. 2006); *Orion Wine Imps.. LLC v. Appelsmith*, 837 F. App'x 585, 586 (9th Cir. 2021) (affirming dismissal of complaint where unchallenged provisions of California's Alcoholic Beverage Control Act would prohibit the plaintiff's proposed transaction).

### 1.    Mr. Gay Failed to Submit Sufficient Documentation of Any Qualifying Conviction, Regardless of Where It Occurred.

As to his conviction, Mr. Gay submitted two documents to support this criterion: an "ICHAT" Michigan Criminal History Record Information Criteria and a Motion and Order for Discharge from Probation.  (Killen Decl. ¶¶ 16(a)(i), (ii); Gay Decl., Exh. 2 [ECF 5-1].) The ICHAT document, however, does not appear to be an official government record. (*See* Gay Decl., Exh. 2.) Page 1 includes several express disclaimers discouraging reliance on the document.  (*Id.*)  The document also appears to be modified.  (*Id.*) Specifically, Mr. Gay appears to have inserted an unnumbered page between the pages numbered two and three. (*Id.*) The unnumbered page is the only page listing Mr. Gay's purported cannabis arrest or conviction.  (*Id.*)  The documentation submitted to evidence Mr. Gay's conviction is therefore insufficient because it is not an official government record, unclear, incomplete, or modified from the official government record.

The Motion and Order for Discharge from Probation is similarly deficient.  Based on this document, Mr. Gay was convicted under Michigan's Public Health Code section 333.7401.  (Killeen Decl. ¶ 16(a)(ii); Gay Decl., Exh. 1.)  This code section relates to both marijuana and synthetic equivalents.  The Centers for Disease Control and Prevention (CDC) reports that there are hundreds of different chemicals sold as synthetic marijuana.  Pursuant to California Health and Safety Code section 11357.5, synthetic marijuana is illegal in California and is not considered cannabis.  Therefore, it is unclear whether Mr. Gay's arrest or conviction is, in fact, cannabis-related.

## 2. Mr. Gay Failed to Fully Disclose His Assets and Income, Disqualifying Him as a Low-Income Applicant.

As to Mr. Gay's income, the City could not verify him as a low-income applicant because he failed to fully disclose his assets and income, and because his documentation is otherwise incomplete. (Killeen Decl. ¶ 16(b).) Mr. Gay's income documentation is incomplete because Mr. Gay did not disclose at least three material facts on his Asset Attestation Form. (*Id.* ¶ 16(b)(i), Exh. A.) The Asset Attestation Form states that the "submission of false or misleading information or the failure to disclose material facts may result in the denial of [a] Social Equity Individual Applicant eligibility verification request, or the subsequent denial of an application." (*Id.*) Schedule C of Mr. Gay's tax return, however, reveals that there are assets associated with his construction company, including vehicles, equipment, and/or tools, that are not disclosed on his Asset Attestation Form. (Killeen Decl. ¶ 16(b)(ii), Gay Decl, Exh. 3.) Moreover, Mr. Gay admits that he owns a 51% equity stake (51,000 shares) in Variscite, Inc. that was also not disclosed. (Gay Decl. ¶ 4.) Finally, Mr. Gay's litigation in other jurisdictions demonstrates he has business interests in entities other than Variscite, Inc., including Peridot Tree, Inc. and Variscite NY One, Inc., neither of which were disclosed. *See, e.g., Peridot Tree,* 2022 U.S. Dist. LEXIS 190046, at *2; *Variscite NY One, Inc. v. State of New York et al.*, No. 1:2022-cv-01013 (N.D.N.Y Nov. 10, 2022).

## 3. Mr. Gay Failed to Submit Sufficient Documentation of 10 Years' Residence Anywhere, Regardless of Whether that Residence was in a DIA.

As to the DIA residency requirement, Mr. Gay did not submit sufficient documentation for two reasons: First, Mr. Gay did not submit an analysis using the same methodology and criteria for an area outside of the City, as required under LAMC section 104.20(b)(1)(ii)(4). (Killeen Decl. ¶ 16(c)(i), Kernkamp Decl., Exh. 3 [ECF No. 5-5.) Although Mr. Gay submitted a document pertinent to this subject, it does not show the criteria used to determine eligible locations or the underlying methodology. (*Id.*)

The City would have accepted an analysis that demonstrated Battle Creek, Michigan qualifies as a DIA using the same methodology and criteria as used to determine DIAs in the City.  (Killeen Decl. ¶ 16(c)(i).)

