HYDEE FELDSTEIN SOTO, City Attorney
TAYLOR C. WAGNIERE, Deputy City Attorney (SBN 293379)
PATRICK HAGAN, Deputy City Attorney (SBN 266237)
KABIR CHOPRA, Deputy City Attorney (SBN 285383)
221 N. Figueroa St., Suite 1245
Los Angeles, California 90012
Telephone: (408) 616-0621
patrick.hagan@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES, which includes
LOS ANGELES DEPARTMENT OF CANNABIS
REGULATION; AND MICHELLE GARAKIAN,
in her official capacity

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARISCITE, INC. AND KENNETH GAY,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY OF LOS ANGELES; LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN,<br><br>        Defendants, | Case No.: 2:22-cv-08685-SPG-SK<br><br>Hon. Sherilyn Peace Garnett<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS/STRIKE THE FIRST AMENDED COMPLAINT [F.R.C.P. 12(b)(6), 12(f)]; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT**<br><br>[Proposed] Order and Request for Judicial Notice submitted concurrently<br><br>**Date:     Aug. 28, 2024**<br>**Time:    1:30 p.m.**<br>**Location:  5C** |

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL:

PLEASE TAKE NOTICE THAT on August 28, 2024, at 1:30 p.m., before the Honorable Sherilyn Peace Garnett, in Courtroom 5C of the United States Courthouse for the Central District of California, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant City of Los Angeles, which includes the Los Angeles Department of Cannabis Regulation and Michelle Garakian, in her official capacity (collectively, "City") will and hereby does move to dismiss the First Amended Complaint filed by Plaintiffs Variscite, Inc. and Kenneth Gay ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In the alternative, the City moves to strike Plaintiffs' claim for damages pursuant to Federal Rule of Civil Procedure 12(f) as untenable under the Controlled Substances Act ("CSA"). The grounds for the City's motion to dismiss are that the Dormant Commerce Clause does not apply to the federally-illegal cannabis market and even if the Dormant Commerce Clause applied, the City's licensing scheme would not violate it. The grounds for the City's motion in the alternative to strike is that damages calculated in the form of lost profits are prohibited by the CSA. This motion is based on this Notice of Motion and Motion, the memorandum of points and authorities and request for judicial notice filed herewith, the pleadings and papers on file herein, and upon such other evidence or argument as may be presented to the Court at the time of the hearing. Pursuant to Local Rule 7-3, the parties met and conferred regarding this motion on May 21, 2024.

Dated: May 29, 2024

Respectfully submitted,
**HYDEE FELDSTEIN SOTO,** City Attorney
**TAYLOR C. WAGNIERE,** Deputy City Attorney
**KABIR CHOPRA,** Deputy City Attorney
**PATRICK HAGAN,** Deputy City Attorney

By: _____
   **PATRICK HAGAN**
Attorneys for Defendant CITY OF LOS ANGELES, which includes the LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN, in her official capacity

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................. 9

II.     LEGAL BACKGROUND ...................................................... 10

    A.    The Inception and Failure of the "War on Drugs." ...................... 10

    B.    Cannabis Legalization in California. ............................................ 11

    C.    The Cole Memorandum and the Rohrabacher-Farr Amendment. .............. 11

III.    SUMMARY OF ALLEGATIONS ............................................ 12

    A.    The City's Social Equity Program and Licensing Requirements. .............. 12

    B.    Mr. Gay's Rejected SEIA Application. ...................................... 13

    C.    Plaintiffs' Claims. .......................................................... 14

    D.    Other Unsuccessful Cases Filed by Mr. Gay and/or Variscite Affiliates. ... 14

IV.     LEGAL STANDARD. .......................................................... 16

V.      ARGUMENT: THE COURT MUST DISMISS THE FAC ................................. 16

    A.    The Dormant Commerce Clause Does Not Apply to the Federally-Illegal Cannabis Market. ........................................................... 16

        1.    District Courts in the Ninth Circuit Have Expressly Held that the Dormant Commerce Clause Does Not Apply to Cannabis. ................ 17

        2.    The First Circuit's Decision in *Northeast Patients Group* is Inapplicable and Unpersuasive. .......................................... 18

        3.    *Brinkmeyer* and *Peridot Tree WA Inc.* are Consistent with Ninth Circuit Decisions Routinely Denying the Protections of Federal Law to Plaintiffs Violating the CSA. ...................................... 21

    B.    Even if the Dormant Commerce Clause Applied, the City's Social Equity Program Would Not Violate it. ........................................ 22

        1.    Maintaining a Closed Licensing System is the Only Way to Comply with Federal Law and Policy Prohibiting Interstate Cannabis Activity. ................................................................ 23

        2.    It Does Not Offend the Dormant Commerce Clause to Discriminate Against Illegal Interstate Commerce. .................................. 25

C.    Leave to Amend Should be Denied. ............................................. 26

VI.   ARGUMENT – THE COURT SHOULD STRIKE PLAINTIFFS' DEMAND FOR DAMAGES ............................................................................. 27

VII.  CONCLUSION .................................................................................. 27

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

**Federal Cases**

4

*Bonin v. Calderon*

5
59 F.3d 815 (9th Cir.1995) ............................................................ 26

6
*Brinkmeyer v. Washington State Liquor & Cannabis Bd.*

7
(W.D. Wash. Feb. 7, 2023) No. C20-5661 BHS, 2023 WL 1798173............. 11, 17, 23

8
*California v. Zook*

9
336 U.S. 725, 69 S.Ct. 841, 93 L.Ed. 1005 (1949)...................................... 26

10
*Cleaver v. Hughes Aircraft Co.*

11
172 F.3d 55 (9th Cir. 1999) ........................................................... 27

12
*Edwards v. Nat'l Milk Producers Fed'n, No. C*

13
11-04766 JSW, 2014 WL 4643639 (N.D. Cal. Sept. 16, 2014)................................ 25

14
*Fantasy, Inc. v. Fogerty*

15
984 F.2d 1524 (9th Cir.1993) ......................................................... 27

16
*Gen. Motors Corp. v. Tracy*

17
519 U.S. 278 (1997).................................................................... 16

18
*Gonzales v. Raich*

19
545 U.S. 1, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005) ................................ 10, 16, 20, 24

20
*Harden v. Hillman*

21
993 F.3d 465 (6th Cir. 2021) ......................................................... 10

