Jeffrey M. Jensen (SBN 262710)
  jeff@jensen2.com
JEFFREY M. JENSEN, PC
9903 Santa Monica Blvd., #890
Beverly Hills, CA 90212
Tel: (310) 909-7043

Christian Elias Kernkamp (SBN 314928)
  ck@kernkamplaw.com
KERNKAMP LAW, APC
1801 Century Park E 24 FL
Los Angeles, CA 90067
Tel: (213) 214-3030

Attorneys for Plaintiffs
Variscite, Inc. and Kenneth Gay

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIOFORNIA

| | |
|---|---|
| VARISCITE, INC. AND KENNETH GAY, | Case No. 2:22-cv-08685-SPG-SK |
| Plaintiffs, | Hon. Sherilyn Peace Garnett |
| v. | **PLAINTIFFS' NOTICE OF RECENT DEVELOPMENTS IN SUPPORT OF MOTION TO OPEN DISCOVERY ON THE LIMITED ISSUE OF DEFENDANTS' PERJURY; DECLARATION OF CHRISTIAN KERNKAMP** |
| CITY OF LOS ANGELES; LOS ANGELES DEPARTMENT OF CANNABIS REGULATION; AND MICHELLE GARAKIAN, | |
| Defendants. | |

# I. INTRODUCTION

Plaintiffs Variscite, Inc. and Kenneth Gay ("Plaintiffs") submit this Notice of Recent Developments in support of their Motion to Open Discovery on the Limited Issue of Defendants' Perjury. As shown below, recent events confirm that Defendants, and Jason Killeen, were willing to misrepresent the facts to the Court in order to defeat Plaintiffs' Application for TRO/Preliminary Injunction. This Notice, combined with Plaintiffs' Motion to Open Discovery, show that Plaintiffs have demonstrated good cause for asking the Court to open discovery into Defendant's knowledge at the time they made the misrepresentations discussed in the Motion to Open Discovery. Thus, the Court should open discovery on that limited issue.

In November 2022, Plaintiffs applied for a TRO/Preliminary Injunction. Defendants opposed that Application by arguing that Plaintiffs would not suffer any irreparable harm from being excluded from the Lottery because "additional retail licenses that are not tied to the [social equity] program will be available for adult use licenses in the future" and "[a]fter January 1, 2025, all commercial cannabis application types will be available to all applicants."

Plaintiffs never believed Defendants' assertion. At the hearing on Plaintiffs' Application for TRO/Preliminary Injunction, Plaintiffs' counsel argued there was no indication that Defendants would make retail cannabis Licenses available to non-Social Equity Applicants. Plaintiffs explained that the law Defendants cited provided only that Defendants cannot offer Licenses to non-social equity applicants before January 1, 2025. Nothing in the law required Defendants to offer Licenses to non-social equity applicants beginning January 1, 2025, and there was no reason to believe Defendants would offer such Licenses.[1]

---

[1] Plaintiffs also disputed Defendants' assertion that Defendants would hold a new social equity verification process and Lottery "shortly after" the disputed Lottery (Defendants did not hold such social equity verification process and Lottery); disputed Defendants' assertion that Mr. Gay could apply to be verified as a social

Notwithstanding Plaintiffs' arguments, the Court accepted Defendants' representations. The Court relied on Defendants' assertion in denying the TRO/preliminary injunction. The Court wrote in its Order:

> ***Plaintiffs have not shown that any harm caused by their inability to participate in today's Lottery is truly irreparable***. According to Defendants, Plaintiff Gay "may again request verification as a SEIA when the DCR opens a new verification window [and] ***DCR anticipates opening a new SEIA verification period shortly after the P3RR2 Lottery is concluded." (Killeen Decl. ¶ 25)***. Additionally, ***after January 1, 2025, all commercial cannabis application types will be available to all applicants, regardless of whether they meet the SEIA verification requirements. See (id. ¶ 5).*** Thus, the probability that Plaintiffs may in the future become eligible under the licensing provisions ***eviscerates the likelihood of irreparable harm***."

After the Court denied the TRO and Preliminary Injunction, Defendants held the Lottery on December 8, 2022.

After the Lottery, Defendants filed a motion to dismiss the case. In the Motion to Dismiss briefing, both sides again argued about whether Defendants would issue Licenses to non-social equity applicants. Defendants characterized Plaintiffs' position that Defendants would not issue non-social equity licenses as "mere conjecture."