Second, and more importantly, Mr. Gay also did not submit enough records to evidence 10 years of cumulative residency in any location.  (Killeen Decl. ¶ 16(c)(ii).)  Specifically, he submitted five records that evidence only five years of residency.  (*Id.*)  Mr. Gay also submitted an undated letter from Gail A.  Hardy purportedly evidencing Mr. Gay's residency.  (*Id.*; *see also* Gay Decl., Exh. 5.)  The City has never accepted declarations or attestations as proof of residency; thus, Gail A. Hardy's undated letter is not sufficient evidence of Mr. Gay's residency.  (Killeen Decl. ¶ 16(c)(ii).)  Therefore, even if Battle Creek, Michigan was a DIA, the City would not have verified Mr. Gay under this criterion because he did not submit evidence of 10 years of cumulative residency in that city.  (*Id.*)

Thus, Plaintiffs' injury is not directly traceable to any purportedly unconstitutional criteria, and even if it were, an order excising the purportedly unconstitutional aspects of those criteria would not redress Plaintiffs' injury.

## V.  ARGUMENT – THE COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION OVER THE INSTANT CASE.

In the alternative, the Court should abstain from this case for three reasons.  First, the Court should abstain pursuant to *Pullman*, to allow the state court to render a determination as to whether Mr. Gay's verification application was sufficient under the City's criteria.  Second, the Court should abstain pursuant to the general principles of federalism and comity articulated in *Peridot Tree*, a case brought by Plaintiff Gay in the federal district court for the Eastern District of California.  Third, abstention is warranted pursuant to the first-to-file rule, to allow the Ninth Circuit to render a determination on the *Peridot Tree* appeal and to avoid a potentially conflicting determination here.

1      **A.      The Court Should Abstain Pursuant to the *Pullman* Doctrine.**

2           The Court should abstain from this matter pursuant to the *Pullman* abstention

3    doctrine.  The Supreme Court held in *Railroad Comm'n of Texas v. Pullman Co.*, 312

4    U.S. 496 (1941) that federal district courts may abstain from adjudicating a federal

5    constitutional issue that "might be mooted or presented in a different posture by a state

6    court determination of pertinent state law."  *Allegheny Cnty. v. Frank Mashuda Co.*, 360

7    U.S. 185, 189 (1959).  Under the modern version of this doctrine, a district court may

8    abstain if (1) the case concerns "a sensitive area of social policy upon which the federal

9    courts ought not enter unless no alternative to its adjudication is open," (2) "a definite

10   ruling on the state issue would terminate the controversy," thus avoiding constitutional

11   litigation, and (3) "the proper resolution of the possible determinative issue of state law

12   is uncertain."  *Courthouse News Serv. v. Planet*, 750 F.3d 776, 783–84 (9th Cir. 2014),

13   quoting *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003).

14          Abstention is particularly warranted in sensitive land use and site-licensing cases

15   like this one.  In *C-Y Development*, for instance, after the defendant city denied the

16   plaintiff's land development application, the plaintiff brought suit, alleging that the city's

17   enforcement of a local land use ordinance was a prejudicial abuse of discretion and

18   constituted an unconstitutional taking of its property without compensation.  *C-Y Dev.*

19   *Co. v. City of Redlands*, 703 F.2d 375, 376 (9th Cir. 1983).  The Ninth Circuit

20   determined that resolution of the state law issues could save the court from "prematurely

21   and unnecessarily" resolving difficult federal constitutional questions by first

22   invalidating the ordinance or issuing a writ directing the city to give the plaintiff its

23   development permits.  *Id.* at 380.  Such potentially avoidable constitutional questions

24   included whether a taking had occurred and what constitutional remedy or remedies

25   were appropriate, namely: (1) invalidation of the ordinance only; (2) compensation for

26   the permanent taking; or (3) invalidation of the ordinance and damages for the

27   temporary taking of the property.  *Id.*  (citing law review articles and cases advocating

28   for different takings remedies).  The Ninth Circuit explained that reaching these

questions would require the court "to break[ ] new ground in constitutional law," as "[t]he Supreme Court ha[d] not yet decided whether the Constitution requires a state court to make available money damages to redress state regulatory efforts amounting to a taking of property." *Id.* at 379-80.