22
*Jensen v. Maryland Cannabis Admin.*

23
No. CV 24-0273-BAH, 2024 WL 811479 (D. Md. Feb. 27, 2024) ........................... 15

24
*Kiva Health Brands LLC v. Kiva Brands Inc.*

25
402 F. Supp. 3d 877 (N.D. Cal. 2019)................................................. 21

26
*Maine v. Taylor*

27
477 U.S. 131, 106 S. Ct. 2440, 91 L. Ed. 2d 110 (1986) ............................. 23

28

5

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*
   45 F.4th 542 (1st Cir. 2022)................................................................ 17, 18, 19

*New State Ice Co. v. Liebmann*
   285 U.S. 262, 52 S.Ct. 371, 76 L.Ed. 747 (1932)........................................ 21

*New York State Cannabis Control Bd.*
   No. 123CV01599AMNCFH, 2024 WL 406490 (N.D.N.Y. Feb. 2, 2024)................ 15

*Peridot Tree WA Inc. v. Washington State Liquor & Cannabis Control Bd.*
   (W.D. Wash. Jan. 5, 2024) No. 3:23-CV-06111-TMC, 2024 WL 69733 ........... *passim*

*Peridot Tree, Inc. v. City of Sacramento*
   94 F.4th 916 (9th Cir. 2024) ..................................................................... 11

*Pic–A–State PA, Inc. v. Commonwealth of Pennsylvania*
   42 F.3d 175 (9th Cir. 1994) .................................................................. 25, 26

*Polk v. Gontmakher*
   (W.D. Wash. May 21, 2020) No. 2:18-CV-01434-RAJ, 2020 WL 2572536 ............. 27

*Polk v. Gontmakher*
   No. 2:18-CV-01434-RAJ, 2019 WL 4058970, at *2 (W.D. Wash. Aug. 28, 2019)... 22

*Posados v. Nat'l City Bank*
   296 U.S. 497 (1936).............................................................................. 20

*Shuman v. Kaplan*
   58 F.4th 404 (9th Cir. 2023) ..................................................................... 21

*Somers v. Apple, Inc.*
   729 F.3d 953 (9th Cir. 2013) .................................................................... 16

*Staffin v. Cnty. of Shasta,*
   No. 2:13-CV-00315 JAM, 2013 WL 1896812, at *5 (E.D. Cal. May 6, 2013).......... 22

*Susilo v. Wells Fargo Bank, N.A.*
   796 F. Supp. 2d 1177 (C.D. Cal. 2011) ....................................................... 27

*Tapley v. Lockwood Green Eng'rs*
   502 F.2d 559 (8th Cir.1974) ..................................................................... 27

NOTICE OF MOTION AND MOTION TO DISMISS/STRIKE FAC

*Tracy v. USAA Cas. Ins. Co.*
  No. CIV. 11-00487 LEK, 2012 WL 928186 (D. Haw. Mar. 16, 2012) ...................... 22

*United States v. Bannister*
  786 F. Supp. 2d 617 (E.D.N.Y. 2011) ......................................................... 10

*United States v. Borden Co.*
  308 U.S. 188 (1938)................................................................................. 20

*United States v. Janczewski*
  560 F.Supp.3d 1064 (E.D. Mich 2021) ...................................................... 10

*United States v. Taylor*
  No. 1:14-CR-67, 2014 WL 12676320 (W.D. Mich. Sept. 8, 2014)........................... 10

*United States v. Tote*
  No. 1:14-MJ-00212-SAB, 2015 WL 3732010 (E.D. Cal. June 12, 2015)................. 20

*Variscite NY One, Inc. v. New York*
  640 F. Supp. 3d 232 (N.D.N.Y. 2022)......................................................... 15

**State Cases**

*Wheeler v. App. Div. of Superior Ct. of Los Angeles Cnty.*
  72 Cal. App. 5th 824 (2021) ..................................................................... 11

**Federal Statutes**

18 U.S.C. § 1956.............................................................................. 24, 26

18 U.S.C. § 1957.............................................................................. 24, 26

18 U.S.C. § 1960................................................................................. 24

21 U.S.C. § 812(a) .............................................................................. 10

21 U.S.C. § 812(c) .............................................................................. 16

21 U.S.C. § 841 ................................................................................. 16

21 U.S.C. § 841(a)(1)........................................................................... 10

21 U.S.C. § 844................................................................................. 20

1

21 U.S.C. § 844(a) ............................................................................................ 10

2

28 U.S.C. § 2201 ............................................................................................... 14

3

31 U.S.C. § 5318(g) .......................................................................................... 24

4

42 U.S.C. § 1983 ............................................................................................... 14

5

6

Pub. L. No. 117-328, § 531, 136 Stat. 4459 (2022) ................................ 11, 18

7

**State Statutes**

8

Cal. Bus. & Prof. Code § 26000(b) ................................................................ 19

9

**Federal Rules**

10

Fed. R. Civ. P. 12(b)(6) ............................................................................. 16, 22

11

12

Fed. R. Civ. P. 12(f) ........................................................................................... 9

13

**Local Ordinances**

14

Los Angeles, Cal. Municipal Code § 104.00 .................................................. 12

15

16

Los Angeles, Cal. Municipal Code § 104.02(a) ........................................ 12, 19

17

Los Angeles, Cal. Municipal Code § 104.06(b)(2) ......................................... 12

18

Los Angeles, Cal. Municipal Code § 104.06(c) .............................................. 12

19

Los Angeles, Cal. Municipal Code § 104.20(b)(1)(i) ..................................... 13

20

21

Los Angeles, Cal. Municipal Code § 104.20(b)(1)(ii)(3) ............................... 13

22

Los Angeles, Cal. Municipal Code § 104.20(b)(1)(ii)(4) ............................... 13

23

Los Angeles, Cal. Municipal Code § 104.20(b)(1)(ii)(5) ............................... 13

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO DISMISS/STRIKE FAC

## I.     **INTRODUCTION**

This case arises from the regulation of commercial cannabis licenses by the City of Los Angeles, which includes the Los Angeles Department of Cannabis Regulation ("DCR") and Michelle Garakian, in her official capacity (collectively, "City"). To rectify the effects of the failed war on drugs, the City currently reserves certain cannabis licenses for individuals who have a California cannabis arrest or conviction and have either a low income or live in an area that has been disproportionately impacted by the drug war. Plaintiffs Variscite, Inc. and Kenneth Gay, a Michigan resident ("Plaintiffs"), claim the City's criteria violate the Dormant Commerce Clause because they purportedly favor in-state applicants. The Court should dismiss Plaintiffs' First Amended Complaint in its entirety, without leave to amend, for two reasons.