In this Notice, Plaintiffs write to inform the Court of a recent development. On December 18, 2024 the Mayor signed into law amendments to the Municipal

---

equity applicant and participate in the Lottery coming "shortly after" the disputed Lottery (Defendants did not hold such social equity verification process and Lottery); and disputed Defendants' assertion that Plaintiffs had no irreparable harm if Defendants followed through with their promise to hold a non-social equity applicant Lottery in January 2025, because of the more than two-year wait is an irreparable harm.

Code that fulfilled Plaintiffs' predictions. The amended Municipal Code extends the period when Licenses are available exclusively to social equity applicants to December 31, 2025.

Defendant Department of Cannabis Regulations ("DCR"), and Mr. Killeen, proposed the amendments to the City Council and Mayor. The DCR's proposal states to the City Council and Mayor, "If you have any questions or concerns, please *contact Jason Killeen*, Assistant Executive Director[2] at (213) 978-0738."

The DCR's proposal explains that—notwithstanding Defendants' representations to the Court in 2022 and 2023 that they would issue non-social equity retail Licenses beginning January 1, 2025—Defendants never intended to issue non-social equity retail Licenses. Rather, Defendants intended to exhaust the supply of Licenses through social equity Lotteries, leaving no Licenses available for non-social equity applicants on January 1, 2025.

The DCR's proposal explains that they ask the City Council and Mayor to amend the Municipal Code and extend the period of social equity applicant exclusivity for Licenses because "Legal challenges to the City's Social Equity program have interfered with DCR's ability to administer additional lotteries *to exhausted retail capacity Citywide*. An extension of approximately one year of additional time, accompanied with the other revisions below, will provide DCR with the time and flexibility to complete another random selection process *to allocate the remaining retail licensing opportunities*."[3]

***In other words, exactly as Plaintiffs told the Court in 2022 before the Court denied the TRO and Preliminary Injunction and told the Court again in 2023 while there was still time to prevent issuance of Licenses, Defendants always***

---

[2] Mr. Killeen is now the Acting Executive Director.

[3] Proposal https://clkrep.lacity.org/onlinedocs/2020/20-0446-s2_rpt_DCR_10-23-24.pdf page 2.

*intended to exhaust the supply of Licenses by issuing them to social equity applicants during the exclusivity period leaving no Licenses for non-social equity applicants*.

### A.    2022: Plaintiffs' Application for TRO/Preliminary Injunction

In 2022, Plaintiffs' Application for TRO/Preliminary Injunction explained that Plaintiffs would suffer irreparable harm from exclusion from the Lottery—even in addition to the irreparable harm of having their constitutional rights violated—because it was likely that Defendants would not issue Licenses until "at least 2025, if they issue more Licenses at all." The more than two year delay in applying for a License would cause irreparable harm.

Plaintiffs wrote: "Second, aside from the constitutional violation, Plaintiffs will suffer the irreparable harm of being excluded from the Los Angeles storefront retail cannabis market unless the Court issues a preliminary injunction. ***After the Lottery and PCN Process, Defendants will not issue any Licenses until at least 2025, if they issue more Licenses at all***." (Mot. for TRO/PI (Dkt. #5) at 19 (emphasis added).)

### B.    Defendants' Opposition to TRO/Preliminary Injunction

Defendants' Opposition to the TRO/Preliminary Injunction stated that Plaintiffs would not be harmed by exclusion from the Lottery because Defendants would issue additional Licenses in the future and no Licenses will be subject to the social equity program beginning on January 1, 2025.

Defendants' Opposition states: "Plaintiffs are not irreparably harmed because, as they admit, *additional retail licenses that are not tied to the SEIA program will be available for adult use licenses in the future*. (TRO App. p. 18; *see also* Killeen Decl. ¶ 5.)" (Opp. to TRO/Preliminary Injunction [Dkt. #14] at 26 (emphasis added).)

Mr. Killeen's Declaration states in the cited paragraph: "The retail, delivery, and cultivation application processes are exclusively available to verified SEIAs

until January 1, 2025. Verified SEIAs also have access to educational programming and grant opportunities. ***After January 1, 2025, all commercial cannabis application types will be available to all applicants***." (Decl. Killeen [Dkt. 14-2] ¶ 5.)

### C. The Hearing on December 7, 2022

Plaintiffs' counsel argued at the hearing that there was no reason to believe Defendants would make Licenses available to non-social equity applicants such as Mr. Gay in the future. Counsel's outline for the hearing reminded counsel to argue:

1. There is no indication that Defendants will make retail cannabis Licenses available to non-Social Equity Applicants in 2025.