The court held that *Pullman* abstention was warranted because resolution of the state law issues could dispose of all of the federal constitutional questions, or at least "substantially reduce the contours of such adjudication and place it in a different posture." *Id.* at 380. Namely, if the state were to grant the plaintiff its desired land use permits, the district court would only need to determine the proper constitutional remedy for the alleged temporary — as opposed to permanent — taking, *i.e.*, the third option of the aforementioned potential takings remedies. *Id.*

The Court should abstain here for similar reasons. The first criterion for abstention is met because storefront retail licensing of a cannabis business is a type of land use issue that is routinely found to be sensitive by courts in the Ninth Circuit. *Santa Fe Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 840 (9th Cir. 1979) (holding that the first *Pullman* criterion is met in an action where a city imposed a development moratorium on a developer and downzoned its extensive property to open space); *Isthmus Landowners Assoc. v. State of California*, 601 F.2d 1087, 1091 (9th Cir. 1979) ("[I]t is settled that land use planning is a sensitive area of social policy for purposes of the Pullman doctrine."). The second criterion is met because a state court ruling on a traditional mandamus action would resolve the issue of Plaintiffs' standing. That is, if the state court determines that the City properly denied Mr. Gay's verification application because he did not meet the basic Verification Criteria (even if the purportedly unconstitutional requirements were not enforced), then Mr. Gay would have no standing to pursue the instant case, thus resolving it entirely without the need to consider the difficult constitutional questions posed herein. *See* Cal Code Civ. Proc. § 1085 (traditional mandamus relief); *see also* Section IV.C, *supra*. The third criterion is met because, as the court in *C-Y Development* pointed out, the question of whether a city

has properly withheld or issued a permit or license is inherently a fact-intensive inquiry that defies easy prediction for the purposes of Pullman abstention, despite the obvious insufficiency of Mr. Gay's verification application.  *See C-Y Development*, 703 F.2d 380, citing *Sederquist v. City of Tiburon*, 590 F.2d 278, 282-83 (9th Cir. 1978) ("Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and statewide land use laws and regulations applicable to the area in question.  We do not claim the ability to predict whether a state court would decide that the city here abused its discretion in declining to give [C–Y] permission to [proceed with its residential development plans].").  For those reasons, the Court should abstain from this case pursuant to the *Pullman* doctrine.

**B.     The Court Should Abstain Pursuant to the Principles of Federalism and Comity Articulated in *Peridot Tree*.**

The Court should also abstain from this case pursuant to the general principles of federalism and comity described in *Peridot Tree*.  *See Peridot Tree, Inc. v. City of Sacramento*, No. 2:22-cv-00289-KJM-DB, 2022 U.S. Dist. LEXIS 190046, at *2 (E.D. Cal. Oct. 17, 2022).  As previously noted, Mr. Gay is a plaintiff in that case, and counsel for Plaintiffs here is also counsel for the plaintiffs in *Peridot Tree*. *Id.* at *1.  In that case, the district court for the Eastern District of California abstained from the same question posed by this case, namely whether the Dormant Commerce Clause applies to local cannabis regulations.  *Id.* at *31.  This Court should follow the approach taken by *Peridot Tree* and abstain here.

In *Peridot Tree*, Mr. Gay challenged the "CORE" program promulgated by the City of Sacramento to "address the negative impact of disproportionate enforcement of cannabis-related regulation" and reduce "barriers of entry and participation" in the cannabis industry to those who "have been negatively impacted by the disproportionate law enforcement of cannabis related crimes." *Id.* at *2.  Because the CORE program included a Sacramento residency requirement, Mr. Gay contended that it violated the

Dormant Commerce Clause. *Id.* at *4. Sacramento moved to dismiss, and the court asked the parties to brief whether it should abstain from exercising jurisdiction at all. *Id.*

In a remarkably well-researched opinion, the court in *Peridot Tree* decided to abstain from the matter entirely to allow the plaintiffs to pursue their relief in state court. *Id.* at *31. Although it recognized that "this case does not fit neatly within any single abstention doctrine," the court noted that those doctrines "are not 'rigid pigeonholes into which federal courts must try to fit cases.'" *Id.* at *9, citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12, n.9 (1987). Based on an extensive review of the law and the "murky" history of federal cannabis enforcement, the court presented three reasons for abstention, all of which apply here. *Id.* at *23.