**First**, the Dormant Commerce Clause does not apply to the federally-illegal interstate cannabis market. No court within the Ninth Circuit has ever applied the Dormant Commerce Clause to cannabis. In fact, since this case was filed, two district court cases from within the Ninth Circuit (*Brinkmeyer* and *Peridot Tree WA*, *see* Section V.A.1) have held that the Dormant Commerce Clause does not apply to cannabis.

**Second**, even if the Dormant Commerce Clause applied, the City's laws would not violate it. A local law that purportedly discriminates against out-of-staters will be upheld if it is necessary to achieve an important governmental purpose. Here, the Department of Justice has articulated an official policy to prosecute state cannabis licensing programs if they do not limit interstate cannabis activity. Limiting the City's licensing scheme to California residents, as Mr. Gay accuses the City of doing, is the only way to comply with that official policy. In any event, the City's licensing scheme does not run afoul of the Dormant Commerce Clause because it burdens commerce that federal law already prohibits – namely, interstate commercial cannabis activity.

**In the alternative**, the Court should strike Plaintiffs' newly-asserted claim for damages pursuant to FRCP 12(f) as untenable under the Controlled Substances Act, regardless of whether the Dormant Commerce Clause applies.

II.     **LEGAL BACKGROUND**

    A.     **The Inception and Failure of the "War on Drugs."**

        Cannabis has been used recreationally and medicinally since before the founding of the United States. *United States v. Taylor*, No. 1:14-CR-67, 2014 WL 12676320, at *1–2 (W.D. Mich. Sept. 8, 2014). The federal government did not significantly regulate cannabis until 1937, when accounts of its narcotic effects prompted Congress to pass the Marihuana Tax Act, which curtailed the industry through onerous administrative requirements and taxes. *Gonzales v. Raich*, 545 U.S. 1, 11, 125 S. Ct. 2195, 2202, 162 L. Ed. 2d 1 (2005).

        In 1970, following a decade of social upheaval and President Richard Nixon's declaration of a "War on Drugs," Congress passed the Controlled Substances Act ("CSA"). *Id.* Under the CSA, it is unlawful to manufacture, distribute, dispense, or possess any controlled substance except as expressly authorized. 21 U.S.C. §§ 841(a)(1), (844)(a). The CSA established five schedules of controlled substances, with Schedule 1 being the most dangerous and restricted, and Schedule 5 being the least dangerous and restricted. 21 U.S.C. § 812(a). Cannabis was designated as a Schedule 1 drug, where it remains alongside heroin and LSD. *Raich*, 545 U.S. at 14.

        "[S]everal administrations and more than a trillion dollars later, the 'War on Drugs' has utterly failed to curb addiction or its adjacent harms." *United States v. Janczewski*, 560 F.Supp.3d 1064, 1065 (E.D. Mich 2021). Some evidence suggests that "it was never intended to do so." *Id.* "Whatever motives one ascribes to the initial decision to declare drug abuse 'public enemy number one,' we must concede that its principal results have been intensified anti-Black biases, decimated communities, and a society in which human beings are imprisoned at unprecedented rates." *Id.*, citing *Harden v. Hillman*, 993 F.3d 465, 483 (6th Cir. 2021) (describing the ways in which the media campaign surrounding the War on Drugs crystalized racial stereotypes); *United States v. Bannister*, 786 F. Supp. 2d 617, 653-55 (E.D.N.Y. 2011) (describing the consequences of mass incarceration on families and communities).

### B. Cannabis Legalization in California.

In 1996, California was one of the first states to legalize medical cannabis. *Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 922 (9th Cir. 2024). Twenty years later, it was among the first group of states to authorize recreational cannabis use as well. *Id.* at 921; *see* Control, Regulate and Tax Adult Use of Marijuana Act (Prop. 64), 2016 Cal. Legis. Serv. Prop. 64 (West). Subsequently, California enacted the Medicinal and Adult-Use Cannabis Regulation and Safety Act ("MAUCRSA") to establish a system of control and regulate the sale of both medicinal and recreational cannabis. *Wheeler v. App. Div. of Superior Ct. of Los Angeles Cnty.*, 72 Cal. App. 5th 824, 832 (2021). MAUCRSA also provided for state licensing of cannabis businesses and requires local approval in order to obtain a state license. *Id.*

### C. The Cole Memorandum and the Rohrabacher-Farr Amendment.

In August 2013, Deputy Attorney General James M. Cole issued a memorandum directing U.S. Attorneys to exercise prosecutorial discretion when dealing with cannabis activity that is conducted safely within a state where it has been legalized and focus their efforts instead on, among other things, preventing "the diversion of marijuana from states where it is legal under state law in some form to other states." *Brinkmeyer v. Washington State Liquor & Cannabis Bd.*, No. C20-5661 BHS, 2023 WL 1798173, at *2 (W.D. Wash. Feb. 7, 2023); *see also* City's Req. for Jud. Notice, Exhs. A, B.

Additionally, in each fiscal year since 2015, Congress has passed a spending rider (the "Rohrabacher-Farr Amendment") that prohibits the Department of Justice from using any allocated funds to "prevent" the states that have legalized medical cannabis "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Pub. L. No. 117-328, § 531, 136 Stat. 4459 (2022); *see also Brinkmeyer*, 2023 WL 1798173 at *2.

Cannabis thus resides in a state of tension between state and federal law. Commercial cannabis activity is federally illegal but tolerated by federal prosecutors so long as it does not cross state lines.

### III.    SUMMARY OF ALLEGATIONS

####     A.    The City's Social Equity Program and Licensing Requirements.

In 2017, following the passage of Prop 64, the City enacted its first recreational cannabis licensing laws. *See* City's Req. for Jud. Not., Exh. C (L.A. Mun. Code ["LAMC"] §§ 104.00; 104.02(a)). The City's licensing program includes a social equity component, referred to as the "Social Equity Program," that is intended to promote equitable ownership of cannabis retail stores, promote employment opportunities in the cannabis industry, to decrease disparities for marginalized communities, and to address the disproportionate impact on such communities of the prior criminalization of cannabis. (FAC ¶ 18, citing ECF No. 5-3 [Expanded Social Equity Analysis] at 5.) Pursuant to the Social Equity Program, the storefront retail, delivery, and cultivation application processes are exclusively available until January 1, 2025, to individuals who have been verified by the City as a Social Equity Individual Applicant ("SEIA"). (FAC ¶¶ 14, 15); LAMC §§ 104.06(b)(2); 104.06(c). After January 1, 2025, all commercial cannabis application types will be available to all applicants, regardless of whether they meet the SEIA requirements. (*See id.*) Thus, to participate in the Social Equity Program, an individual must request verification from the City as a SEIA. (*See id.*)

The City's licensing program awards storefront retail cannabis business licenses ("Licenses") within city limits through various processes. (FAC ¶¶ 12-13.) The two processes that are relevant here are: (1) the Phase 3 Retail Round 2 Lottery ("P3RR2 Lottery"); and (2) the Public Convenience and Necessity ("PCN") process. (*Id.* ¶ 13.) To participate in either process, an applicant must be at least 51% owned by an individual who has been verified as a "Social Equity Individual Applicant" ("SEIA") pursuant to the City's Social Equity Program. (*Id.* ¶¶ 15.)