2. The law Defendants cite provides only that Defendants cannot offer Licenses to non-social equity applicants before 2025. Nothing in the law requires Defendants to offer new Licenses in 2025. There is no reason to think Defendants will offer Licenses in 2025.

Counsel does not have notes on what Defendants' counsel argued in opposition. Nevertheless, Defendants' counsel undoubtedly argued that Defendants would issue additional Licenses and the Licenses would not be limited to social equity applicants, as they argued in their briefs, as they argued in their Opposition brief and argued again in the briefing on their Motion to Dismiss.

### D. The Court's Order Denying Preliminary Injunction

The Court once again believed Defendants, and found Plaintiffs had no irreparable harm.

The Order denying the TRO/preliminary injunction states:

> Moreover, Plaintiffs have not shown that any harm caused by their inability to participate in today's Lottery is truly irreparable. According to Defendants, Plaintiff Gay "may again request verification as a SEIA when the DCR opens a new verification window [and] ***DCR anticipates opening a new SEIA verification period shortly after the***

*P3RR2 Lottery is concluded." (Killeen Decl. ¶ 25)*. Additionally, *after January 1, 2025, all commercial cannabis application types will be available to all applicants, regardless of whether they meet the SEIA verification requirements. See (id. ¶ 5).* Thus, the probability that Plaintiffs may in the future become eligible under the licensing provisions *eviscerates the likelihood of irreparable harm*."
(Order [Dkt. #22] at 24-25 (emphasis added).)

### E. 2023: Defendants' Motion to Dismiss Complaint

In 2023, when moving to dismiss the Complaint, Defendants again argued that all Licenses would be available to all applicants (not just social equity) beginning January 1, 2025.

Defendants' Motion to Dismiss states: "The storefront retail, delivery, and cultivation application processes are exclusively available to verified Social Equity Individual Applicants ("SEIAs") until January 1, 2025. (*Id.*) **After January 1, 2025, all commercial cannabis application types will be available to all applicants, regardless of whether they meet the SEIA requirements**." (Mot. to Dismiss [Dkt. #25] at 13 (citation to Decl. Killeen removed).)

### F. Plaintiffs' Opposition to Motion to Dismiss Complaint

Plaintiffs' Opposition to Defendants' Motion to Dismiss the Complaint predicted for the Court *exactly what happened in the following two years*. Plaintiffs told the Court Defendants would attempt to exhaust the available Licenses by issuing all of them to social equity applicants in the Lottery, leaving no licenses for non-social equity applicants.

*It bears noting, however, that Defendants claimed in the TRO briefing and again in the Motion to Dismiss that all cannabis application types will be available to all applicants, regardless of whether they meet the Equity Applicant requirements, after January 1, 2025. The Court relied on that statement in part in finding that*

*Plaintiffs suffered no irreparable harm from being unconstitutionally excluded from the Lottery for half of the total available licenses.*

*Defendants' statement that licenses will be available to all applicants beginning January 1, 2025 is misleading, as there is no present plan to issue any licenses after January 1, 2025. Licenses are not available unless the City Council amends the Municipal Code to provide for the issuance of licenses. The Municipal Code section Defendants referenced in their brief (but did not cite) does not state that licenses will be available after January 1, 2025. Rather, the Code provides that no Licenses may be issued to non-Equity Applicants before January 1, 2025:* "Except as otherwise permitted under Section 104.07, Type 10 Licenses shall be limited to only Social Equity Applicants, as defined in Section 104.20(a) and (b), until January 1, 2025." LAMC § 104.06(a).

The City has already allocated approximately double the Licenses they originally intended to issue. When the cannabis laws were passed in 2019, the City planned to issue 100 retail licenses in Phase Three, Round One, and another 150 licenses in Phase Three, Round Two. LAMC § 104.06.1(c)(4), (d)(5) (2019). To settle an earlier lawsuit, Defendants doubled the number of Licenses allocated in Phase Three, Round One to 200. LAMC § 104.06.1(B)(6-7). The City allocated 100 Licenses in the December 2022 Lottery that underlies this litigation. Due to complaints about the verification process, the City announced it will issue more licenses in a February Lottery. The Code provides that the Lottery will allocate all the Licenses available until the City reaches the saturation limit beyond which License are not allowed: "If additional capacity is available in any Community Plan Area after a lottery ends, DCR will hold another lottery pursuant to

> Subsection (c)(4)." LAMC § 104.06.1(c)(6). ***Thus, there will be no capacity for non-Equity Applicants to obtain retail Licenses in 2025 and there is no reason to think the Council will amend the Municipal Code to issue additional Licenses***.