**Conflict of State/Federal Interests.** The first reason for abstention was that all abstention doctrines rest on a concern about the conflicts between federal and state policies, and that the question posed by Mr. Gay involved a serious conflict between those policies. *Id.* at *12. Specifically, the court observed that the state and local governments in California were trailblazing a path forward on cannabis legalization while the federal government sent "mixed messages" on enforcement, maintaining prohibition on one hand while discouraging federal prosecutors from pursuing cannabis cases on the other. *Id.* at *16. Accordingly, "the ambiguity of federal policy" was "one reason to doubt the salience of the federal interests at stake in this case." *Id.* at *21.

**Illegality of Interstate Markets.** The second reason for abstention was that the purposes of the Dormant Commerce Clause – to preserve national markets for goods and services – did not apply to a market that the federal government had deemed to be illegal. *Id.* at *21. The court found it "difficult to see what constitutional right a person could have to participate freely in illegal interstate marijuana markets." *Id.* Thus, the district court found that "the nature of Peridot and Gay's claim . . . rests on shaky constitutional grounds," especially compared to California's "clear and substantial interests" in socially equitable regulation of the cannabis market. *Id.* This, too, constituted a "circumstance[] [that] makes a strong case for abstention." *Id.* at *24.

32

**Unclean Hands.**  The third reason for abstention was that Mr. Gay could not credibly request a federal court to exercise its legal or equitable powers to allow him to commit a federal crime.  *Id.*  In doing so, the court relied on a series of cases in which federal courts refused to award damages or equitable relief to sellers of cannabis, some of which applied the "unclean hands" defense to equitable relief.  *Id.* at *25.  Although the court noted that the "unclean hands" defense "has its faults" when raised by a local government that itself authorizes cannabis sales, it found that the Supreme Court had already rendered a determination on its applicability and held that "federal district courts cannot employ their equitable powers if doing so would effectively revisit decisions Congress had already made when it passed the Controlled Substances Act."  *Id.* at *26, citing *United States v. Oakland Cannabis Buyers' Co-Op*, 532 U.S. 483, 497-98 (2001).

*Peridot Tree* is applicable here, and it supports the City's motion in the alternative for abstention.  It is doubly applicable because that case and the instant case are brought by the same underlying Plaintiff:  Kenneth Gay.

### C.        The Court Should Abstain Pursuant to the First-to-File Rule.

Lastly, the Court should abstain from exercising jurisdiction over this case pursuant to the first-to-file rule.  The first-to-file rule is a principle of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.  *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir.1982); *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (under the first-to-file rule, a district court may transfer, stay, or dismiss an action where a similar case has previously been filed in another federal court); *Certified Dry Cleaning Network, L.L. C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir.2007) ("The first-to-file rule, while not frequently discussed by this Court, is a 'well-established doctrine that encourages comity among federal courts of equal rank'"), quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 791 n. 8 (6th Cir.2004).  "The doctrine is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.  Comity

works most efficiently where previously-filed litigation is brought promptly to the attention of the district court, and the court defers." *Church of Scientology of California v. United States Dep't. of the Army*, 611 F.2d 738, 750 (9th Cir.1980) (internal citations omitted); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir.1997) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."), quoting *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir.1985).

Three factors are relevant in deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade*, 946 F.2d at 625–26; *Guthy–Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 270 (C.D.Cal.1998). Exceptions to the rule can be made in cases of bad faith, anticipatory suit, or forum shopping, or where the balance of convenience favors the later-filed action. *Greenline Industries, Inc. v. Agri–Process Innovations, Inc.*, No. C 08–2438 CW, 2008 WL 2951743, *3 (N.D.Cal. July 28, 2008), quoting *Alltrade*, 946 F.2d at 628; *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D.Cal.1994)).