To be verified as a SEIA, an individual must submit evidence demonstrating satisfaction of two of the following three criteria ("Verification Criteria"): (a) a qualifying "California Cannabis Arrest or Conviction"; and (b)(1) 10 years of residency in a "Disproportionately Impacted Area," or (b)(2) "Low Income" status in the 2020 or

2021 calendar year. (*Id.* ¶ 15); *see also* LAMC § 104.20(b)(1)(i). The Los Angeles Municipal Code defines "California Cannabis Arrest or Conviction" to mean "an arrest or conviction in California for any crime under the laws of the State of California or the United States relating to the sale, possession, use, manufacture, or cultivation of Cannabis that occurred prior to November 8, 2016." (FAC ¶ 16); *see also* LAMC § 104.20(b)(1)(ii)(3). The Los Angeles Municipal Code defines "Disproportionately Impacted Area" ("DIA") to mean "Police Reporting Districts [("PRD")] as established in the Expanded Social Equity Analysis, or as established using the same methodology and criteria in a similar analysis provided by an Applicant for an area outside of the City." (FAC ¶ 17); *see also* LAMC § 104.20(b)(1)(ii)(4). Finally, the Los Angeles Municipal Code defines "Low Income" to mean that both of the following are met by the SEIA applicant: "(1) the [SEIA] meets the low-income threshold established in the annual U.S. Department of Housing and Urban Development (HUD) income limit based upon the Area Median Income (AMI) for Los Angeles County based on household size; and (2) the [SEIA] does not have Assets in excess of the amount as defined in this subsection." LAMC § 104.20(b)(1)(ii)(5).

The City accepted individual applications for SEIA verification from May 26, 2022, to July 25, 2022 and announced whether applicants were verified as SEIA by a website post on October 24, 2022. (FAC ¶ 20.) That same day, the City opened the registration period for the P3RR2 Lottery. (*Id.* ¶ 21.) The registration period for the P3RR2 Lottery remained open until November 23, 2022. (*Id.*) On approximately November 28, 2022, the City announced that the P3RR2 Lottery would take place on December 8, 2022. (*Id.* ¶ 22.)

### B.   Mr. Gay's Rejected SEIA Application.

Plaintiff Variscite, Inc. ("Variscite") is a corporation organized under the laws of the State of California, and Plaintiff Kenneth Gay is a citizen of Michigan (FAC ¶¶ 1, 2). Gay applied to be verified as a SEIA for Variscite to participate in the P3RR2 Lottery. (*Id.* ¶ 24). To show that he qualified as a SEIA, Gay allegedly submitted documentation

to the City showing: (1) that he was convicted of a cannabis crime under Michigan law; (2) that he lived for more than ten years in an area the State of Michigan identified as a DIA; and (3) that he qualified as "Low Income." (*Id.*) The FAC alleges that Plaintiff Gay "satisfie[d] all three requirements" to be verified as a SEIA, "except that the relevant events occurred in Michigan rather than California." (*Id.*)

On October 24, 2022, Plaintiffs learned that the City did not verify Gay as a SEIA. (*Id.* ¶ 25.) Because Gay was not verified, Variscite was unable to participate in the December 8, 2022, P3RR2 Lottery. (*Id.* ¶ 26.) Plaintiffs intend to apply for a license under the City's PCN process when the application opens. (*Id.* ¶ 34.)

### C.   Plaintiffs' Claims.

On November 30, 2022, Plaintiffs filed a complaint against the City, asserting the following causes of action: (1) 42 U.S.C. § 1983, alleging that the P3RR2 Lottery violates the Dormant Commerce Clause of the United States Constitution, (Comp. ¶¶ 35–39); (2) a Declaratory Judgment pursuant to 28 U.S.C. § 2201, requesting the Court declare that the P3RR2 Lottery violates the Dormant Commerce Clause of the United States Constitution, (Comp. ¶¶ 40–42); (3) 42 U.S.C. § 1983, alleging that the PCN Process violates the Dormant Commerce Clause of the United States Constitution, (Comp. ¶¶ 43–47); and (4) a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, requesting that the Court declare that the PCN Process violates the Dormant Commerce Clause of the United States Constitution, (Comp. ¶¶ 48–50). The Complaint sought injunctive relief, declaratory relief, fees, and costs. (*See generally* Comp.) The newly-filed FAC adds a claim for damages and a demand for a jury trial. (*See generally* FAC.) In essence, Plaintiffs assert that the Verification Criteria underlying both the P3RR2 Lottery and PCN process violates the Dormant Commerce Clause because the criteria discriminate against non-California applicants. (FAC ¶¶ 14, 30.)

### D.   Other Unsuccessful Cases Filed by Mr. Gay and/or Variscite Affiliates.

Mr. Gay and/or Variscite and its affiliates, including counsel/owner Jeffrey Jensen and/or his wife Justyna, have filed at least four other cases in New York, California,

---

14

Maryland, and Washington, all based on the Dormant Commerce Clause. Sam Reisman, *A Cannabis Constitutional Fight, And The Calif. Atty Behind It*, Law 360 (Apr. 19, 2024), https://www.law360.com/articles/ 1827023/a-cannabis-constitutional-fight-and-the-calif-atty-behind-it. They initially met with some success in New York, albeit where the district court presumed, without analysis, the applicability of the Dormant Commerce Clause. *Variscite NY One, Inc. v. New York*, 640 F. Supp. 3d 232, 244 (N.D.N.Y. 2022). However, district courts within the Second Circuit appear to have reconsidered their position, and now reject the application of the Dormant Commerce Clause to New York's cannabis licensing program. *Variscite NY Four, LLC v. New York State Cannabis Control Bd.*, No. 123CV01599AMNCFH, 2024 WL 406490, at *12 (N.D.N.Y. Feb. 2, 2024) ("This Court is persuaded by the reasoning of the courts in *Brinkmeyer* and *Peridot Tree WA Inc.*, and Judge Gelpi's dissent in *Northeast Patients Group*, and therefore finds that Plaintiffs are unlikely to succeed on the merits of their dormant Commerce Clause challenge.")