(Opp. to MTD [Dkt. #26] at 5-6.)

### G.    Defendants' Reply in Support to Motion to Dismiss Complaint

Rather than concede their obvious intention, Defendants argued in their Reply in Support of Motion to Dismiss that Plaintiffs' statements were mere conjecture and virtually uncited (which was not true, as Plaintiffs cited to the statute at issue as quoted above):

Defendants' Reply states:

> In the Opposition's "Statement of Facts," which is virtually bereft of citations to evidence or to the Complaint, Plaintiffs apparently attempt to re-litigate their unsuccessful *ex parte* application for a temporary restraining order, particularly **on the subject of whether licenses will issue after they are no longer subject to the City's Social Equity Program in 2025**.
>
> None of Plaintiffs' contentions are relevant to the City's Motion. Moreover, ***they are based purely on conjecture. The most recent P3RR2 Lottery did not exhaust retail licenses. Given that three years elapsed between P3RR1 (Sept. 2019) and P3RR2 (Dec. 2022), it is entirely plausible that P3RR3 will not occur until after 2025, after licensing is no longer exclusively available through City's Social Equity Program***.

(Reply [Dkt. #34] at 5-6 (citations omitted).)

### H.    2024: Defendants Amend the Law for the Exact Reason Plaintiffs Predicted

In January 2025, Mr. Killeen posted a news bulletin on the DCR website

announcing that DCR proposed amendments to the Los Angeles Municipal Code to the City Council and Mayor. *See* OCM January 2025 News Bulletin.[4] The amendments were signed by the City Council and Mayor on December 18, 2024, and they are now in effect. *Id*.[5]

The DCR proposed the amendments to the City Council and Mayor. The DCR proposal transmittal letter states, "If you have any questions or concerns, please contact Jason Killeen, Assistant Executive Director at (213) 978-0738." Proposal to City Council Planning and Land Use Management Committee at 5.[6]

Mr. Killeen is now the Acting Executive Director of the DCR. *Id*.

The Proposal explains the purpose of the amendments: "Extend[ing] the Social Equity exclusivity period for retail, delivery and cultivation licenses from 1/1/2025 to 12/31/2025 and administer an additional retail lottery." *Id*.

The Proposal explains DCR's purpose in extending the deadline and holding an additional social equity Lottery: "DCR recommends extending the exclusivity for retail, cultivation and delivery licenses Social until December 31, 2025. ***Legal challenges to the City's Social Equity program have interfered with DCR's ability to administer additional lotteries to exhausted retail capacity Citywide***. An extension of approximately one year of additional time, accompanied with the other revisions below, will provide DCR with the time and flexibility to complete another random selection process *to allocate the remaining retail licensing opportunities*." *Id*. at 2.

***In other words, exactly as Plaintiffs told the court in 2022 and 2023, Defendants, under Mr. Killeen's direction, are attempting to issue all retail***

---

[4] *See* OCM website, https://cannabis.lacity.gov/articles/january-2025-news-bulletin.

[5] *See also* signed bill, https://clkrep.lacity.org/onlinedocs/2020/20-0446-S2_ord_188451_12-30-24.pdf.

[6] L.A. City File, https://clkrep.lacity.org/onlinedocs/2020/20-0446-s2_rpt_DCR_10-23-24.pdf.

*Licenses to social equity applicants and exhaust the supply while the law still excludes non-social equity applicants*. This is despite Defendants' repeated assurances to the Court and Plaintiffs during this litigation that "additional retail licenses that are not tied to the SEIA program will be available for adult use licenses in the future" and "after January 1, 2025, all commercial cannabis application types will be available to all applicants."

## I.  The Amendments

*First*, as noted above, Defendants amended the Municipal Code so that only social equity applicants can apply for Licenses through December 31, 2025 so that they can exhaust the supply of Licenses.[7]

*Second*, Defendants amended the definition of social equity applicant. Defendants explained:

> Specifically, DCR proposes removing the "Disproportionately Impacted Area" criterion entirely, and removing the California-specific component to the "Cannabis Arrest or Conviction" requirement. These criteria could arguably be construed as violative of the dormant Commerce Clause, if/when it applies to federally-prohibited substances like recreational cannabis. Although the City contends that the dormant Commerce Clause does not currently apply to recreational cannabis due to its prohibition under federal law, and that the City's criteria comprise part of a constitutionally justified means of achieving equitable outcomes, ***courts around the country have taken inconsistent positions on comparable regulations outside of California. Moreover, the dormant Commerce Clause will undoubtedly apply to recreational cannabis if the federal government legalizes it in the future.***

---

[7] For all amendments discussed in this section, see Proposal https://clkrep.lacity.org/onlinedocs/2020/20-0446-s2_rpt_DCR_10-23-24.pdf.