Courts in the Ninth Circuit have adopted a flexible approach in evaluating the similarity of the parties and issues. *PETA, Inc. v. Beyond the Frame, Ltd.*, No. CV 10-07576 MMM SSX, 2011 WL 686158, at *1 (C.D. Cal. Feb. 16, 2011); *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*, 544 F.Supp.2d 949, 959 n. 6 (N.D.Cal.2008) ("[E]xact identity is not required to satisfy the first-to-file rule. The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters" (citations omitted)). Indeed, the first-to-file rule does not require identical parties or issues, so long as the actions are substantially similar or involve substantial overlap. *Walker v. Progressive Casualty Ins. Co.*, No. C03–656R, 2003 WL 21056704, *2 (W.D.Wash. May 9, 2003) ("Exact parallelism between the two actions need not exist; it is enough if the parties and

issues in the two actions are 'substantially similar'"), quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir.1989)); *Centocor, Inc. v. MedImmune, Inc.*, No. C 02–03252, 2002 WL 31465299, *3 (N.D. Cal. Oct.22, 2002) (stating that the first-to-file rule does not require identical issues or parties "so long as the actions involve closely related questions or common subject matter"); *Ward*, 158 F.R.D. at 649 ("While Follett's original and amended complaints do not assert identical grounds for Follett's denial of royalty payments, that fact does not destroy the ultimate similarity between the Illinois action and the California action"); *see also Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir.1997) ("Syntek argues that the 'first-to-file' rule does not apply in this case because neither the issues nor the parties are identical to those in the Original Action.  The rule does not, however, require that cases be identical.  The crucial inquiry is one of 'substantial overlap'"); *Ed Tobergte Associates, Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F.Supp.2d 1197, 1198 (D.Kan.1999)  ("The principle underlying the [first-to-file] rule is to avoid duplicative litigation, but it is not a hard and fast rule. Substantial similarity in the parties and issues is sufficient to invoke application of the rule" (internal citation omitted)); *Excel Music, Inc. v. Simone*, No. 95–3626, 1996 WL 5708, *5 (E.D.La. Jan.5, 1996) ("The issues need not be identical to allow one court to decide the action, but there must be 'substantial overlap between the two suits'"); *Texas Instruments Inc. v. Micron Semiconductor, Inc.*, 815 F.Supp. 994, 997 (E.D.Tex.1993) ("As to the first inquiry, all that need be present [for the first-to-file rule to apply] is that the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap.  The cases need not be identical to be duplicative").

　　　　All three criteria under the first-to-file rule are easily met here, especially under the Ninth Circuit's flexible approach.  The first criterion simply requires that another case be filed first.  In this instance, that criterion is easily met by the *Peridot Tree* matter, which was filed and disposed of before the instant case was filed.  The second criterion, the similarity of the parties, is met because Mr. Gay is a plaintiff in both the *Peridot Tree* case and the instant case.  Although the City of Los Angeles is obviously

not the City of Sacramento, the difference for the purposes of the Court's legal analysis is minimal, and under the flexible approach endorsed by the Ninth Circuit, it is inconsequential. *See Intersearch Worldwide, Ltd.*, 544 F.Supp.2d at 959 n. 6 ("[E]xact identity is not required to satisfy the first-to-file rule. The rule is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one or both matters."). The third criterion, namely the similarity of the issues, is likewise easily met. The legal issues in *Peridot Tree* and in the instant case are virtually identical. Specifically: does the Dormant Commerce Clause apply to local cannabis regulations? Can federal courts enforce the Dormant Commerce Clause in the context of illegal markets? The answer to those questions, now taken up by the Ninth Circuit Court of Appeals, may be dispositive as to both cases. Each of the three criteria for abstention under the first-to-file rule is therefore met here.

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the Court must dismiss the Complaint in its entirety, or abstain from exercising jurisdiction over it.

Dated: Jan. 6, 2023

Respectfully submitted,
**HYDEE FELDSTEIN SOTO,** City Attorney
**TAYLOR C. WAGNIERE,** Deputy City Attorney
**KABIR CHOPRA,** Deputy City Attorney
**PATRICK HAGAN,** Deputy City Attorney

By: _____
        **PATRICK HAGAN**
Attorneys for Defendant CITY OF LOS ANGELES,
which includes the LOS ANGELES DEPARTMENT OF
CANNABIS REGULATION; AND MICHELLE
GARAKIAN, in her official capacity