District courts within the Ninth Circuit and the Fourth Circuit have likewise rejected claims by Mr. Gay and the Jensens as a matter of law. *See Peridot Tree WA Inc. v. Washington State Liquor & Cannabis Control Bd.* (W.D. Wash. Jan. 5, 2024) No. 3:23-CV-06111-TMC, 2024 WL 69733 at *9 (denying motion for preliminary injunction by Mr. Gay and rejecting application of Dormant Commerce Clause to Washington's recreational cannabis licensing program); *Jensen v. Maryland Cannabis Admin.*, No. CV 24-0273-BAH, 2024 WL 811479, at *11 (D. Md. Feb. 27, 2024) ("[T]his Court now joins with those courts across the country that have found that the dormant Commerce Clause does not apply to state recreational cannabis laws.").

Currently, appeals filed by Mr. Gay and/or Variscite/Jensen affiliates are pending before the Second, Fourth, and Ninth Circuits. *See Variscite NY Four LLC et al. v. New York State Cannabis Control Bd.*, Second Circuit app. no. 24-384; *Peridot Tree WA Inc. v. Washington State Liquor and Cannabis Control Board et al.*, Ninth Circuit app. no. 24-209; *Jensen v. Maryland Cannabis Administration*, Fourth Circuit app. no. 24-1216.

## IV.   LEGAL STANDARD.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint where it "fail[s] to state a claim upon which relief can be granted." "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

## V.   ARGUMENT: THE COURT MUST DISMISS THE FAC

The Court must dismiss the FAC for two reasons: **First**, the Dormant Commerce Clause does not apply to the federally-illegal cannabis market. **Second**, even if the Dormant Commerce Clause applied, the City's licensing scheme would not violate it, because it serves the important governmental purpose of avoiding federal prosecution for promoting interstate commercial cannabis activity.

### A.   The Dormant Commerce Clause Does Not Apply to the Federally-Illegal Cannabis Market.

The Court should dismiss the FAC in its entirety because the Dormant Commerce Clause does not apply to the federally-illegal recreational cannabis market, or to state/local cannabis regulations. The purpose of the Dormant Commerce Clause is to preserve competitive interstate markets, but by enacting the Controlled Substances Act ("CSA"), Congress has outlawed the interstate market for cannabis. *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997) (regarding the purpose of the Dormant Commerce Clause); 21 U.S.C. §§ 841, 812(c)(Schedule 1)(c)(10); *Gonzales v. Raich*, 545 U.S. 1, 22 (2005). The Dormant Commerce Clause is therefore inapplicable, depriving Plaintiffs of a "cognizable legal theory" in support of their FAC. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

No court within the Ninth Circuit has ever applied the Dormant Commerce Clause to the federally-illegal cannabis market. In fact, since the instant case was filed, two district courts within the Ninth Circuit have expressly held that the Dormant Commerce Clause does not apply to local cannabis regulations.

1

         **1.**      **District Courts in the Ninth Circuit Have Expressly Held that the**

2

                   **Dormant Commerce Clause Does Not Apply to Cannabis.**

3          The first decision within the Ninth Circuit to hold that the Dormant Commerce

4 Clause does not apply to the federally-illegal cannabis market was *Brinkmeyer v.*

5 *Washington State Liquor & Cannabis Bd.* (W.D. Wash. Feb. 7, 2023) No. C20-5661

6 BHS, 2023 WL 1798173, appeal dismissed, No. 23-35162, 2023 WL 3884102 (9th Cir.

7 Apr. 11, 2023). In *Brinkmeyer*, the district court for the Western District of Washington

8 held that the Dormant Commerce Clause did not apply to Washington's six-month

9 minimum residency requirement for cannabis licenses, and granted summary judgment

10 in favor of the defendants on that basis. *Id.* at *10-11. The court reasoned that citizens

11 have neither "a federal statutory or constitutional property right to cannabis while it

12 remains federally illegal," nor "a legal interest in participating in a federally illegal

13 market." *Id.* It further explained that although the Dormant Commerce Clause "serves an

14 important purpose—limiting economic protectionism by states," maintaining a free

15 national market is not in the public interest "'when Congress has explicitly acted to

16 make the market in question illegal.'" *Id.* at *11 (quoting *Ne. Patients Grp. v. United*

17 *Cannabis Patients & Caregivers of Me.*, 45 F.4th 542, 559 (1st Cir. 2022) (Gelpi, J.

18 dissenting)). The court concluded that "[t]he dormant Commerce Clause does not apply

19 to federally illegal markets, including Washington's cannabis market and, thus, it does

20 not apply to Washington's residency requirements." *Id.*

21          The second decision within the Ninth Circuit to reject the Dormant Commerce

22 Clause theory was *Peridot Tree WA Inc. v. Washington State Liquor & Cannabis*

23 *Control Bd.* (W.D. Wash. Jan. 5, 2024) No. 3:23-CV-06111-TMC, 2024 WL 69733.  In

24 *Peridot Tree WA Inc.*, the court denied a motion for a preliminary injunction brought by

25 Mr. Gay and a Variscite affiliate challenging the same residency requirement addressed

26 in *Brinkmeyer*. *Peridot Tree WA Inc.*, 2024 WL 69733 at *12. Citing *Brinkmeyer*, the

27 court in *Peridot Tree WA Inc.* held that the plaintiffs were unlikely to succeed on the

28

merits of their claim because the Dormant Commerce Clause could not apply to Washington's cannabis licensing scheme. *Id.* at *8-9.

Both of these cases are applicable here and constitute persuasive authority. Washington's Social Equity Program is similar to the City's Social Equity Program, and both programs have the same three core requirements: a "disproportionally impacted area" requirement, a cannabis arrest or conviction requirement, and a low income requirement. *See id.* at *3. Moreover, Mr. Gay – who is a plaintiff in both cases – has leveled the same accusations and claims against both Washington and Los Angeles based on a Dormant Commerce Clause theory. *See id.* Even if the circumstances of the cases were different, their holdings would still be universally applicable to any local recreational cannabis regulation that purportedly discriminates against out-of-staters, because courts in the Ninth Circuit do not apply the Dormant Commerce Clause to the federally-illegal cannabis market. *Peridot Tree WA Inc.*, 2024 WL 69733 at *9.