> *Accordingly, out of an abundance of caution, DCR recommends amending the criteria*.

*Id*. at 4.

**Third**, Defendants divided the Lottery into three Sub-lotteries. The three Sub-lotteries are: (1) social equity applicants verified in 2019, (2) social equity applicants verified in 2022 (when Plaintiff Gay applied), and (3) social equity applicants who will be verified in 2025. *Id*. at 2.

### J. The Effect of the Amendments on Plaintiffs

Defendants have not at this time disclosed how many Licenses will be available in the three Sub-lotteries. Defendants have disclosed neither the total number of available Licenses nor how the Licenses will be divided among the three Sub-lotteries.

Even if Mr. Gay is able to apply to be verified as a social equity applicant in 2025 so that he can participate in one of the three Sub-lotteries, and even if Defendants verify Mr. Gay so he can participate in one Sub-lottery, he will be excluded from consideration in two of the three Sub-Lotteries. Thus, Plaintiffs were irreparably harmed by exclusion from the 2022 Lottery because they did not get to compete for the 100 available Licenses, and in the upcoming Sub-lotteries, Mr. Gay will be able to compete at most in one Sub-lottery for an unknown number of Licenses.[8]

---

[8] Separately, Defendants opened the Public Convenience and Necessity ("PCN") process to non-social equity applicants. The PCN process provides no relief to Plaintiffs. The PCN process is not equivalent to the Lottery process for multiple reasons, three of which are paramount.

First, an applicant must obtain property to enter the PCN process, where no property is required to enter the Lottery. In the PCN process opened in 2019, the City Council did not even begin considering applications until approximately two years later, requiring applicants to bear the cost of holding properties for that period of time. Approximately 89 applicants submitted PCN applications in 2019, and

## II. CONCLUSION

The discussion above further confirms that Defendants, and Mr. Killeen, were willing to misrepresent the facts to the Court to defeat Plaintiffs' Application for TRO/Preliminary Injunction. Thus, Plaintiffs have shown good cause for the Court to open discovery as requested in Plaintiffs' Motion.

DATED: February 4, 2025         JEFFREY M. JENSEN, PC

                                By:    /s/ Jeffrey M. Jensen
                                       Jeffrey M. Jensen
                                       Attorney for plaintiffs Variscite, Inc. and
                                       Kenneth Gay

DATED: Februray 4, 2025         KERNKAMP LAW APC

                                By:    /s/ Christian Kernkamp
                                       Christian Kernkamp
                                       Attorney for plaintiff Variscite, Inc. and
                                       Kenneth Gay

---

approximately 20 had dropped out before the City Council began considering applications, presumably because the applicants could not keep up with the cost of carrying the properties during the two year wait.

Second, PCN applicants must be approved by vote of the City Council, and the City Council has no target number of Licenses to grant. In the PCN process opened in 2019, the City Council approved approximately six applicants from the approximately 89 applicants who submitted applications. The small chance of being approved must be considered in conjunction with the cost of carrying property.

Third, Plaintiffs have little to no chance of being approved by the City Council in light of their lawsuit against Defendants.

**DECLARATION OF CHRISTIAN E. KERNKAMP**

I, Christian E. Kernkamp, declare as follows:

1. I am an attorney duly licensed to practice before all courts in the State of California. I am a lawyer in the law firm Kernkamp Law, APC, counsel of record for plaintiffs Variscite, Inc. and Kenneth Gay (together, "Plaintiffs") in this action. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I could and would testify to such facts under oath.

2. I make this Declaration in support of Plaintiffs' Notice of Recent Developments in Support of Motion to Open Discovery.

3. I reviewed my outline for the oral argument held on December 7, 2022 for Plaintiffs' Motion for TRO/Preliminary Injunction. My outline reminds me to argue that there is no indication that Defendants will make retail cannabis Licenses available to non-Social Equity Applicants in 2025. It further reminds me to argue that the law Defendants cite provides only that Defendants cannot offer Licenses to non-social equity applicants before 2025. Nothing in the law requires Defendants to offer new Licenses in 2025. There is no reason to think Defendants will offer Licenses in 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 4, 2025, at Los Angeles, California.

By:    */s/ Christian Kernkamp*
       Christian E. Kernkamp