## 2.    The First Circuit's Decision in *Northeast Patients Group* is Inapplicable and Unpersuasive.

To reach their holdings in *Brinkmeyer* and *Peridot Tree WA Inc.*, the district courts easily distinguished the only circuit court decision to address the question of whether the Dormant Commerce Clause applies to the federally-illegal cannabis market: *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542 (1st Cir. 2022). In that case, decided only a few months before the instant case was filed, the First Circuit affirmed the district court's ruling that Maine's residency requirements for medical cannabis licenses violated the Dormant Commerce Clause by discriminating against out-of-staters. The holding in *Ne Patients Group* relies heavily on the Rohrabacher-Farr Amendment, a legislative spending rider that prohibits the DOJ from using any allocated funds to "prevent" the states that have legalized medical cannabis "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *See Ne. Patients Grp.*, 45 F.4th at 553; *see also* Pub. L. No. 117-328, § 531, 136 Stat. 4459 (2022).

Essentially, the First Circuit determined that Congress substantially legalized the interstate cannabis market through the Rohrabacher-Farr Amendment. *Ne. Patients Grp.*, 45 F.4th at 553 ("Thus, whatever the circumstances may be with respect to other goods that Congress has deemed contraband, this is not a case in which Congress may be understood to have criminalized a national market with no expectation that an interstate market would continue to operate."). On that basis, the First Circuit held that the Dormant Commerce Clause applied to Maine's medical cannabis market, and that Maine's residency requirement for cannabis licenses was unconstitutional because it discriminated against out-of-staters. *Id.*

The courts in *Brinkmeyer* and *Peridot Tree WA* easily distinguished and persuasively rebutted the First Circuit's holding. They raised two main points:

***First***, both courts found *Northeast Patients Group* to be inapplicable insofar as it applied only to medical cannabis, not recreational cannabis. *Brinkmeyer*, 2023 WL 1798173 at *12 ("[T]he Rohrabacher-Farr Amendment applies only to medical cannabis markets . . . [i]t is unclear what its application would or should be in Washington, where the recreational and medical markets are consolidated."); *Peridot Tree WA Inc.*, 2024 WL 69733 at *9 ("To the extent that Northeast Patients Group hinges on the impact of the Rohrabacher-Farr Amendment, this case is distinguishable; that amendment applies only to medical cannabis . . . .").

The distinction is important because, even if the First Circuit's reasoning were taken at face value, the Rohrabacher-Farr Amendment would evidence only Congress's intent to "substantially legalize" the *medical* cannabis market. It has zero impact on the *recreational* cannabis market, which remains 100% illegal under the CSA and thus beyond the protection of the Dormant Commerce Clause. The City's licensing program here, like Washington's, has consolidated the recreational and medical cannabis markets. *See* LAMC 104.02(a) (authorizing medical and nonmedical licenses); *see also* Cal. Bus. & Prof. Code § 26000(b). The Rohrabacher-Farr Amendment and *Northeast Patients Group* are therefore irrelevant to the Dormant Commerce Clause analysis here.

***Second***, and more importantly, both cases roundly rejected the presumption that the Rohrabacher-Farr Amendment substantially legalized any interstate cannabis market. The *Brinkmeyer* court found that "[t]here is no such thing" as "substantial legalization" of cannabis. *Brinkmeyer*, 2023 WL 1798173 at \*12. Cannabis is either legal under federal law, or it is not. It would only be legal here if the Rohrabacher-Farr Amendment expressly repealed the CSA, which it does not. *See id.*; *see also United States v. Tote*, No. 1:14-MJ-00212-SAB, 2015 WL 3732010, at \*2 (E.D. Cal. June 12, 2015) ("The Rohrabacher–Farr Amendment concerns funding-it did not repeal federal laws criminalizing the possession of marijuana, 21 U.S.C. § 844. If Congress intended to legalize the possession of marijuana under federal law, they could have repealed or amended the Controlled Substances Act to accomplish that goal in a straightforward manner."); *see also Posados v. Nat'l City Bank*, 296 U.S. 497, 503 (1936) (""[R]epeals by implication are not favored."); *United States v. Borden Co.*, 308 U.S. 188, 198 (1938) ("The intention of the legislature to repeal must be clear and manifest."). Cannabis is therefore illegal under the CSA, and by not repealing the CSA, Congress has manifested an intent to maintain its prohibition on interstate commercial cannabis activity.

Moreover, nothing in the Rohrbacher-Farr Amendment suggested that Congress intended to promote *interstate* commercial cannabis activity, even if we assume counterfactually that Congress intended to amend the CSA to decriminalize medical cannabis. To the contrary, the amendment's supporters in Congress expressly confirmed their intent to promote the role of states as *isolated* laboratories of democracy:

> Now, the Federal Government has a legitimate authority to protect neighboring States by forbidding transport across State lines, which this amendment protects; but, at the same time, it protects the right of a State's citizens to make this decision within their own boundaries.

114 Cong. Rec. 3749 (2015-2016) (Statement of Rep. Tom McClintock).

Representative McClintock went on to expressly cite Justice Brandeis's famous quote regarding the role of states as isolated laboratories, which Justice O'Connor also cited in her dissent in *Raich*. *See id.*; *see also Raich*, 545 U.S. at 42 ("One of

federalism's chief virtues, of course, is that it promotes innovation by allowing for the possibility that 'a single courageous State may, if its citizens choose, serve as a laboratory; and try novel social and economic experiments without risk to the rest of the country.'") (O'Connor, J., dissenting) quoting *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting).

*Northeast Patients Group* is therefore incorrectly decided and distinguishable as set forth in *Brinkmeyer* and *Peridot Tree WA Inc.*

> ### 3.   *Brinkmeyer* and *Peridot Tree WA Inc.* are Consistent with Ninth Circuit Decisions Routinely Denying the Protections of Federal Law to Plaintiffs Violating the CSA.

The holdings of *Brinkmeyer* and *Peridot Tree WA* are entirely consistent with the treatment of contraband, especially cannabis, by federal courts in the Ninth Circuit. These courts have routinely declined to apply federal law or equitable principles to the benefit of cannabis sellers like Plaintiffs.

For example, in *Shulman v. Kaplan*, the Ninth Circuit held that the plaintiffs could not assert Racketeer Influenced and Corrupt Organizations Act ("RICO Act") claims against a former business partner based on purported property interests in cannabis where it was "clearly illegal under federal law." *Shulman v. Kaplan*, 58 F.4th 404, 411 (9th Cir. 2023). Indeed, when the confronted with the question, the Ninth Circuit compared the plaintiffs' claim to a heroin dealer suing in federal court to recover a stolen heroin shipment. *Id.*

Likewise, in *Kiva Health Brands LLC v. Kiva Brands, Inc.*, the federal district court for the Northern District of California refused to recognize a "first use" trademark defense and counterclaim asserted by the cannabis retailer on the grounds that cannabis is illegal under federal law. *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 890-91 (N.D. Cal. 2019) ("To hold that KBI's prior use of the KIVA mark on a product that is illegal under federal law is a legitimate defense to KHB's federal trademark would put the government in the anomalous position of extending the benefits

of trademark protection to a seller based upon actions the seller took in violation of that government's own laws.") (internal quotations omitted).

Courts within the Ninth Circuit are also reluctant to enforce cannabis-related contracts, because they are illegal under federal law. *Polk v. Gontmakher*, No. 2:18-CV-01434-RAJ, 2019 WL 4058970, at *2 (W.D. Wash. Aug. 28, 2019) (refusing to enforce a partnership agreement among cannabis growers and sellers on the grounds that "[c]ontracts that violate a federal statute are illegal and unenforceable."); *Tracy v. USAA Cas. Ins. Co.*, No. CIV. 11-00487 LEK, 2012 WL 928186, at *1 (D. Haw. Mar. 16, 2012) (rejecting contract claim for insurance reimbursement for loss of cannabis plants). Similarly, courts in this circuit do not recognize due process and/or civil rights claims predicated on property rights to cannabis. *Staffin v. Cnty. of Shasta*, No. 2:13-CV-00315 JAM, 2013 WL 1896812, at *5 (E.D. Cal. May 6, 2013) (dismissing 1983 claims for due process violations arising from cannabis seizure).

The foregoing authorities make clear that courts in the Ninth Circuit do not apply the protections of federal law, including the Dormant Commerce Clause, to cannabis retailers and growers. Plaintiffs have not cited, and cannot cite, a single case from the Ninth Circuit or a court within the Ninth Circuit in which the Dormant Commerce Clause has been applied to allow a cannabis seller to violate the CSA, or otherwise benefit from his or her violation of the CSA. For that reason, the Court must dismiss the FAC as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.      Even if the Dormant Commerce Clause Applied, the City's Social Equity Program Would Not Violate it.**

Even if the Dormant Commerce Clause applied, the City's licensing scheme would not violate it. A local law that discriminates against out-of-staters will be upheld if it is necessary to achieve an important governmental purpose. Here, the Department of Justice has declared an intent to prosecute local cannabis licensing programs if they do not limit interstate cannabis activity. Limiting the City's licensing scheme to California

residents only, as Mr. Gay accuses the City of doing, is the only way to comply with federal policy. In any event, the City's licensing scheme does not run afoul of the Dormant Commerce Clause because it burdens commerce that federal law already prohibits – namely, interstate cannabis activity.

> **1.** **Maintaining a Closed Licensing System is the Only Way to Comply with Federal Law and Policy Prohibiting Interstate Cannabis Activity.**

Not every discriminatory law will violate the Dormant Commerce Clause. Sometimes, a law must discriminate against out-of-staters to serve an important governmental purpose. In *Maine v. Taylor*, for instance, the Supreme Court upheld a Maine law that outlawed the importing of live baitfish into the state. *Maine v. Taylor*, 477 U.S. 131, 131, 106 S. Ct. 2440, 2443, 91 L. Ed. 2d 110 (1986). The law was enacted to protect Maine's "unique and fragile fisheries" from "significant threats" from parasites that were prevalent in out-of-state fish, but not common in Maine. *Id.* at 141. Because there were no nondiscriminatory alternatives to banning out-of-state fish, the Supreme Court found that the law served legitimate local purposes, and did not violate the Dormant Commerce Clause. *Id.* at 151.

Here, federal law and policy effectively require the City to discourage or prohibit the interstate cannabis trade, and maintain a closed licensing system. As set forth in Section II.C., the 2013 Cole Memorandum directed U.S. Attorneys to exercise prosecutorial discretion when dealing with cannabis activity that is conducted safely within a state where it has been legalized and focus their efforts instead on, among other things, preventing "the diversion of marijuana from states where it is legal under state law in some form to other states" and preventing "revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels." *Brinkmeyer*, 2023 WL 1798173; *see also* City's Req. for Jud. Notice, Exh. A.

More importantly, the Cole Memorandum provides that "[i]f state enforcement efforts are not sufficiently robust to protect against the harms set forth above, the federal

government may seek to challenge the regulatory structure itself in addition to continuing to bring individual enforcement actions, including criminal prosecutions, focused on those harms." *Id.* at 3. Thus, by failing to support the same goals espoused by the Cole Memorandum – namely by ensuring that licensed cannabis activity stays within California's borders – the City's own regulatory structure could be challenged by the DOJ. Although Attorney General Jeff Sessions rescinded the memorandum, the Department of Justice has continued its practice of prosecutorial discretion in states that have legalized cannabis. *Peridot Tree WA Inc.*, 2024 WL 69733 at *1.

Cities like Los Angeles are therefore stuck between a rock and a hard place. On one hand, Mr. Gay, a resident of Michigan, is seeking through his ownership in Variscite to obtain revenue for cannabis sales occurring in California. On the other hand, however, federal law criminalizes the handling of proceeds derived from cannabis sales in violation of the CSA. *See* 18 U.S.C. §§ 1956, 1957. In fact, a 2014 follow-up memorandum entitled "Guidance Regarding Marijuana Related Financial Crimes" from Deputy Attorney General Cole expressly confirms that the transfer of cannabis proceeds could trigger prosecution, even without an underlying cannabis conviction:

> The provisions of the money laundering statutes, the unlicensed money remitter statute, and the Bank Secrecy Act (BSA) remain in effect with respect to marijuana-related conduct. Financial transactions involving proceeds generated by marijuana-related conduct can form the basis for prosecution under the money laundering statutes (18 U.S.C. §§ 1956 and 1957), the unlicensed money transmitter statute (18 U.S.C. § 1960), and the BSA. Sections 1956 and 1957 of Title 18 make it a criminal offense to engage in certain financial and monetary transactions with the proceeds of a "specified unlawful activity," including proceeds from marijuana-related violations of the CSA. Transactions by or through a money-transmitting business involving funds "derived from" marijuana-related conduct can also serve as a predicate for prosecution under 18 U.S.C. § 1960. Additionally, financial institutions that conduct transactions with money generated by marijuana-related conduct could also face criminal liability under the BSA for, among other things, failing to identify or report financial transactions that involved the proceeds of marijuana-related violations of the CSA. See, e.g., 31 U.S.C. § 5318(g). Notably for these purposes, prosecution under these offenses based on transactions involving marijuana proceeds does not require an underlying marijuana-related conviction under federal or state law.

(City's RJN, Exh. B.)

The 2013 and 2014 Cole Memoranda and subsequent policies embraced by the Department of Justice emphasize that interstate commercial cannabis activity – including the transfer of cannabis proceeds across state lines – may authorize federal prosecutors to bring individual enforcement actions against the City's licensees or even the City itself. Limiting the City's licensing scheme to California residents only, as Mr. Gay accuses the City of doing, is therefore the only way to comply with federal law and policy. There is no non-discriminatory means of accomplishing the same goal. Accordingly, this is one of the rare cases in which a (purportedly) discriminatory law must be upheld under a Dormant Commerce Clause analysis.

### 2. It Does Not Offend the Dormant Commerce Clause to Discriminate Against Illegal Interstate Commerce.

The City's cannabis licensing program would also not violate the Dormant Commerce Clause because it (purportedly) burdens commerce that is already illegal under federal law. "Where Congress has proscribed certain interstate commerce, Congress has determined that commerce is not in the national interest." *Pic–A–State PA, Inc. v. Commonwealth of Pennsylvania*, 42 F.3d 175, 179 (9th Cir. 1994). If Congress has made an item of commerce illegal, "it does not offend the purpose of the Commerce Clause for states to discriminate or burden that commerce." *Id.*; *see also Edwards v. Nat'l Milk Producers Fed'n*, No. C 11-04766 JSW, 2014 WL 4643639, at *7 (N.D. Cal. Sept. 16, 2014).

In *Pic–A–State*, Pennsylvania's legislature outlawed the purchase and sale of out-of-state lottery tickets. *Pic–A–State*, 42 F.3d at 177. The plaintiff, Pic–A–State, engaged in the business of out-of-state lottery tickets and challenged the law as invalid under the Commerce Clause. *Id.* After the trial court rendered a decision in Pic–A–State's favor, Congress enacted legislation that directly prohibited the cross-border sale of lottery tickets, which was the same conduct criminalized by the Pennsylvania law. *Id.* at 177–78. On review, the Third Circuit reversed the trial court's decision in Pic–A–State's favor, applying the rule that "in those instances where Commerce Clause challenges to

state regulation have been mounted in an area where Congress has made it a crime to conduct such commerce, the courts have conducted only a two-fold inquiry, asking (1) whether federal law precludes all state legislation in that area, and (2) if state regulation is not precluded, whether the state statute conflicts with the federal provision." *Id.* at 179–80.

Likewise, in *California v. Zook*, cited by the Third Circuit in *Pic–A–State*, the Supreme Court addressed a Commerce Clause challenge to a California statute that made it a crime to sell or arrange transportation over the state's public highways with carriers that did not hold a permit from the Interstate Commerce Commission. *California v. Zook*, 336 U.S. 725, 726, 69 S.Ct. 841, 845, 93 L.Ed. 1005 (1949). The federal Motor Carrier Act prohibited similar conduct with regard to carriers operating in interstate commerce. *Id.* at 726–27 & n. 2. The Supreme Court found that the state law did not violate the Commerce Clause insofar as it did not conflict with the scope of the federal law. *Id.*

Here, Mr. Gay, a resident of Michigan, accuses the City of prohibiting him from engaging in commercial recreational cannabis activity in Los Angeles. Federal law and policy already prohibit Mr. Gay from engaging in commercial recreational cannabis activity in Los Angeles, or in any other city in the United States. Federal law likewise prohibits Mr. Gay from obtaining any proceeds from his ownership in a California cannabis business in any event. *See* Section V.B.1, *supra*; *see also* 18 U.S.C. §§ 1956, 1957. Thus, if the Court takes Mr. Gay's accusations at face value, the City's licensing program only prohibits that which is already prohibited by federal law. It therefore does not offend the Dormant Commerce Clause.

## C.     Leave to Amend Should be Denied.

Following an order dismissing a complaint, a court may deny leave to amend after considering factors such as "bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995). Futility alone can justify a court's

refusal to grant leave to amend. *Cleaver v. Hughes Aircraft Co.*, 172 F.3d 55 (9th Cir. 1999). Here, any amendment would be futile because Plaintiffs cannot plead around the inapplicability of the Dormant Commerce Clause. The Court must therefore dismiss the FAC without leave to amend.

## VI.   ARGUMENT – THE COURT SHOULD STRIKE PLAINTIFFS' DEMAND FOR DAMAGES

In the alternative, the Court should strike Plaintiffs' newly-raised claim for damages. Under Rule 12(f), a court may strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." The court may also strike under Rule 12(f) a prayer for relief which is not available as a matter of law. *Tapley v. Lockwood Green Eng'rs*, 502 F.2d 559, 560 (8th Cir.1974); *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1196 (C.D. Cal. 2011). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994).

Plaintiffs' newly-raised claim for damages is not available as a matter of law. As set forth above, the CSA prohibits the growing, buying, and selling of cannabis. The FAC seeks damages for lost profits for selling cannabis. The Court cannot grant the relief requested, because it would be an award for illegal profits. *See Polk v. Gontmakher* (W.D. Wash. May 21, 2020) No. 2:18-CV-01434-RAJ, 2020 WL 2572536, at *2 ("The Court cannot fathom how ordering Defendants to turn over the future profits of a marijuana business would not require them to violate the CSA."). If the Court does not dismiss the FAC, it should nonetheless strike Plaintiffs' claim for damages pursuant to Rule 12(f).

## VII.   CONCLUSION

For the foregoing reasons, the Court must dismiss the FAC in its entirety without leave to amend, or strike Plaintiffs' newly-raised claim for damages.

Dated: May 29, 2024   Respectfully submitted,

**HYDEE FELDSTEIN SOTO,** City Attorney
**TAYLOR C. WAGNIERE,** Deputy City Attorney
**KABIR CHOPRA,** Deputy City Attorney
**PATRICK HAGAN,** Deputy City Attorney

By: _____

  **PATRICK HAGAN**

Attorneys for Defendant CITY OF LOS ANGELES,
which includes the LOS ANGELES DEPARTMENT OF
CANNABIS REGULATION; AND MICHELLE
GARAKIAN, in her official capacity